1   DAVID R. EBERHART (S.B. #195474)
    deberhart@omm.com
2   JAMES K. ROTHSTEIN (S.B. #267962)
    jrothstein@omm.com
3   DANIEL H. LEIGH (S.B. #310673)
    dleigh@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center
5   28th Floor
    San Francisco, California  94111-3823
6   Telephone:    +1 415 984 8700
    Facsimile:    +1 415 984 8701
7
    Attorneys for Plaintiffs
8   ELASTICSEARCH, INC. and
    ELASTICSEARCH B.V.
9
                  **UNITED STATES DISTRICT COURT**
10
                 **NORTHERN DISTRICT OF CALIFORNIA**
11
                        **OAKLAND DIVISION**
12

13

14   ELASTICSEARCH, INC., a Delaware          Case No. 4:19-cv-05553-YGR
     corporation, and ELASTICSEARCH B.V., a
15   Dutch corporation,                        **PLAINTIFFS ELASTICSEARCH, INC.
                                                AND ELASTICSEARCH B.V.'S
16                  Plaintiffs,                 OPPOSITION TO DEFENDANT
                                                FLORAGUNN GMBH'S MOTION TO
17          v.                                  EXCLUDE PORTIONS OF
                                                TESTIMONY OF PLAINTIFFS'
18   FLORAGUNN GmbH, a German corporation,      EXPERT MARTIN WALKER**

19                  Defendant.                  Date:   October 12, 2021
                                                Time:   2:00 p.m.
20                                              Judge:  Hon. Yvonne Gonzalez Rogers
                                                Dept:   Courtroom 1 – 4th Floor
21

22

23                  **REDACTED VERSION OF**

24                  **DOCUMENT SOUGHT TO**

25                  **BE SEALED**

26

27

28

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF FACTS .............................................................................................. 1

       A.     floragunn Copied Multiple Portions of Elastic's Code ............................................ 1

       B.     Hendrik Saly—Who Played a Central Role in floragunn's Copying—
              Admitted to Decompiling Elastic's Binaries and is Now Unavailable for
              Deposition ................................................................................................................ 2

       C.     Dr. Walker's Technical Opinions ............................................................................ 4

III.   LEGAL STANDARD ...................................................................................................... 6

IV.    DR. WALKER'S DECOMPILATION OPINION IS NOT SPECULATIVE AND
       IS BASED ON SUFFICIENT FACTS AND RELIABLE METHODS ........................... 7

       A.     Dr. Walker Has Offered a Reliable Opinion that Considers the Evidence in
              this Case ................................................................................................................... 8

       B.     Dr. Walker May Rely on Hendrik Saly's Admission that he Decompiled
              Elastic's Shield Binaries ........................................................................................ 13

       C.     Even if the Court Strikes Dr. Walker's Opinion on Access Through
              Decompilation, Dr. Walker Should be Allowed to Testify on Substantial
              Similarity ................................................................................................................ 16

V.     DR. WALKER'S OPINION THAT THE FLORAGUNN SOURCE CODE IS
       SUBSTANTIALLY SIMILAR IN TOTAL CONCEPT AND FEEL TO THE
       ELASTIC SOURCE CODE IS BASED ON RELIABLE METHODS AND
       WOULD BE HELPFUL TO THE JURY ....................................................................... 16

VI.    CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*,
   738 F.3d 960 (9th Cir. 2013) ................................................................................... 6, 10

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) .................................................................................... 7, 17

*Atari Games Corp. v. Nintendo of Am. Inc.*,
   975 F.2d 832 (Fed. Cir. 1992) .................................................................................. 7, 17

*Caldwell v. City of San Francisco*,
   No. 12-CV-01892-DMR, 2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) .............................. 15

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .................................................................................... 6, 7

*Daubert v. Merrell Dow Pharmas., Inc.*,
   509 U.S. 579 (1993) .................................................................................................. 6

*EnTech, Ltd. v. Speece*,
   841 F. App'x 944 (6th Cir. 2021) .............................................................................. 13

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
   676 F.3d 841 (9th Cir. 2012) .................................................................................... 9

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) ..................................................................................... 15

*Marya v. Warner/Chappell Music, Inc.*,
   131 F. Supp. 3d 975 (C.D. Cal. 2015) ....................................................................... 13

*Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*,
   No. CV1508762RGKGJSX, 2015 WL 12860491 (C.D. Cal. Dec. 14, 2015) .................... 7, 17

*Ollier v. Sweetwater Union High School District*,
   768 F.3d 843 (9th Cir. 2014) .................................................................................... 9

*Ormsby Motors, Inc. v. Gen. Motors Corp.*,
   842 F. Supp. 344 (N.D. Ill. 1994) ............................................................................. 13

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) .................................................................................... 6, 10, 12

*Sega Enterprises Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) .................................................................................. 2, 13

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ............................................................................. 9, 16

5

6

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................................ 7, 8, 9

7

8

*United States v. Wong*,
    No. CR 17-0407 WHA, 2018 WL 5776336 (N.D. Cal. Nov. 2, 2018) ................... 14

9

*V5 Techs., LLC v. Switch, Ltd.*,
    501 F. Supp. 3d 960 (D. Nev. 2020) ...................................................................... 14

10

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
    —— F.3d ——, 2021 WL 1257074 (Fed. Cir. Apr. 6, 2021) ................................. 15

11

**Other Authorities**

12

4 Nimmer on Copyright § 13.05 (2019) ...................................................................... 13

13

Advisory Committee Notes to 1972 Proposed Rules, Fed. R. Evid. 703 ...................... 6

14

**Rules**

15

Fed. R. Evid. 702 ....................................................................................................... 6

16

Fed. R. Evid. 703 ....................................................................................................... 6, 14

17

Fed. R. Evid. 804(a)(4) .............................................................................................. 13

18

Fed. R. Evid. 804(b)(3) .............................................................................................. 13

19

20

Fed. R. Evid. 804(b)(3)(A) ......................................................................................... 13

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.       INTRODUCTION

Defendant floragunn's Motion to Exclude Portions of the Testimony of Plaintiffs' Expert Martin Walker (Dkt. 160 ) ("Motion" or "Mot.") should be denied. First, in forming his opinions on a reasonable opportunity to access Elastic's works through decompilation, Dr. Walker used reliable methods and considered sufficient evidence. Dr. Walker based his opinion on (1) his experience decompiling Java binaries, (2) indicia of decompilation he found in floragunn's accused source code, (3) the widespread availability of Elastic's binaries, (4) the technical ease by which floragunn would have been able to decompile Elastic's binaries, and (5) the admission of Hendrik Saly—the author of *all* of the accused code that was created through decompilation— that he had decompiled Elastic binaries. Second, Dr. Walker engaged in an appropriate comparison in opining that that a reasonable computer programmer would find the floragunn and Elastic source code substantially similar in total concept and feel—he compared floragunn and Elastic source code in the context of the broader works. At most, floragunn's criticisms of Dr. Walker's opinions go to their weight.

