MICHAEL S. KWUN (SBN 198945)
KWUN BHANSALI LAZARUS LLP
mkwun@kblfirm.com
555 Montgomery St., Suite 750
San Francisco, CA 94111
Telephone: 415 630-2350
Facsimile: 415 367-1539

V. DAVID RIVKIN (admitted *pro hac vice*)
david.rivkin@wg-law.com
JUSTIN LEE (admitted *pro hac vice*)
justin.lee@wg-law.com
MICHAEL SENZER (admitted *pro hac vice*)
michael.senzer@wg-law.com
WUERSCH & GERING LLP
100 Wall St., 10th Fl.
New York, NY 10005
Telephone: 212 509-5050
Facsimile: 212 509-9559

Attorneys for Defendant
FLORAGUNN GmbH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELASTICSEARCH, INC., a Delaware corporation, ELASTICSEARCH B.V., a Dutch corporation, <br><br> Plaintiffs, <br><br> v. <br><br> FLORAGUNN GmbH, a German corporation, <br><br> Defendant. | Case No. 4:19-cv-05553-YGR (AGT) <br><br> **FLORAGUNN'S REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT MARTIN WALKER** <br><br> Date:   October 12, 2021 <br> Time:   2:00 p.m. <br> Dept:   Courtroom 1, 4th Fl. <br> Judge:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

I.   Dr. Walker should not be allowed to testify about purported infringement of Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op type" code. ...............................................................................................2

    A.   The Boness testimony is inadmissible hearsay, and Dr. Walker should not be allowed to offer testimony that relies on it. ...........................................2

        i.   Elastic has not established that the Boness hearsay is a statement against interest. ...................................................................................3

        ii.   Elastic has not established admissibility based on the residual exception to the rule against hearsay. ...............................................4

        iii.   The Boness hearsay is not reliable evidence that could help the jury..................................................................................................5

    B.   Dr. Walker has no other reliable basis for his opinion that floragunn accessed the code that Elastic claims floragunn copied. ...........................7

        i.   Elastic has forfeited the argument that Dr. Walker identified several indicia of decompilation.......................................................7

        ii.   Elastic and Dr. Walker rely on the abrogated inverse ratio rule.................8

        iii.   Most of the supposed indicia of decompilation identified by Dr. Walker instead are his attempts to explain contrary evidence....................9

        iv.   Dr. Walker disclosed no reliable basis for the one purported indicium of decompilation, other than the Boness hearsay, in his expert report............................................................................................10

    C.   Dr. Walker should not be allowed to testify about claimed similarities between floragunn's code and Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op type" code...........11

II.  Dr. Walker should not be allowed to testify about alleged similarity in total concept and feel between Elastic's code and floragunn's code.........................12

CONCLUSION ...................................................................................................................13

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Briggs v. Blomkamp*,
    70 F. Supp. 3d 1155 (N.D. Cal. 2014) ................................................................................ 5

4

5

*Caldwell v. City of San Francisco*,
    No. 12-CV-01892-DMR, 2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ............................. 7

6

*In re IBM Peripheral EDP Devs. Antitrust Litig.*,
    444 F. Supp. 110 (N.D. Cal. 1978) .................................................................................... 4

7

8

*Jason v. Fonda*,
    526 F. Supp. 774 (C.D. Cal. 1981), *aff'd*, 698 F.2d 966 (9th Cir. 1982) ............................. 6

9

*Jason v. Fonda*,
    698 F.2d 966 (9th Cir. 1982) ............................................................................................ 6

10

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ............................................................................................. 7

11

*Navajo Nation v. U.S. Forest Serv.*,
    535 F. 3d 1058 (9th Cir. 2008) ......................................................................................... 7

12

13

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) .......................................................................................... 8

14

*Rivera-Gomez v. de Castro*,
    843 F.2d 631 (1st Cir. 1988) ............................................................................................ 7

15

16

*Roberts v. City of Troy*,
    773 F.2d 720 (6th Cir. 1985) ............................................................................................ 4

17

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) .......................................................................................... 3

18

19

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) (*en banc*) ...................................................................... 5, 8