## II.      STATEMENT OF FACTS

### A.       floragunn Copied Multiple Portions of Elastic's Code

Elastic makes the Elastic Stack, a suite of offerings centered on Elastic's search and analytics engine, Elasticsearch. Declaration of David Eberhart in Support of Elastic's Opposition Ex. A (Elastic 2020 10-K) at 4.[1] The Elastic Stack also includes Kibana, which is a data visualization user interface for Elasticsearch. *Id.*

Elastic offers X-Pack, a set of add-on features to Elasticsearch and Kibana that includes security, alerting, monitoring, and reporting. Ex. B (Astrachan Report) ¶ 26; Ex. C ("X-Pack 5.0.0 Released" blog post). floragunn markets and distributes a set of add-on features (or a "plug-in") for Elasticsearch called Search Guard, which competes with X-Pack. Ex. D (March 1, 2021 Deposition of Jochen Kressin) 13:10-12; Ex. E (April 15, 2021 Rule 30(b)(6) Deposition of

---

[1] Except where expressly stated, all lettered exhibits herein are exhibits to the Declaration of David Eberhart in Support of Elastic's Opposition.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1    Jochen Kressin) 247:16-250:4. Shield was an Elastic offering that was the predecessor to much of

2    X-Pack. Ex. B ¶ 26; Ex. C.

3         Elastic alleges that, between 2016 and 2019, floragunn copied multiple and critical

4    portions of the proprietary source code for Elastic's X-Pack and Shield offerings into floragunn's

5    Search Guard product. Elastic's First Am. Compl (Dkt. 23) ("FAC") ¶ 4, 19, 84; Ex. F (March 9,

6    2021 Rule 30(b)(6) Deposition of J. Kressin Ex. 185). At all relevant times, the object code, or

7    "binaries," corresponding to the infringed Elastic code has been widely available to the public.

8    But because the source code for X-Pack and Shield was not publicly available until April 2018,

9    Elastic alleges that, for infringement occurring before April 2018, floragunn accessed Elastic

10   source code through decompilation of Elastic's binaries. FAC ¶¶ 6, 21.[2]

11        **B.    Hendrik Saly—Who Played a Central Role in floragunn's Copying—Admitted
           to Decompiling Elastic's Binaries and is Now Unavailable for Deposition**

12        Hendrik Saly, floragunn's Chief Technology Officer ▮▮▮▮▮▮▮▮▮, played a central

13   role in floragunn's copying. J. Kressin Decl. (Dkt. 127) ¶¶ 15, 16. Mr. Saly wrote and committed

14   to Search Guard accused code segments on 12 separate occasions between February 13, 2016 and

15   June 7, 2018, including *all* of the accused code that Elastic contends floragunn created through

16   decompilation of Elastic's binaries. Ex. F; Ex. G (Walker Report) ¶¶ 89, 105, 120, 189, 227. The

17   remaining code was written by three other authors—two of whom refused to appear for

18   deposition and were fired by floragunn—in different, non-compiled computer languages

19   (Javascript and AngularJS extensions to HTML). Joint Discovery Letter (Dkt. 100); J. Kressin

20   Decl. (Dkt. 107); Ex. F; Ex. G ¶¶ 140, 153, 169, 200, 285.

21

22   [2] Computer programs are written in source code, consisting of "specialized alphanumeric
     languages," which is generally readable by software developers. *Sega Enterprises Ltd. v.*

23   *Accolade, Inc.*, 977 F.2d 1510, 1514 n.2 (9th Cir. 1992); Ex. G ¶ 53. "In order to operate a
     computer, source code must be translated into computer readable form, or 'object code'. Object

24   code uses only two symbols, 0 and 1, in combinations which represent the alphanumeric
     characters of the source code." *Sega Enterprises Ltd.*, 977 F.2d at 1514 n.2. Object code is not

25   generally readable by software developers. Ex. G ¶ 53. However, object code can be converted
     back into source code: "Devices called 'disassemblers' or 'decompilers' can reverse this process

26   by 'reading' the electronic signals for '0' and '1' that are produced while the program is being
     run, storing the resulting object code in computer memory, and translating the object code into

27   source code." *Sega Enterprises Ltd.*, 977 F.2d at 1514 n.2. Decompilers are "commercially

28   available" and "widely used within the software industry." *Id.*

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

As floragunn concedes, Mr. Saly has a deep history with Search Guard: "floragunn's security plugin Search Guard traces its roots to October 2013, when Hendrik Saly, then an independent programmer, but now floragunn's Chief Technology Officer, developed the first complete security plugin solution for the Elasticsearch search engine, appropriately called 'Elasticsearch Security Plugin' ('ESP')." floragunn's Amended Answer (Dkt. 82) at 48-49. Mr. Saly subsequently developed a successor Elasticsearch security plugin called Defender and, "[i]n May 2015, floragunn acquired an exclusive license from Mr. Saly for the Defender security plugin and set out to improve the code for the product before formally launching Defender rebranded as 'Search Guard.'" *Id.* at 49.

floragunn claims that it did not "hire Saly until November 15, 2018." Mot. at 5. But this improperly minimizes Mr. Saly's role: not only did he create the code that was the basis for Search Guard, (1) ██████████████████████████████████████████████████████ ██████████████████████████████████████████, Ex. H (March 1, 2021 J. Kressin Dep. Ex. 161); and (2) he continued to make contributions to Search Guard from 2016 to 2018, including contributing to Search Guard more than two-thirds of the infringing code before November 15, 2018. Ex. F.