20

*United States v. Bonds*,
    No. CR 07-00732 SI, 2009 WL 416445 (N.D. Cal. Feb. 19, 2009), *aff'd*, 608
    F.3d 495 (9th Cir. 2010) ................................................................................................... 4

21

22

23

**Statutes**

24

17 U.S.C. § 107 ..................................................................................................................... 3

25

26

**Rules**

27

FED. R. CIV. P. 26 ..................................................................................................... 5, 7, 10, 12

28

FED. R. CIV. P. 33 ................................................................................................. 7

FED. R. EVID. 406 ............................................................................................. 5, 6

FED. R. EVID. 702 ....................................................................................... 5, 6, 10

FED. R. EVID. 802 ................................................................................................ 2

FED. R. EVID. 804 ................................................................................................ 3

FED. R. EVID. 807 ................................................................................................ 4

**Other Authorities**

Committee Notes on Rules—2019 Amendment, FED. R. EVID. 807............................................ 4

Edmund M. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 HARV. L. REV. 177 (1948)....................................................... 2

GEOFFREY GILBERT, THE LAW OF EVID. (2d ed. 1760) ................................................. 2

# INTRODUCTION

Dr. Walker's testimony about decompilation is built on hearsay that is not subject to any exception. Even if the hearsay problem were ignored, the Boness hearsay is not reliable evidence that could help the jury, because its relevance to the issue of access and then to copying is speculative.

Dr. Walker has no other reliable basis for his opinion that floragunn used decompilation to access Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op type" code prior to Elastic making the source code publicly available. Although Elastic claims that Dr. Walker also relied on other indicia of decompilation, it fails in its opposition to explain what those other indicia are. In truth, Dr. Walker disclosed no other indicia save possibly one, and for that single other indicium, he failed to disclose any of supporting reasoning, and thus cannot testify about it.

For all these reasons, Dr. Walker should be precluded from testifying about decompilation, and thus from testifying about floragunn's purported access to Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op type" code. Because he has disclosed no theory for floragunn's access to those code segments *other* than decompilation, he also should be precluded from offering any opinions about those code segments. At a minimum, should not be allowed to offer any opinions about purported similarities between floragunn's code and those code segments unless Elastic *first* presents evidence from which a reasonable jury could conclude that floragunn actually accessed those code segments in some human-readable (i.e., non-binary) form.

Dr. Walker should also be precluded from offering opinions about alleged similarity in total concept and feel between Elastic's code and floragunn's code. Simply put, Dr. Walker applied the wrong legal standard, because he failed to compare the works as a whole, which is the comparison required by Ninth Circuit law. Indeed, Elastic does not argue otherwise. Instead, Elastic argues that Dr. Walker *could* have offered *different* opinions. But he did not offer those opinions, and thus should not be allowed to testify about them.

1

## ARGUMENT

2
3

**I.    Dr. Walker should not be allowed to testify about purported infringement of Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op type" code.**

4
5

    **A.    The Boness testimony is inadmissible hearsay, and Dr. Walker should not be allowed to offer testimony that relies on it.**

6   Hearsay is generally inadmissible. FED. R. EVID. 802. The rule against hearsay is based

7   on a long-held judicial understanding that a witness generally should testify about he or she

8   knows, "not to that only which he hath heard, for mere hearsay is no evidence . . . ." Edmund M.

9   Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 HARV. L. REV. 177,

10  181 (1948) (quoting GEOFFREY GILBERT, THE LAW OF EVID. 152 (2d ed. 1760)). The risk of

11  errors in the retelling of hearsay statements "is increased where the utterance is not written but

12  oral." *Id.* at 198. "The witness rarely reports the exact words he heard but rather the substance of

13  what he understood . . . ." *Id.*

14      Notwithstanding those long-understood dangers, Elastic and Dr. Walker repeatedly

15  assume the truth of a statement by an Elastic founder, Uri Boness, claiming to recall an oral

16  statement that Hendrik Saly purportedly made years ago in February 2015. Boness testified that

17  this purported statement was not even the "focus of the conversation." Kwun Decl., Ex. C

18  (Boness Depo.) at 33:3-14; *see also id.* at 33:22-24.