On February 3, 2015, Mr. Saly held a conversation with Uri Boness, one of the co-founders of Elastic, about a potential job with Elastic. Ex. I (Deposition of Uri Boness) 24:19-25, 31:10-33:14; Declaration of Michael Kwun in Support of floragunn's Motion Ex. D. In that conversation, Mr. Saly stated that he noticed certain differences between how Elastic's Shield product implemented security and how he implemented security in Defender. Ex. I 33:3-33:14. When Mr. Boness asked Mr. Saly how he knew this detail, Mr. Saly admitted to decompiling the binaries for Elastic's Shield product. *Id.* Mr. Boness told Mr. Saly that decompiling Elastic's Shield binaries was "not allowed." *Id.* 33:3-34:12.

On November 25, 2020, counsel for Elastic contacted counsel for floragunn to attempt to schedule Mr. Saly's deposition in this matter. Ex. J (Nov. 25, 2020 Email from J. Rothstein). In response, counsel for floragunn informed counsel for Elastic for the first time that Mr. Saly ████ ██████████████████████████████████ and was unavailable to be deposed. Joint Discovery

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1   Letter (Dkt. 101-3) at 2. Elastic continued seeking Mr. Saly's deposition and issued Requests for

2   Production for documents supporting Mr. Saly's unavailability. *Id.*; Ex. K (Elastic's Fifth RFPs to

3   floragunn) RFP No. 103. floragunn began to produce ███████████ purporting to document

4   Mr. Saly's ████████ throughout the relevant time period. Joint Discovery Letter (Dkt. 101-3)

5   at 2-3; *see* Ex. L (Feb. 9, 2021 Email from V. Rivkin). On February 9, 2021 floragunn's counsel

6   wrote that "we do not currently anticipate that he will be ███████████ sufficient to be

7   produced for deposition before the end of fact discovery." *Id.* Based on floragunn's counsel's

8   representations, in February 2021, the parties entered into a stipulation prohibiting Mr. Saly's

9   participation in any way in this lawsuit in lieu of Elastic seeking to compel Mr. Saly's deposition.

10  Order Granting Stipulation Regarding H. Saly (Dkt. 76).

11        Elastic subsequently learned that Mr. Saly's ███████████ indicates that he was

12  ████████████████████████████████████████████████████████████

13  ████████████. Joint Discovery Letter (Dkt. 101-3) at 2-3; floragunn Separate Statement (Dkt.

14  116). This, of course, was during the time period that Elastic was seeking Mr. Saly's deposition.

15  Based on this evidence, Elastic contends that Mr. Saly was in fact available for deposition, and

16  Elastic is currently seeking sanctions against floragunn for its failure to produce Mr. Saly. Joint

17  Discovery Letter (Dkt. 101-3) at 2-3. After Elastic filed its motion for sanctions, ████████

18  ████████████. J. Kressin Decl. (Dkt. 127) ¶ 16. However, German corporate records

19  indicate that Mr. Saly has an ongoing business relationship with floragunn's current co-CEOs.

20  Letter Brief (Dkt. 129) Exs. A-C.

21        **C.    Dr. Walker's Technical Opinions**

22        Dr. Walker has a PhD in Electrical Engineering, 35 years of experience designing

23  complex software systems, and 15 years of experience analyzing or reverse engineering complex

24  software systems. Ex. G ¶ 1, 2. Over the past 20 years, Dr. Walker has been retained as an expert

25  in more than three dozen software-related matters and has testified at deposition, hearing, or trial

26  more than 40 times. *Id.* Attachment A. Elastic engaged Dr. Walker to examine the relevant

27  floragunn and Elastic source code and render an expert opinion regarding whether the floragunn

28  source code was copied from the Elastic source code or is a derivative work of that source code.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

*Id.* ¶ 14. Dr. Walker's analysis concluded that multiple instances of floragunn source code were substantially similar to protectable elements of the Elastic source code. *Id.* ¶ 20. Dr. Walker further considered evidence of floragunn's access to Elastic's source code, and, combined with that evidence of access, found multiple instances of floragunn source code that were copied from Elastic code. *Id.* Relevant to this motion, Dr. Walker further opined that "given the similarities [he] identified between the Elastic and floragunn source code, an ordinary, reasonable computer programmer would find the source code substantially similar in total concept and feel." *Id.* ¶ 22.

Dr. Walker also opined that floragunn accessed Elastic's Java source code before April 2018 by decompiling Elastic's binaries, which Elastic distributed widely over the internet. *Id.* ¶¶ 31, 89, 105, 120, 189, 227; Ex. M (Walker Reply Report) ¶ 8 (opining that floragunn "could" and "did" decompile Elastic's binaries). In forming this opinion, Dr. Walker relied on (1) his experience decompiling Java binaries, (2) indicia of decompilation he found in floragunn's source code, (3) the widespread public availability of Elastic's binaries at the time of the creation of the infringing code, and (4) the technical ease by which floragunn would have been able to decompile Elastic's binaries. *See* § IV.A, *infra*.[3]

Dr. Walker also relied on the admission by Mr. Saly—the author of *all* of the infringing code to which Dr. Walker's decompilation opinion applies—that Mr. Saly had decompiled Elastic's Shield binaries while developing a predecessor security product (Defender) that was used to create Search Guard. *See* Ex. G ¶¶ 89, 105, 120, 189, 227, 233; Ex. I 31:10-33:14. Dr. Walker relied on this admission to demonstrate that Mr. Saly had the ability to decompile Elastic's code and knew the benefits of decompiling Elastic's code. Ex. N (Deposition of Dr. Martin Walker) 125:14-22. As floragunn notes in its motion, Dr. Walker relied on an account of Mr. Saly's admission given in deposition testimony by Uri Boness, a co-founder of Elastic. *See* Ex. G ¶¶ 89, 105, 120, 189, 227, 233. Dr. Walker was not able to rely directly on statements by Mr. Saly, because floragunn has not made Mr. Saly available for deposition.