19      Elastic contends that Saly played a central role in authoring twelve of the code segments

20  that it accuses floragunn of copying. Opp. at 2. Saly went on leave in March 2020, and as a result

21  floragunn was unable to produce him for deposition. *See* Stipulation and Order at 1 (Dkt. No.

22  76). Rather than moving to compel Saly's deposition, Elastic chose instead to enter into a

23  stipulation, signed in February 2021, under which floragunn agreed that Saly would not assist its

24  experts. *Id.* at 2-3. At that time, Elastic was already aware of Boness's claims about his

25  conversation with Saly. Kwun Decl., Ex. D (Interrog. Resps.) at 3, 6. The stipulation makes no

26  mention of admitting into evidence hearsay statements purportedly made by Saly.

27
28

1

          **i.**       **Elastic has not established that the Boness hearsay is a statement against interest.**

2

3            Elastic argues that Saly's purported statement is admissible under the exception to the

4    rule against hearsay for statements against interest. According to Elastic, "standing alone" the

5    purported statement would have exposed Saly to civil liability. Opp. at 13; Fed. R. Evid.

6    804(b)(3). Yet the very case that Elastic cites establishes that disassembly or decompilation can

7    be a privileged fair use "as a necessary step in [the] examination of the unprotected ideas and

8    functional concepts embodied in the code." *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510,

9    1520 (9th Cir. 1992); 17 U.S.C. § 107. "Where there is good reason for studying or examining

10   the unprotected aspects of a copyrighted computer program, disassembly for purposes of such

11   study or examination constitutes a fair use." *Sega,* 977 F.2d at 1520.

12           Boness testified that Saly's purported statement and his purported response "was not a

13   focus of the conversation," and that there was no further discussion about it. Kwun Decl., Ex. C

14   at 33:13-14, 33:22-24. He did not testify if he knew whether Saly had a reason for studying

15   unprotected aspects of the Shield code, and Elastic thus has not established that Saly's purported

16   statement was made against interest. At a minimum, given the state of the law on decompilation,

17   Elastic has not established that, to a reasonable person in Saly's position, the purported statement

18   "was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to

19   invalidate the declarant's claim against someone else or to expose the declarant to civil or

20   criminal liability." Fed. R. Evid. 804(b)(3)(A).

21           Indeed, Boness did not testify that Saly said that *he* had decompiled anything. Instead,

22   Boness claims that Saly purportedly said that some unidentified "they" had decompiled the

23   Shield binary files. Kwun Decl., Ex. C at 33:9-11. That raises the possibility of another layer of

24   hearsay, and at a minimum means that Saly's purported statement wasn't necessarily against *his*

25   *own* interest. Dr. Walker nowhere discloses reliance on anything that could shed light on

26   Boness's understanding of who "they" might refer to, or on the basis for such an understanding.

27           Regardless, for the purported statement to qualify as a statement against interest, Elastic

28   would further need to show that Saly knew that admitting to decompiling the Shield binaries

1    would expose him to civil liability. *United States v. Bonds,* No. CR 07-00732 SI, 2009 WL

2    416445, at *7 (N.D. Cal. Feb. 19, 2009), *aff'd,* 608 F.3d 495 (9th Cir. 2010); *Roberts v. City of*

3    *Troy,* 773 F.2d 720, 725 (6th Cir. 1985) ("Hearsay under the declaration against interest

4    exception is unreliable unless the declarant is aware at the time of making the statement that it is

5    against his interest."). Here, there was no further discussion about the purported decompilation,

6    and Boness did not testify that he knew whether Saly was aware that decompiling Elastic's code

7    supposedly could expose him to civil liability.