---

[3] As noted above, before April 2018, the source code for Shield and X-Pack was not publicly available (it has since been made source-available, although it is still proprietary). Ex. G ¶ 30.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

### III.   LEGAL STANDARD

Under *Daubert*, courts act as gatekeepers to admit expert testimony that "help[s] the trier of fact to understand the evidence or determine a fact in issue" and is based on "sufficient facts or data," "reliable principles and methods," and a reliable application of those principles and methods "to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 597 (1993). "[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, 738 F.3d 960, 969–70 (9th Cir. 2013). Further, even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). In other words, "[w]hen an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565.

Under Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Under this standard, an expert may rely on "presentation of data to the expert outside of court and other than by his own perception." Advisory Committee Notes to 1972 Proposed Rules, Fed. R. Evid. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.

A plaintiff proves copyright infringement by showing ownership of a valid copyright and that defendant copied protected elements of the copyrighted work. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Id.* Courts in the Ninth Circuit "employ a two-part analysis . . . —an extrinsic test and an intrinsic test—to determine whether two works are substantially similar." *Id.* "The 'extrinsic test' is an objective comparison of specific expressive elements." *Id.* In contrast, the "'intrinsic test' is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1    and feel of the works." *Id.* (internal quotation marks omitted). However, the intrinsic test still

2    focuses on the expression of a work. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,

3    1442 (9th Cir. 1994) ("[T]he intrinsic test continues to measure expression subjectively."). "In the

4    context of computer programs, the 'ordinary reasonable person' with the ability to intelligently

5    respond to computer expression is a computer programmer." *Atari Games Corp. v. Nintendo of*

6    *Am. Inc.*, 975 F.2d 832, 844 (Fed. Cir. 1992) (applying Ninth Circuit law); *Mobile Active Def.,*

7    *Inc. v. Los Angeles Unified Sch. Dist.*, No. CV1508762RGKGJSX, 2015 WL 12860491, at *3

8    (C.D. Cal. Dec. 14, 2015) (quoting *Atari Games Corp.*, 975 F.2d at 844).

9    A plaintiff proves access to a copyrighted work by showing that a defendant had "a

10   'reasonable opportunity' or 'reasonable possibility' of viewing the plaintiff's work." *Three Boys*

11   *Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled on other grounds by*

12   *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

13   "Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain

14   of events is established between the plaintiff's work and the defendant's access to that work (such

15   as through dealings with a publisher or record company), or (2) the plaintiff's work has been

16   widely disseminated." *Id.* A "reasonable possibility" is more than a "bare possibility in the sense

17   that anything is possible," but "[a]t times, distinguishing a 'bare' possibility from a 'reasonable'

18   possibility will present a close question." *Id.* (citation omitted).

19   **IV.    DR. WALKER'S DECOMPILATION OPINION IS NOT SPECULATIVE AND IS**
20   **BASED ON SUFFICIENT FACTS AND RELIABLE METHODS**

21   There are multiple, independently-sufficient bases for Dr. Walker's opinion on access to

22   Elastic code through decompilation. In forming his opinion, Dr. Walker relied on (1) his

23   experience decompiling Java binaries, (2) indicia of decompilation he found in floragunn's

24   accused source code, (3) the widespread availability of Elastic's binaries, (4) the technical ease by

25   which floragunn would have been able to decompile Elastic's binaries, and (5) the admission of

26   Hendrik Saly—the author of *all* of the accused code that was created through decompilation—

27   that he had decompiled Elastic binaries.

28   Direct testimony by Mr. Saly regarding his decompilation of Elastic code is impossible to

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

obtain because floragunn has declined to make Mr. Saly available for deposition. Joint Discovery

Letter (Dkt. 101-3). But direct evidence of access to a copyrighted work is not required—it is

perfectly acceptable to establish access through circumstantial evidence. *Three Boys Music Corp.*,

212 F.3d a 482. And that is exactly what Dr. Walker has done—he has not only demonstrated that

Elastic's binaries have been widely disseminated, he has relied on circumstantial evidence that

Mr. Saly did in fact decompile Elastic's binaries. But Dr. Walker's opinion would be relevant and

admissible even if he only opined that Mr. Saly could have accessed Elastic's source code

through decompilation, because such an opinion would support floragunn's "'reasonable

opportunity' or 'reasonable possibility' of viewing" Elastic's source code. *Id.*

### A.     Dr. Walker Has Offered a Reliable Opinion that Considers the Evidence in this Case

Dr. Walker notes—and it is undisputed—that Elastic's Shield and X-Pack binaries are and

have been widely available. Ex. G ¶ 31; Ex. M ¶ 12. He further opines that decompilation of those

binaries is technically possible and straightforward. Ex. G ¶¶ 89, 105, 120, 189, 227; Ex. M

¶ 8.a.i; Ex. N 127:12-22. Dr. Walker's bases this opinion on his technical experience. Ex. M

¶ 8.a.i ("I have personal experience performing such reverse compilation and I know it is straight-

forward.").

floragunn's technical expert, Dr. Owen Astrachan, ███████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Ex. B ¶ 181. He

testified that he "did not have any difficulty" doing so and that "many reasonable developers,"

including floragunn developers, would have been able to do the same thing he did. Ex. O

(Deposition of Dr. Owen Astrachan) 191:23-192:12. Hence, even Dr. Astrachan contradicts

floragunn's argument that the Elastic source code was "locked in a vault." Mot. at 6.

The relationship between floragunn's product and Elastic's products further supports Dr.