8              **ii.     Elastic has not established admissibility based on the residual**
                      **exception to the rule against hearsay.**
9

10           Neither can Elastic rely on the residual exception to the rule against hearsay. *See* FED. R.

11   EVID. 807. Instead of offering an independent basis for arguing the residual exception, in a

12   footnote Elastic merely rehashes its argument for the application of the statement against interest

13   exception, concluding without further discussion that there are circumstantial guarantees of

14   trustworthiness. *See* Opp. at 14 n.8; FED. R. EVID. 807(a)(1). Here, where Boness testified that

15   the topic was not the focus of the conversation, and vaguely claims that Saly said that "they" had

16   decompiled Shield binaries, the hearsay is too imprecise to offer any guarantee of its

17   trustworthiness. Moreover, Elastic should not be allowed to use the residual exception to

18   circumvent its failure to establish the necessary prerequisites for applying the statement against

19   interest exception. *See In re IBM Peripheral EDP Devs. Antitrust Litig.,* 444 F. Supp. 110, 113

20   (N.D. Cal. 1978) (concluding that "it is unlikely that Congress meant this [residual] exception to

21   be used to circumvent its own restriction of another exception").

22           Furthermore, although not necessarily dispositive, Elastic provides no evidence

23   corroborating Saly's purported statement that "they" decompiled the Shield binaries sometime

24   prior to his conversation with Boness in February 2015. *See* FED. R. EVID. 807(a)(1); Committee

25   Notes on Rules—2019 Amendment, FED. R. EVID. 807 ("The rule now provides for a uniform

26   approach, and recognizes that the existence or absence of corroboration is relevant to, but not

27   dispositive of, whether a statement should be admissible under this exception"). Instead, Elastic

28   argues only the reverse—that Saly's purported statement corroborates its theory that floragunn

*later* decompiled other binary files. *See* Opp. at 14. But the claim that the Boness hearsay would help Elastic corroborate *other* claims does nothing to render the hearsay itself more reliable— instead, it only highlights the danger of allowing Dr. Walker to rely on unreliable hearsay.

### iii.   The Boness hearsay is not reliable evidence that could help the jury.

The Boness hearsay in any event is not reliable evidence of anything helpful to the jury. *See* FED. R. EVID. 702(a). Elastic has disclaimed any reliance on the Boness hearsay to prove that Saly habitually decompiled Elastic binaries. Opp. at 11 n.5; *see also* FED. R. EVID. 406. Dr. Walker thus cannot testify that because Saly purportedly told Boness that "they" previously had decompiled Elastic Shield binary files, it must be the case that Saly later decompiled other Elastic binary files.

Elastic instead asserts that the Boness hearsay shows that Saly *knew how* to decompile code. Opp. at 11 n.5. First, Dr. Walker's expert report does not disclose this theory. *See* FED. R. CIV. P. 26(a)(2)(B)(i). In paragraph after paragraph, Dr. Walker summarizes the Boness hearsay, and then says that based *on his own experience*—not based on the Boness hearsay—it would have been possible for floragunn to decompile Elastic binaries. Kwun Decl., Ex. A (Walker Report) ¶¶ 89, 105, 120, 189, 227. Dr. Walker never claimed in his expert report to rely on the Boness hearsay to conclude that Saly knew how to decompile code.[1]

Second, evidence that Saly purportedly knew how to decompile binary files would not establish that floragunn had access to Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op type" code. Elastic seeks to establish copying by proving access and probative similarity. *Skidmore v. Led Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020) (*en banc*). The access prong can itself be established either by evidence of "direct access," or by circumstantial evidence. *Briggs v. Blomkamp,* 70 F. Supp. 3d 1155, 1165 (N.D. Cal. 2014). Circumstantial evidence of access can be established by showing that the defendant had a

---

[1] Indeed, Dr. Walker nowhere discloses his purpose in recounting the Boness testimony. *See id.* Dr. Walker testified *at his deposition* that "it follows" that Saly was familiar with the process of decompiling. Eberhart Decl., Ex. N at 125:14-19. That ignores that Boness claims that Saly told him that "they"—which might not mean Saly—decompiled the Shield binaries. In any event, Dr. Walker did not disclose that theory or his purported reliance on it in his expert report.

1    reasonable opportunity to view the work—but that requires more than a "bare possibility" of

2    access. *Jason v. Fonda,* 526 F. Supp. 774, 775-77 (C.D. Cal. 1981), *aff'd,* 698 F.2d 966, 967 (9th

3    Cir. 1982) ("Our review of the facts and issues leads us to concur in the well-reasoned decision

4    of Judge Kelleher filed September 21, 1981. . . . We therefore incorporate his memorandum of

5    decision by reference.").