Walker's conclusion regarding decompilation. Floragunn touted its speed in releasing new

versions of Search Guard when Elastic released new version of Elasticsearch, so floragunn was

undoubtedly familiar with Elastic's distribution of binaries. *See* Ex. D 13:13-19.  floragunn was in

- 8 -

1   the Elasticsearch security business, and it, of course, was interested in staying informed of its

2   competitor's activities. *See* Ex. P (March 9, 2021 Rule 30(b)(6) Deposition of Jochen Kressin)

3   179:3-181:20 (noting that opening of Elastic code would give floragunn additional visibility into

4   Elastic's development activities); *see L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841,

5   848 (9th Cir. 2012) *abrogation on other grounds recognized by Unicolors, Inc. v. H&M Hennes*

6   *& Mauritz, L.P.*, 959 F.3d 1194, 1198 (9th Cir. 2020) (noting participation in the same industry as

7   relevant to widespread dissemination). And because floragunn was providing a plug-in for

8   Elasticsearch, moreover, ███████████████████████████████████████████████████

9   ██████ Ex. Q (April 27, 2021 Rule 30(b)(6) J. Kressin Dep. Ex. 326 at 1 (██████████████

10  ████████████████████████████████████████████████).

11       Even in isolation from other evidence, the widespread availability of Elastic's binaries and

12  the ease decompiling them is a sound basis for opining that floragunn had a reasonable

13  opportunity to view Elastic's copyrighted work through decompilation of Elastic's binaries. *See*

14  *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1068 (9th Cir. 2020)

15  ("Given the ubiquity of ways to access media online, from YouTube to subscription services like

16  Netflix and Spotify, access may be established by a trivial showing that the work is available on

17  demand."); *Three Boys Music Corp.*, 212 F.3d at 482-85 (holding that there was sufficient

18  evidence of access to an Isley Brothers song by Michael Bolton because Mr. Bolton was a fan of

19  the Isley Brothers and the song was on the radio when Mr. Bolton was a teenager). Because the

20  relevant question is reasonable opportunity to access, Dr. Walker is not required to opine that

21  floragunn in fact accessed the code for his opinions to be admissible. And floragunn's citation to

22  *Ollier v. Sweetwater Union High School District* does not show otherwise: that case concerned

23  experts who were offered to opine on high school athletics, athletic facilities, and equitable access

24  to the same in a Title IX case. 768 F.3d 843, 860 (9th Cir. 2014). Beyond the distinguishing fact

25  that they were not opinions on "reasonable opportunity to access" under copyright law, (1) one

26  expert had never visited the school in question before issuing his report, and (2) the other expert

27  spent only an hour at that school. Further, the experts' opinions were "'based on their 'personal

28  opinions and speculation rather than on a systematic assessment of [the school's] athletic facilities

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1    and programs.'" *Id.* at 861. Neither the relevant issues nor the work of the experts is similar to Dr.

2    Walker's opinions.

3         But Dr. Walker's opinion provides further bases for admission—he applied his technical

4    knowledge and experience with decompilation to opine that several elements in the accused code

5    indicate that it was created by decompiling Elastic source code. Ex. G ¶¶ 96, 227, 238-239; Ex. M

6    ¶¶ 96-97, 102; Ex. N 127:12-22, 192:10-194:2, 229:14-21. floragunn's Motion ignores all but one

7    of these indicia of decompilation. Mot at 7.[4] And, like his other opinions on decompilation, Dr.

8    Walker bases this opinion on his technical knowledge and experience. *See, e.g.*, Ex. G ¶ 96 ("In

9    my experience, the reverse compilation process cannot restore comments such as those present in

10   the Elastic source code."); *id.* ¶ 233 ("I am familiar with the use of reverse compilation in general

11   and specifically use of reverse compilation in the context of java binary files (called 'java class

12   files').");see also Ex. N 20:23-21:9, 28:9-17 (testifying that Dr. Walker decompiled binaries as

13   part of his work on a previous lawsuit and also used decompilation to understand the operation of

14   "a number of different" Android applications and Java applications). While Dr. Walker does not

15   present any of these indicia as conclusive proof of decompilation, he is not required to find

16   conclusive proof for his opinion to be reliable. *See Primiano*, 598 F.3d at 565 ("Lack of certainty

17   is not, for a qualified expert, the same thing as guesswork."). And, while Dr. Astrachan may

18   disagree with Dr. Walker's conclusions, *see, e.g.*, Ex. B ¶ 47, this is not a basis on which to

19   exclude Dr. Walker's opinions. *See Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70  ("The district

20   court is not tasked with deciding whether the expert is right or wrong, just whether his testimony

21   has substance such that it would be helpful to a jury.")

22        Finally, Dr. Walker relies on the admission of Mr. Saly—the author of 100% of the code

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4] If floragunn is contending that Elastic's interrogatory responses during fact discovery should
25   limit Dr. Walker's expert opinion, those responses expressly contradict that argument, stating
     "Elastic further objects to this Interrogatory because it calls for expert disclosures before the date
26   for such disclosures set by the Court's Case Management Order in this case and Federal Rule of
     Civil Procedure 26. Elastic will supplement its response to this Interrogatory consistent with the
27   Federal Rules of Civil Procedure and the Court's Case Management Order regarding expert
     reports through, at least, such reports." Declaration of Michael Kwun in Support of floragunn's
28   Motion Ex. D, Responses to Interrogatories Nos. 15 &16.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

that Dr. Walker opines was created through decompilation—that he had decompiled Elastic's Shield binaries. Ex. G ¶¶ 89, 105, 120, 189, 227. In a phone call with an Elastic co-founder, Uri Boness, about a potential job with Elastic, Mr. Saly admitted to decompiling Elastic's Shield binaries to understand how Shield worked while Mr. Saly was developing Defender, the precursor to Search Guard. Ex. I 31:10-33:14; floragunn's Amended Answer (Dkt. 82) at 49. Dr. Walker uses Mr. Saly's admission to show that Mr. Saly had both the ability to decompile Elastic's code and knew the benefits of decompiling Elastic's code. Ex. N 125:14-22.[5]

When considered in the context of Dr. Walker's opinions, floragunn's criticisms are unfounded. Rather than being "abstract" or "speculative," *see* Mot. at 6–7, Dr. Walker's opinion that it was technically possible for floragunn to decompile Elastic binaries is a necessary part of Dr. Walker's broader opinion that floragunn "*actually* had access to Elastic's code" through decompilation. Mot. at 6 (emphasis in original). floragunn also faults Dr. Walker's opinion that Elastic's binary files were widely available to the public because "Elastic's *binary files* cannot be read by developers." Mot at 8 (emphasis in original). But Dr. Walker does not opine that Elastic's binary files were read by developers—he opines that Elastic's binary files were widely distributed and that floragunn easily could have, and actually did, decompile Elastic's binary files to access Elastic's source code.