6         Ultimately, the question is whether Dr. Walker identified in his report evidence of

7    copying in support of his opinions regarding Elastic's "internal predicate," "binaryField,"

8    "exceptionCaught()," "resolve()," or "bulk op type" code. The relevance of the Boness hearsay

9    to this issue is too attenuated to be a reliable basis for any testimony by Dr. Walker. *See* FED. R.

10   EVID. 702(c). According to Elastic, Dr. Walker's testimony would be (a) Boness said that, in

11   February 2015, Saly told him that "they" decompiled Shield binaries sometime before that; (b)

12   that supposedly means that Saly knew how to decompile Shield binaries; and (c) even though

13   Boness in February 2015 told Saly that Elastic did not allow decompilation of its binaries (Kwun

14   Decl., Ex. C at 33:14-21), it's possible that Saly nonetheless thereafter did so, repeatedly, in

15   order to gain access to Elastic's "internal predicate," "binaryField," "exceptionCaught(),"

16   "resolve()," or "bulk op type" code.[2] At best, the Boness hearsay supports speculation that there

17   is a bare possibility that floragunn accessed Elastic's "internal predicate," "binaryField,"

18   "exceptionCaught()," "resolve()," or "bulk op type" code. That is not enough. *Jason,* 698 F.2d

19   at 967.

20        In sum, the chain of events Elastic seeks to argue through Dr. Walker's testimony is

21   speculative rather than reliable. *See* FED. R. EVID. 702(c). Although Elastic argues that allowing

22   the jury to be told that Saly purportedly admitted to previously decompiling Shield binaries

23   would "help" the jury, Opp. at 14 n.9, it instead would allow Elastic to launder inadmissible

24   hearsay, and invite the jury to make an unwarranted leap that Saly decompiled before, and if so

25   that he must have done so again. *See Caldwell v. City of San Francisco,* No. 12-CV-01892-

26

27

28   _____

[2] Again, Elastic is *not* arguing (and indeed cannot argue) that because Saly purportedly decompiled the Shield binaries before, that is itself evidence that he did so again. *See* Opp. at 11 n.5; Fed. R. Evid. 406.

DMR, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) (expert witnesses cannot simply be conduits for hearsay); *Marvel Characters, Inc. v. Kirby,* 726 F.3d 119, 136 (2d Cir. 2013) (same).[3]

### B.   Dr. Walker has no other reliable basis for his opinion that floragunn accessed the code that Elastic claims floragunn copied.

#### i.   Elastic has forfeited the argument that Dr. Walker identified several indicia of decompilation.

Elastic argues that, in addition to the Boness hearsay, Dr. Walker supposedly identified several indicia of decompilation. Elastic supports this assertion only with an opaque citation to several paragraphs of Dr. Walker's expert reports and certain portions of his deposition testimony. Opp. at 10. By failing to explain these other purported indicia of copying, Elastic has forfeited any argument based on them. *See Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1079 n.26 (9th Cir. 2008) (noting, in the appellate context, that "a bare assertion . . . with no supporting argument" does not preserve a claim). "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir. 1988) (quotation marks and citation omitted).

Moreover, Elastic never supplemented its interrogatory responses to identify any of these purported additional indicia of copying. *See* Kwun Decl., Ex. D. Dr. Walker's reports cannot themselves serve as supplemental responses to floragunn's interrogatories, because Elastic did not sign those reports under oath. FED. R. CIV. P. 33(b)(3), (5) (answers to interrogatories must be "under oath" and "[t]he person who makes the answers must sign them"). Nor can Elastic's failure to supplement be cured at this late stage, *after* expert depositions and *after* full briefing of floragunn's *Daubert* motion regarding Dr. Walker. *See* FED. R. CIV. P. 26(e)(1)(A)

---

[3] Elastic argues that floragunn's expert, Professor Astrachan, testified that he has relied on hearsay in other cases. Opp. at 14. That is incorrect. Professor Astrachan testified that he has not always spoken to every developer when forming opinions in other cases. That does not mean he relied on hearsay. Instead, as in this case, Professor Astrachan may have relied on his own review of the code at issue.