floragunn's criticism that Dr. Walker did not himself decompile Elastic binary files is misplaced. *See* Mot. at 7. First, Dr. Walker cites a conversation with Elastic engineer Tim Vernum for his understanding that specific Elastic code (`if (action.equals (TransportShardBulkAction.ACTION_NAME) )` can be transformed by decompilation into a form `if (action.equals(indices:data/write/bulk[s]) )` that matches the floragunn code. Ex. G ¶ 227. Floragunn identifies no reason that Dr. Walker may not rely on this very detailed understanding of a decompilation result that an Elastic engineer obtained. Second, Floragunn fails to identify why the observation that Dr. Walker did not himself

---

[5] Contrary to floragunn's claim, Mot. at 6 n.3, Dr. Walker does not offer Mr. Saly's admission as habit evidence under Federal Rule of Evidence 406. Rather, Dr. Walker relies on that admission to show that Mr. Saly had the ability to decompile Shield binaries and knew decompilation could show him how Shield worked. Ex. N 125:14-22.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

decompile Elastic binaries undermines Dr. Walker's opinions or what floragunn expects such an exercise would have yielded. Given the plethora of other evidence, Dr. Walker was not required personally to decompile Elastic binaries to arrive at a reliable opinion regarding access. But if floragunn's point is that Dr. Walker should have attempted to duplicate Mr. Saly's decompilation activities, Mr. Saly's supposed unavailability made it impossible for Dr. Walker to do so reliably.[6] Different decompilation programs and settings may yield different decompilation results when applied to the same binary. Ex. M ¶ 100; Ex. N 199:21-200:5. Absent Mr. Saly's testimony about what decompilation program and settings he used or had access to, there would be no reliable way to recreate his decompilation process. *See id.* 215:17-20 ("I don't know which -- what decompiler Mr. Saly was using, and I don't know what the state of the reverse compiled JAVA code would look like using Mr. Saly's decompiler.") And even if Dr. Walker had been able to recreate the complete software environment that Mr. Saly used for decompilation, Mr. Saly would not necessarily have copied decompiled source code into Search Guard without alteration. *See id.* 193:20-194:8 (testifying that decompiled code "isn't the most efficient or easiest to understand" so developers often "rewrite the code to be more understandable or easier to read"); *id.* 227:15-24; *see also* Ex. M ¶ 102. To whatever extent floragunn contends Dr. Walker's lack of decompilation makes his opinions infirm, floragunn may point that out to the jury on cross-examination, but it is not grounds to exclude Dr. Walker's opinions on decompilation, especially given all the other bases for that opinion. *Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").[7]

---

[6] Elastic noticed as a Rule 30(b)(6) topic "reverse engineering or decompiling of object code for X-Pack, including without limitation any object code corresponding to the Infringed Code, by floragunn or any of its agents, employees, or contractors." Ex. R (Elastic's Notice of Rule 30(b)(6) Deposition) Topic No. 8. But floragunn's corporate representative could not provide an answer about Mr. Saly's decompilation, testifying that Mr. Saly told him that he either did not decompile Elastic binaries or could not remember doing so. Ex. P 128:23-129:13.

[7] floragunn makes no argument that any of Dr. Walker's opinions are inadmissible under Federal Rule of Evidence 403.

1

2

**B.     Dr. Walker May Rely on Hendrik Saly's Admission that he Decompiled Elastic's Shield Binaries**

3

Mr. Saly's statement that he had decompiled Elastic's Shield binaries is admissible and,

4

even if not admissible, is a proper object of reliance for Dr. Walker.

5

First, Mr. Saly's admission to Uri Boness that Mr. Saly had decompiled Elastic's binaries

6

is admissible as a statement against interest. Fed. R. Evid. 804(b)(3). It is uncontroversial that Mr.

7

Saly is unavailable within the meaning of Federal Rule of Evidence 804(a). floragunn contends

8

that Mr. Saly is unavailable for ███████. Joint Discovery Letter (Dkt. 101-3) 4-6; *see* Fed.

9

R. Evid. 804(a)██. floragunn has produced a █████ claiming that Mr. Saly must be

10

████████████████ to testify. Joint Discovery Letter (Dkt. 101-3) at 3.

11

And Mr. Saly's statement is against his interest because it exposes him to civil liability—

12

decompilation of Elastic's binaries, standing alone, is civilly actionable as copyright

13

infringement. *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1519 (9th Cir. 1992); 4

14

Nimmer on Copyright § 13.05 (2019); *see EnTech, Ltd. v. Speece*, 841 F. App'x 944, 952 (6th

15

Cir. 2021) (nonparty's statement that defendant told him to convert computer owned by plaintiff

16

was admissible as statement against nonparty's interest); *Ormsby Motors, Inc. v. Gen. Motors

17

Corp.*, 842 F. Supp. 344, 348 n.6 (N.D. Ill. 1994) (investigator's deposition testimony containing

18

nonparty's statements implicating himself in preparation of false warranties admissible as

19

statements against nonparty's interest). Any reasonable person in Mr. Saly's position would know

20

decompiling Shield binaries was not authorized and that his statement that he had done so could

21

expose him to civil liability. *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975,

22

992 n.14 (C.D. Cal. 2015) (reasonable to infer that songwriter knew that her statement that she

23

had abandoned her copyright interest in a song was against her pecuniary interests). That

24

admission is sufficient to make the statement against his interest. *See* Fed. R. Evid. 804(b)(3)(A)

25

(exposure to "civil or criminal liability" sufficient for statement against interest). Further, Dr.