1    (supplemental discovery responses must be made "in a timely manner").

2                    ii.      **Elastic and Dr. Walker rely on the abrogated inverse ratio rule.**

3          Even if Elastic had preserved this argument, the other purported indicia of decompilation

4    are at best evidence of probative similarity—evidence that the floragunn code is similar to the

5    Elastic code in ways that supposedly suggest copying. *See* Eberhart Decl., Ex. N (Walker Depo.)

6    at 125:20-22 (testifying that "the later code" is evidence of decompiling and thus of access); *id.*

7    at 126:8-126:17 (testifying that the "identical source code" is evidence of decompiling and thus

8    of access). But proving copying via circumstantial evidence requires proof of access *and*

9    probative similarity. *See Skidmore,* 952 F.3d at 1064.

10         In *Skidmore,* the Ninth Circuit considered the inverse ratio rule, under which a lower

11   standard of proof of probative similarity had been required to prove copying where a high degree

12   of access was shown. *Id.* at 1065-66. The *en banc* court noted that, under prior precedent, the

13   inverse ratio rule "goes both ways"—i.e., that it allowed for less compelling evidence of access if

14   the similarities are more stark. *See id.* at 1067 (discussing *Rentmeester v. Nike., Inc.,* 883 F.3d

15   1111, 1124 (9th Cir. 2018)). The *Skidmore* court held that "the constellation of problems and

16   inconsistencies in the application of the inverse ratio rule prompts us to abrogate the rule." *Id.* at

17   1069. In view of the *en banc* court's observation that the inverse ratio rule "goes both ways," that

18   abrogation necessarily encompasses both versions of the rule. Thus, a greater showing of

19   similarities cannot excuse an insufficient showing of access. Elastic thus cannot rely on evidence

20   of a purported probative similarity to cure a lack of evidence that floragunn accessed Elastic's

21   code.

22         Dr. Walker therefore cannot, consistent with Ninth Circuit law, conclude that floragunn

23   must have had *access* to Elastic's "internal predicate," "binaryField," "exceptionCaught()," 

24   "resolve()," or "bulk op type" code based on his opinions regarding purported *similarities*

25   between the Elastic and floragunn code. In any event, Dr. Walker never opined that the

26   similarities between the Elastic and the floragunn code are so striking that they could only be the

27   result of decompilation. *See, e.g.,* Kwun Decl., Ex. A ¶ 239 (opining that a certain variable name

28   "may" be the result of a substitution after decompilation); Eberhart Decl., Ex. N at 224:4-12 ("I

1    didn't say [the variable name] definitely indicated reverse compilation"); *see also id.* at 195:3-14

2    (testifying that the "most . . . likely" explanation for certain similarities, in his opinion, is

3    decompilation); *id.* at 196:25-198:4 (testifying that for some of the code, there were similarities

4    for which decompilation was a "straightforward" explanation, but that they "could be evidence

5    of some other type of copying").

6           iii.    **Most of the supposed indicia of decompilation identified by Dr.**
                    **Walker instead are his attempts to explain contrary evidence.**

7

8           Most of the supposed other indicia of decompilation are instead Dr. Walker's attempts to

9    explain *differences* between the Elastic code and the floragunn code. In the paragraph just noted,

10   Dr. Walker opines that floragunn's use of a variable name ("ar") that he doesn't understand and

11   that Elastic does *not* use "may" indicate decompilation. Kwun Decl., Ex. A ¶ 239. He also opines

12   that the *absence* of Elastic's comments in floragunn's code could be because comments are lost

13   when code is decompiled. *Id.* ¶ 96. Again, that is not a striking similarity—it's a *dis*similarity

14   that Dr. Walker seeks to explain away. He further opines that any other differences that are not

15   explained by decompilation could be the result of changes that floragunn made manually. *Id.*

16   ¶ 102; *see also* Eberhart Decl., Ex.  N at 192:10-194:2. That is another attempt to explain

17   dissimilarities, not similarities.