26

Walker's technical opinions on the ease of decompilation and indicia of decompilation in code

27

28

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1    generated by Mr. Saly corroborate Mr. Saly's admission to Mr. Boness.[8]

2         And, even if Mr. Saly's statement were inadmissible, Dr. Walker could still properly

3    consider it. Experts in Dr. Walker's field commonly rely on statements by software developers

4    regarding how they developed code, including statements about the origin of code relayed by

5    third parties. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on

6    those kinds of facts or data in forming an opinion on the subject, they need not be admissible for

7    the opinion to be admitted."); *V5 Techs., LLC v. Switch, Ltd*., 501 F. Supp. 3d 960, 964 (D. Nev.

8    2020) (proper for expert to rely on hearsay statement of sales representative that air conditioning

9    and smoke detection systems were substandard and faulty). floragunn's expert, Dr. Astrachan

10   testified that he commonly relies on hearsay statements by persons with knowledge about how

11   code was developed. Ex. O 182:16-183:6 (testifying that, in previous cases, Dr. Astrachan has

12   spoken with "lead" developers who did not actually write the code at issue).[9] And Dr. Astrachan

13   testified that the only developer that he spoke with to render his opinions in this matter was the

14   purported "lead developer" at floragunn: Jochen Kressin. Ex. O 181:10-183:12.

15        floragunn argues that Dr. Walker's reliance on Mr. Saly's admission is inadmissible

16   because Dr. Walker did not bring his technical expertise to bear on it. Mot at 6. But Mr. Saly's

17   admission forms one part of Dr. Walker's broader technical opinion on floragunn's

18   decompilation. Dr. Walker evaluated whether Mr. Saly's statement was consistent with Dr.

19   Walker's technical knowledge and experience regarding decompilation, and Dr. Walker further

20   confirmed indicia of decompilation in floragunn's code that are consistent with Mr. Saly's

21

---

22   [8] For similar reasons, Mr. Saly's statements are admissible under Federal Rule of Evidence 807.
     *See United States v. Wong*, No. CR 17-0407 WHA, 2018 WL 5776336, at *1 (N.D. Cal. Nov. 2,
23   2018). Mr. Saly's statement's circumstantial guarantees of trustworthiness have been described
     above. Mr. Saly's admission to decompilation of Shield binaries is a material fact in this case.
24   And, because Mr. Saly has not been made available for deposition, Mr. Saly's statement to Mr.
     Boness is more probative regarding Mr. Saly's decompilation of Shield binaries than any other
25   evidence Elastic can obtain through reasonable efforts.
26   [9] To whatever extent floragunn argues that Mr. Saly's admission to Mr. Boness shouldn't be
     disclosed to the jury, Elastic notes that since Mr. Saly is purportedly unavailable, the probative
27   value of Mr. Saly's admission to Mr. Boness is high in helping the jury understand Dr. Walker's
     opinion, and floragunn's ability to cross-examine both Mr. Boness and Dr. Walker ameliorates
28   any purported prejudicial effect. *See* Fed R. Evid. 703.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1   decompilation of binaries to create accused floragunn code. *See, e.g.*, Ex. G ¶¶ 89, 105, 120, 189,

2   227 (noting that it would have been technically possible for floragunn to decompile Elastic's

3   binaries); *id* ¶¶ 96, 227, 238-240 (noting indicia of decompilation in floragunn's source code); Ex.

4   M ¶¶ 96-97, 102 (same); Ex. N 127:12-22, 192:10-194:2, 229:14-21 (same). Dr. Walker brought

5   his expertise to bear on Mr. Saly's statement and added, at least, "background knowledge or

6   context" to it and then used it in forming a broader technical opinion. *See Marvel Characters, Inc.*

7   *v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

8           Dr. Walker's opinion is nothing like the opinion at issue in *Caldwell v. City of San*

9   *Francisco*, where a damages expert with no training or experience as a vocational expert testified

10  that the wrongfully incarcerated plaintiff could have been employed as a carpenter, insurance

11  salesperson, or construction manager. In doing so, that purported expert relied on "non-scholarly

12  websites," plaintiff's "self-reported skills, information from plaintiff's attorneys, and unidentified

13  opinions offered by [another individual]," with "no indication of how [the expert] applied his

14  purported expertise to synthesize or analyze the facts upon which he relied." No. 12-CV-01892-

15  DMR, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021). Accordingly, the court found that the

16  individual offering the opinion as to plaintiff's vocational aptitude was "essentially functioning as

17  a 'mouthpiece of the [individuals] on whose statements or opinions he purports to base his

18  opinion.'" *Id.* (quoting *Wi-LAN Inc. v. Sharp Elecs. Corp.*, ––– F.3d –––, 2021 WL 1257074, at

19  *6 (Fed. Cir. Apr. 6, 2021)). Here, Dr. Walker considered deposition testimony in this case to

20  inform one part of a well-explained opinion that uses his technical expertise regarding

21  decompilation. Dr. Walker is furthermore not "vouch[ing]" for Uri Boness's testimony or judging

22  Mr. Boness's credibility—he is properly bringing his technical expertise to bear on it and

23  considering it in the context of forming his technical opinion on floragunn's decompilation of

24  Elastic's binary code.

25          floragunn points to no evidence that contradicts Mr. Boness's testimony regarding Mr.

26  Saly's admission, floragunn deposed Mr. Boness, and floragunn has not made Mr. Saly available

27  to testify to his "side" of the story. And, even if there were evidence contradicting Mr. Boness's

28  testimony, any failure by Dr. Walker to consider that evidence would go to the weight of his

1  opinions, not their admissibility.[10]

2      **C.**    **Even if the Court Strikes Dr. Walker's Opinion on Access Through**
    **Decompilation, Dr. Walker Should be Allowed to Testify on Substantial**
3      **Similarity**

4      Even if the Court were to hold that Dr. Walker may not opine on floragunn's

5  decompilation of Elastic binaries, Dr. Walker should still be permitted to opine on substantial

6  similarity for those sections of code. Dr. Walker's opinion on substantial similarity in no way

7  depends on his opinion regarding access, and Dr. Walker should be able to present his opinion on

8  substantial similarity independently of his opinion on access. *See Skidmore*, 952 F.3d at 1069

9  ("[A]ccess, however, in no way can prove substantial similarity."). floragunn contends that

10  "[a]bsent access, any purported similarity between the Elastic code and the floragunn code is

11  irrelevant." Mot. at 8. Should the Court exclude Dr. Walker's testimony on decompilation, it is

12  true that Elastic would need to prove access to those particular code segments in other ways. With

13  such proof, Elastic could still proceed with its claims regarding copying of those code segments,

14  and Dr. Walker's opinions on substantial similarity would still be relevant.