18          Elastic also cites Dr. Walker's testimony in which he claims that he identified additional

19   indicia of decompilation in "paragraph 241 and following" of his opening report. Opp. at 10

20   (citing Walker Depo. at 229:18-21). Elastic, however, does not itself identify "paragraph 241 and

21   following" as disclosing additional indicia of decompilation. *See* Opp. at 10 (citing paragraphs

22   96, 227, and 238-239 of Dr. Walker's opening report). And, in fact, nothing in "paragraphs 241

23   and following" of Dr. Walker's opening report identifies any indicia of decompilation. *See* Kwun

24   Decl., Ex. A ¶¶ 241-244.

25          Dr. Walker also testified decompilation would technically have been possible. *See*

26   Eberhart Decl., Ex. N at 127:12-22. But a bare possibility is not enough to prove access. *Jason,*

27   698 F.2d at 967. Elastic also cites *conclusions* that Dr. Walker offers in his reply report. *See*

28   Kwun Decl., Ex. E (Walker Reply Report) ¶¶ 96-97. But Dr. Walker was required to disclose

1    "the basis and reasons" for his conclusions. FED. R. CIV. P. 26(a)(2)(B)(i). Paragraphs 96 and 97

2    in his reply report disclose no bases or reasons. *See* Kwun Decl., Ex. E ¶¶ 96-97.

3              **iv.    Dr. Walker disclosed no reliable basis for the one purported indicium**
                        **of decompilation, other than the Boness hearsay, in his expert report.**

4

5              The one purported indicium of decompilation, other than the Boness hearsay, that Dr.

6    Walker offers relates to floragunn's use of the string "indices:data/write/bulk[s]" in a line of

7    floragunn code that is Dr. Walker claims is analogous to a *different* string

8    ("TransportShardBulkAction.ACTION_NAME") that Elastic uses in its "bulk op type" code. *See*

9    Kwun Decl., Ex. A ¶¶ 227, 238. Dr. Walker believes that this difference indicates that

10   floragunn's code was copied from a decompiled version of Elastic's code. *See id.* ¶ 227.

11             Yet Dr. Walker disclosed no reliable basis for his belief. Instead, he played a shell game,

12   first promising that he would "explain below" his reasoning, *id.,* and then later saying that the

13   explanation had been "explained above," *id.* ¶ 238. That's circular. It does not disclose a basis

14   for his opinion.

15             Dr. Walker cannot excuse his failure to support his opinion by pointing to an unadorned

16   citation to an unexplained conversation with Elastic engineer Tim Vernum. *See id.* ¶ 227 n.140;

17   Opp. at 11. First, Elastic did not disclose Vernum as an expert,[4] so he cannot offer expert

18   testimony. *See* FED. R. EVID. 702. Second, if Elastic plans to have Vernum testify as a *percipient*

19   witness about his own experience decompiling Elastic code, Dr. Walker failed to disclose any

20   such facts, and thus cannot rely on them. *See* Kwun Decl., Ex. A ¶ 227 & n.140 (not disclosing

21   what Vernum did); FED. R. CIV. P. 26(a)(2)(B)(i) (requiring disclosure of "the reasons" for an

22   expert's opinions). Third, if Vernum had performed such an experiment, according to Elastic it

23   would have been unreliable. *See* Opp. at 12 (arguing that an attempt to "duplicate Mr. Saly's

24   [purported] decompilation activities" would not have been reliable). Fourth, if Vernum has some

25   other supposed basis as a percipient witness that would allow him to testify on this topic, Dr.

26

27   _____
     [4] Pursuant to the Court's Standing Order, Elastic disclosed Vernum as a *percipient* witness who
28   might testify at trial with technical expertise akin to an independent expert. But Elastic served
     neither a written expert report signed by Vernum nor a disclosure with a "summary of the facts
     and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

1   Walker's failure to disclose any details about Vernum's analysis means, again, that Dr. Walker

2   cannot rely on them.

3          In short, Dr. Walker's opinions regarding decompilation cannot reliably be based on the

4   Boness hearsay and are not supported by other indicia of decompilation that Dr. Walker

5   disclosed. Those opinions instead are based on speculation that is uninformed by any analysis

6   that Dr. Walker performed, Mot. at 7,[5] and unsupported by any *disclosed* explanations provided

7   by Vernum. Dr. Walker cannot testify about conclusions that are based on reasoning that he

8   failed to disclose, and what he did disclose is speculative. The Court should exclude any

9   testimony by Dr. Walker about decompilation.