15  **V.**    **DR. WALKER'S OPINION THAT THE FLORAGUNN SOURCE CODE IS**
    **SUBSTANTIALLY SIMILAR IN TOTAL CONCEPT AND FEEL TO THE**
16      **ELASTIC SOURCE CODE IS BASED ON RELIABLE METHODS AND WOULD**
    **BE HELPFUL TO THE JURY**
17
    floragunn argues that Dr. Walker's opinions that "a reasonable computer programmer
18
would find the source code substantially similar in total concept and feel," *e.g.*, Ex. G ¶ 73,
19
should be excluded because they "engage[] in the wrong comparison under Ninth Circuit
20
precedent," Mot at 8-9. But Dr. Walker's opinions are sound under Ninth Circuit precedent and
21
would be helpful to the jury.
22
    floragunn argues that Dr. Walker relied "only on a comparison of the allegedly copied
23
code from floragunn and Elastic" and that this is inappropriate because "the intrinsic test requires
24

25  _____

26  [10] If the Court were to hold that Dr. Walker may not rely on Mr. Saly's admission, Dr. Walker's opinion that floragunn accessed Elastic code through decompiling Elastic binaries still has sufficient basis to be admissible: As shown *supra*, Dr. Walker also bases his opinion on (1) his

27  experience decompiling Java binaries, (2) indicia of decompilation he found in floragunn's accused source code, (3) the widespread availability of Elastic's binaries, and (4) the technical

28  ease by which floragunn would have been able to decompile Elastic's binaries.

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

1    a comparison of the *works* to determine whether the *works* are substantially similar in total

2    concept and feel." Mot. at 8-9 (emphasis in original). While the intrinsic test does focus on

3    substantial similarity in "total concept and feel," it focuses on the subjective reaction of the

4    reasonable, ordinary audience of a work to *expression* found in the work. *Apple Computer, Inc.*,

5    35 F.3d at 1442  ("[T]he intrinsic test continues to measure expression subjectively."). Here, the

6    relevant audience for the intrinsic test is the reasonable, ordinary computer programmer. *Mobile*

7    *Active Def., Inc.*, 2015 WL 12860491, at *3; *Atari Games Corp*, 975 F.2d at 844.

8         The scope of Dr. Walker's analysis was appropriate. floragunn cites *one instance* from Dr.

9    Walker's deposition in which Dr. Walker testified that the substantial similarity that was the

10   subject of *a single paragraph* in his report was found in specific segments of source code

11   identified in his report. Ex. N 120:3-121:1. Dr. Walker did not so testify with respect to any other

12   segments of code.  And, in forming his opinions, Dr. Walker discussed the broader Elastic

13   codebase with Elastic engineers who are familiar with the entirety of the Elastic works. *See, e.g.*,

14   Ex. G ¶¶ 57 & nn.31-32, 58, 75 & nn.45 & 47, 88 & nn.59 & 61, 104 & n.70, 119 & nn.78-80,

15   139, 154, 170 & nn.114-115, 188 & nn.124-125, 199 & nn.131-132, 226 & n.138, 250, 266, 286

16   & n.166 (explaining the qualitative significance of the Elastic code segments within the broader

17   work and citing conversations with Elastic engineers). And Dr. Walker also examined the accused

18   code within the context of the broader Search Guard work. *See, e.g.*, *id.* ¶ 32 ("Search Guard

19   offers various security features, including document- and field-level security, that mimic the

20   security features offered by Elastic.").

21        For example, in the context of his analysis of infringing getLiveDocs() code, Dr. Walker

22   notes the importance of Elastic's getLiveDocs() code within Elastic's broader codebase and, in

23   forming his opinion, discussed the significance of that code with Elastic engineers. *See id.* ¶¶ 57

24   & nn.31-32, 58 (noting, for example, that "████████████████

25   ███████████████████████████████████████

26   ███████████████████████████████████████

27   ████"). And the same is true for Elastic's binaryField code and exceptionCaught() code. *See id.*

28   ¶ 104 & n.70 ("The relevant Elastic code was added as part of a change that added document- and

OPP. TO DEF.'S MOT. TO EXCLUDE
4:19-CV-05553-YGR

field-level security to Elastic's Shield product."); *id.* ¶ 119 & nn.78-80 ("Elastic's exceptionCaught() implementation is part of Elastic's SSL feature.") In short, Dr. Walker considered significant parts of both Elastic's works and floragunn's works in opining that a reasonable computer programmer would find the source code substantially similar in total concept and feel. *See* Ex. M ¶ 119 ("I disagree with Dr. Astrachan that ███████████████ ████████████████. As I noted in my opening report, the multiple instances of floragunn code that are substantially similar to or derived from Elastic code are qualitatively important to the works as a whole. I disagree that the similarities I have identified are ████████████ ████████").

floragunn claims that Dr. Walker's opinions will confuse the jury. Mot at 9. But, even if floragunn were correct that Dr. Walker should have compared some greater portion of Search Guard to some greater portion of X-Pack, Dr. Walker's analysis looks at key parts of those programs' expression and would thus be helpful to the jury in judging substantial similarity in total concept and feel. If floragunn contends that Dr. Walker examined some lesser portion of the works at issue than is required, floragunn is free to cross-examine Dr. Walker on exactly what he considered in forming his opinions on total concept and feel. The jury will not be confused.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny floragunn's motion to exclude portions of Dr. Walker's testimony.

Dated: September 21, 2021

DAVID R. EBERHART
JAMES K. ROTHSTEIN
DANIEL H. LEIGH
O'MELVENY & MYERS LLP


By:      /s/ David R. Eberhart
David R. Eberhart

Attorneys for Plaintiffs
ELASTICSEARCH, INC. and
ELASTICSEARCH B.V.