10          **C.    Dr. Walker should not be allowed to testify about claimed similarities
               between floragunn's code and Elastic's "internal predicate," "binaryField,"
11             "exceptionCaught()," "resolve()," or "bulk op type" code.**

12          Elastic argues that even if the Court excludes Dr. Walker's testimony about access, he

13   should still be allowed to offer opinions about purported similarities between floragunn's code

14   and Elastic's internal predicate," "binaryField," "exceptionCaught()," "resolve()," or "bulk op

15   type" code. *See* Opp. at 16. Elastic concedes that it would "need to prove access to those

16   particular code segments in other ways," but identifies no way in which it would be able to do so.

17   *Id.*

18          The exclusion of Dr. Walker's access opinions should result in exclusion of all other

19   opinions that he has that depend on those access opinions. Thus, because Dr. Walker disclosed

20   no basis, other than decompilation, for an opinion that floragunn accessed those code segments,

21   he should not be allowed to testify about those code segments at all.

22          At a minimum, the Court should preclude Dr. Walker from testifying about purported

23   infringement of Elastic's "internal predicate," "binaryField," "exceptionCaught()," "resolve(),"

24   or "bulk op type" code unless Elastic *first* offers evidence at trial sufficient to support a jury

25   finding that floragunn accessed those code segments in a manner that allowed floragunn

26

27   _____
     [5] Dr. Walker admitted that he didn't "know what the state of the reverse compiled JAVA code
28   would look like using Mr. Saly's [purported] decompiler." Eberhart Decl., Ex. N at 215:10-20;
     *see also id.* at 216:8-15.

developers to review Elastic's code—i.e., in some form other than binary files. Absent such evidence, Dr. Walker's testimony about purported similarities would have no relevance and would serve only to confuse the jury.

## II.   Dr. Walker should not be allowed to testify about alleged similarity in total concept and feel between Elastic's code and floragunn's code.

Dr. Walker's opening report never purports to compare the works as a whole; in its opposition, Elastic never argues otherwise. Indeed, had Dr. Walker offered an opinion comparing the works *as a whole,* he would not have needed separately to state his opinion for each of the code segments at issue. Kwun Decl., Ex. A ¶¶ 73, 86, 102, 117, 137, 152, 168, 186, 197, 224, 248, 264, 284, 308.

Elastic seems to argue that Dr. Walker *could* have stated an opinion that the works as a whole are substantially similar. *See* Opp. at 17-18. Dr. Walker is not entitled to testify about opinions he *could* have formed; he is limited to the opinions that he did form and that were timely disclosed. FED. R. CIV. P. 26(a)(2)(B)(i). Nor is it sufficient that in his *reply* report he stated his disagreement with Professor Astrachan, both because his reply report should not be used to introduce new opinions, and because the only disclosed *basis* for his reply opinion is his opening report. Kwun Decl., Ex. E ¶ 119.

1

**CONCLUSION**

2          For the foregoing reasons, floragunn respectfully requests that the Court strike paragraphs

3   22, 53-55, 72, 86, 89-137, 152, 168, 186-197, 224-248, 264, 284, and 308 of the Walker Report,

4   and paragraphs 6-13, 35-71, 78-86, 95-103, and 119 of the Walker Reply Report. floragunn

5   further requests that the Court exclude Dr. Walker from offering any testimony based on the

6   stricken paragraphs.

7

8   September 28, 2021                          KWUN BHANSALI LAZARUS LLP

9
                                               */s/ Michael S. Kwun*
10                                             MICHAEL S. KWUN

11                                             WUERSCH & GERING LLP
                                               V. DAVID RIVKIN (admitted *pro hac vice*)
12                                             JUSTIN LEE (admitted *pro hac vice*)
                                               MICHAEL SENZER (admitted *pro hac vice*)
13
                                               Attorneys for Defendant FLORAGUNN GmbH
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28