1    DAVID R. EBERHART (S.B. #195474)
     deberhart@omm.com
2    JAMES K. ROTHSTEIN (S.B. #267962)
     jrothstein@omm.com
3    DANIEL H. LEIGH (S.B. #310673)
     dleigh@omm.com
4    O'MELVENY & MYERS LLP
     Two Embarcadero Center
5    28th Floor
     San Francisco, California  94111-3823
6    Telephone:     +1 415 984 8700
     Facsimile:     +1 415 984 8701
7
     Attorneys for Plaintiffs
8    ELASTICSEARCH, INC. and
     ELASTICSEARCH B.V.
9
                    **UNITED STATES DISTRICT COURT**
10
                   **NORTHERN DISTRICT OF CALIFORNIA**
11
                          **OAKLAND DIVISION**
12

13

14   ELASTICSEARCH, INC., a Delaware          Case No. 4:19-cv-05553-YGR (AGT)
     corporation, and ELASTICSEARCH B.V., a
15   Dutch corporation,                       **PLAINTIFFS ELASTICSEARCH, INC.
                                              AND ELASTICSEARCH B.V.'S
16                   Plaintiffs,              NOTICE OF MOTION AND MOTION
                                              FOR SANCTIONS AGAINST
17          v.                                FLORAGUNN REGARDING HENDRIK
                                              SALY**
18   FLORAGUNN GmbH, a German corporation,
                                              Judge:  Hon. Yvonne Gonzalez Rogers
19                   Defendant.               Magistrate Judge: Hon. Alex G. Tse

20

21

22              REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

23

24

25

26

27

28

1                       **NOTICE OF MOTION AND MOTION**

2   TO DEFENDANT FLORAGUNN GMBH AND ITS COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that before the Honorable Alex G. Tse, San Francisco

4 Courthouse, Courtroom A – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102,

5 Plaintiffs Elasticsearch, Inc. and Elasticsearch B.V. ("Elastic") will and do hereby move this

6 Court for an order imposing issue sanctions upon Defendant floragunn GmbH ("floragunn") for

7 refusing to produce its former employee and Chief Technology Officer Hendrik Saly for

8 deposition and its misrepresentation of Mr. Saly's unavailability to appear for a deposition.

9 Specifically, Elastic requests that the Court instruct the jury:

10       1.     floragunn could have, but refused, to make Mr. Saly available for deposition; and

11       2.     it is established that Mr. Saly accessed the infringed Elastic code and copied from

12 Elastic the twelve specific accused floragunn code segments that he "authored."

13         This motion, which is brought pursuant to the Court's inherent power to impose sanctions

14 for discovery abuses as well as Federal Rules of Civil Procedure 26, 34, and 37, is based upon

15 this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the

16 accompanying Declaration of David Eberhart, and the exhibits attached thereto, the accompany

17 Declaration of Martin Walker, the pleadings and filings in this action, all matters of which the

18 Court may take judicial notice, and all other such arguments and authorities as may be presented

19 to the Court.

20

21     Dated:  November 12, 2021           DAVID R. EBERHART

22                                   JAMES ROTHSTEIN
                                      DANIEL LEIGH

23                                   O'MELVENY & MYERS LLP

24                             By:        */s/ David R. Eberhart*
                                      David R. Eberhart

25                             Attorneys for Plaintiffs
                            Elasticsearch, Inc. and

26                             Elasticsearch B.V.

27

28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT BACKGROUND ........................................................................... 1

        A.      Mr. Saly's Role in the Dispute................................................................ 1

        B.      Elastic Repeatedly Sought Mr. Saly's Deposition ................................. 2

        C.      The Parties' Stipulation.......................................................................... 4

        D.      After Elastic Informed floragunn of Its Intended Motion, floragunn
                Terminated Saly's Employment and Did Not Notify Elastic or the Court for
                One Month ............................................................................................... 6

III.    LEGAL STANDARD ......................................................................................... 9

IV.     ARGUMENT ...................................................................................................... 10

        A.      floragunn Falsely Claimed Mr. Saly Was Unavailable........................... 10

        B.      floragunn's Termination of Mr. Saly's Employment During This Dispute
                Demonstrates Bad Faith .......................................................................... 13

        C.      floragunn's Deception Has Prejudiced Elastic....................................... 15

        D.      Issue Sanctions Are the Only Appropriate Remedy ............................. 17

V.      CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                          Page

*Campbell Indus. v. M/V Gemini*,
   619 F.2d 24 (9th Cir. 1980).................................................................................. 9

*Chambers v. NASCO, Inc.*,
   501 U.S. 32, *reh'g denied*, 501 U.S. 1269 (1991) .................................... 9

*Christoffersen v. Malhi*,
   2017 WL 2653055 (D. Ariz. June 20, 2017)........................................ 10

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993)............................................................... 10

*Hester v. Vision Airlines, Inc.*,
   2010 WL 4553449 (D. Nev. Nov. 3, 2010) ...................................... 9, 15

*Karnazes v. Cnty. of San Mateo*,
   2010 WL 2672003 (N.D. Cal. July 2, 2010)........................................ 9

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992).................................................. 9, 10, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court should impose issue sanctions against defendant floragunn GmbH for its failure to produce its CTO, Hendrik Saly, for deposition, its false statements regarding Mr. Saly's condition, and its termination of Mr. Saly after Elastic sought issue sanctions. Because he is the author of 12 of the 19 sections of source code that Elastic accuses of infringement, Mr. Saly is one of the most important witnesses in this litigation. Elastic repeatedly sought his deposition over a period of months, but floragunn consistently represented that Mr. Saly was on ███ leave and unavailable to be deposed. floragunn, however, continued these representations after they were indisputably false: on January 28, 2021, Mr. Saly's ███████████ return to work. floragunn hid this fact for months.

In the meantime, floragunn continued to insist to Elastic and to the Court that Mr. Saly was unavailable. Those false claims led to, and are memorialized in, a stipulation regarding Mr. Saly submitted by the parties on February 22, 2021, and entered by the Court on February 25, 2021. Elastic later discovered floragunn's deception and demanded a meet and confer that led to Elastic's motion for issue sanctions. The same day that Elastic filed its initial letter brief seeking those sanctions, floragunn terminated Mr. Saly. floragunn did not inform the Court or Elastic of this fact in the ensuing hearing on the motion; rather, floragunn concealed that fact until after the Court sought more evidence regarding Mr. Saly's ██████.

Accordingly, Elastic requests that the Court instruct the jury that (1) floragunn could have, but refused, to make Mr. Saly available for deposition and (2) it is established that Mr. Saly accessed the infringed Elastic code and copied from Elastic the twelve specific accused floragunn code segments he "authored."

### II.    RELEVANT BACKGROUND[1]

#### A.    Mr. Saly's Role in the Dispute

Elastic alleges that nineteen code segments in floragunn's Search Guard software infringe

---

[1] All exhibit ("Ex.") references are to the Declaration of David Eberhart in Support of Plaintiffs' Motion For Sanctions Against floragunn.

1    various Elastic copyrights. Hendrik Saly, floragunn's former Chief Technology Officer, is the

2    undisputed author of twelve of those segments. Ex. A (Deposition Ex. 185). Mr. Saly exclusively

3    possesses information about the development of those segments of code. *See e.g.*, Ex. B, March 9,

4    2021, J. Kressin Dep. Tr. 120:24-124:1, 127:17-130:22 (testifying that he did not know whether

5    Mr. Saly had accessed Elastic code). Indeed, floragunn's Amended Answer refers extensively to

6    Mr. Saly, mentioning him eight times and asserting that Mr. Saly originally developed Search

7    Guard. Dkt. 82.

8            **B.      Elastic Repeatedly Sought Mr. Saly's Deposition**

9            Recognizing Mr. Saly's central role in floragunn's infringement, Elastic repeatedly sought

10   to depose Mr. Saly. On November 25, 2020, Elastic requested from floragunn a date for Mr.

11   Saly's deposition. Ex. C, November 25, 2020 J. Rothstein Email. In response, floragunn's counsel

12   informed Elastic for the first time that Mr. Saly has been on ███████ leave since March 2020 and

13   was unable to be deposed. floragunn's counsel informed Elastic that floragunn expected Mr.

14   Saly's ████ would continue at least through the close of fact discovery (then January 29, 2021,

15   Dkt. 68). Eberhart Decl. ¶ 5.

16           On December 7 and 14, 2020 floragunn produced a sequence of 11 certificates in a form

17   prescribed by German law. Exs. D & F, December 7 and 14, 2020, D. Rivkin Emails. Each

18   certificate bore at least three dates, as indicated by the certified translations at the end of those

19   exhibits: (1) an issuance date, (2) a date on which ██████████████████ Mr. Saly

20   ("determined on"), and (3) a date through which ████████████ Mr. Saly would be

21   ██████████████████████████████████████████

22   ████). (Throughout this brief, Elastic refers to the "issuance date" or date the certificate "was

23   issued" to refer to (1)—that is, the issuance date.) Some of those certificates also bore a fourth

24   date corresponding to the date on which t█████████████████████

25   ██████; for some certificates in that group, that portion of the form was blank. The certificate

26   issued August 31, 2020 is reproduced below, immediately followed by a certified English

27   translation of the same:

28

PLS.' MOTION FOR SANCTIONS
AGAINST FLORAGUNN
4:19-CV-05553-YGR

(Certificate and translation from Ex. D.)

Collectively, those 11 certificates purportedly proved that Mr. Saly was ███████ unavailable to work continuously from March 26, 2020 through January 27, 2021. To establish Mr. Saly's right to leave, his employment contract required him ████████████████ ███████████████████████████████████████████████████████████████████████████ ███████. Exs. F & G, Deposition Ex. 164 § 7.1 and translation. On December 23, 2020, Elastic issued a request for production of all documents supporting Mr. Saly's alleged unavailability. Ex. H, RFP No. 103. In response, floragunn agreed to produce "documents supporting the fact that

1  Hendrik Saly is unavailable to be deposed in this lawsuit that it is able to locate after an

2  appropriate and proportional search." Ex. I, Response to RFP No. 103.

3        On January 25, 2021, Elastic again asked if Mr. Saly was available for deposition.

4  floragunn's counsel stated that he expected that Mr. Saly would not be available to be deposed.

5  Eberhart Decl. ¶ 10. On February 5, 2021, Elastic requested that counsel provide Mr. Saly's leave

6  certificate for periods after January 27, 2021, even though production of that certificate was

7  required by Elastic's December 23, 2020, document requests and floragunn's responses thereto

8  committed to provide such documentation. Ex. J, February 5, 2021 Email from D. Eberhart. On

9  February 9, 2021 floragunn's counsel wrote that "████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████." Ex. K, February 9, 2021 Email from D. Rivkin.

13  **C.**     **The Parties' Stipulation**

14        As of February 2021, floragunn had produced on multiple occasions ████████████

15  ████████████████████████; as a group, those ████████████████████ ████████████

16  ██████ continuously from March 23, 2020, until January 27, 2021. Based on this history, Elastic

17  accepted counsel's representation on February 9, 2021, that floragunn would deliver a ████████l

18  certificate confirming Mr. Saly's ████████████████████ for a period after January 27, 2021.

19        Unknown to Elastic, however, Mr. Saly's ████████████████ on January 28, 2021, that

20  Mr. Saly's ██████████ had ended on January 27, 2021. Ex. L, Deposition Ex. 394; Ex. M, Oct. 28,

21  2021, J. Kressin Dep. Tr. 750:6-22. As shown below, that certificate was materially different

22  from every other certificate that Mr. Saly had provided to floragunn: it reflected a last ████████

23  date (January 27, 2021) ***prior*** to the date of ████████████ (January 28, 2021):

1

2

3

4

5

6

7

8

9

10



(Ex. L)

11    And although floragunn's CEO testified that did not know when the company received that

12    particular certificate, he conceded that ████████████████████████████████████████

13    ██████████████████ Ex. M, Oct. 28, 2021, J. Kressin Dep. Tr. at 742:23-743:13. At the

14    latest, floragunn received the January 28 certificate two weeks after ██████████. *Id.* But

15    floragunn did not produce that certificate until March 16, 2020. *Compare* Ex. L *with* certificates

16    in Exs. D and E.

17         Based on the record of ██████ unavailability that had been presented to Elastic and the

18    representations of counsel, Elastic did not think that the Court would order that Mr. Saly appear

19    for deposition. Accordingly, Elastic began on February 11, 2021, to discuss with counsel for

20    floragunn a stipulation to address Mr. Saly's claimed unavailability. Eberhart Decl. ¶ 15. As of

21    that date, there can be no reasonable dispute that floragunn knew that Mr. Saly had been cleared

22    to work after January 27, 2021, even though it appears floragunn did not inform its counsel of that

23    fact. The parties eventually agreed on February 22 to a stipulation (the "Saly Stipulation") that

24    provided that (1) Elastic would not move to compel Mr. Saly's deposition, (2) floragunn would

25    not allow Mr. Saly to participate in the case, including by providing assistance to floragunn's

26    expert witnesses, and (3) if Mr. Saly became "available to testify at trial, the parties [would] meet

27    and confer in an effort to agree on procedures that would eliminate prejudice to plaintiffs from

28    Mr. Saly's late availability." Dkt. 76.

1    The stipulation memorialized Elastic's reliance on counsel's representations: defendant

2   "has represented to plaintiffs that (a) additional documentation showing the basis for Mr. Saly's

3   leave for periods past January 27, 2021 is expected to be provided to defendant and will be

4   provided to plaintiffs [and] (b) defendant does not anticipate that Mr. Saly will be able to return

5   from leave to be deposed before March 19, 2021." Dkt. 76. But floragunn knew as of the date of

6   the stipulation that Mr. Saly had been ████████ return to work on January 28, 2021; accordingly,

7   floragunn had no reasonable grounds to represent that there would be a basis for his leave after

8   that date or that he would not be available to be deposed before March 19, 2021. Not only did the

9   certificate dated January 28 state that Mr. Saly was only ████████ through January 27, but (1) Mr.

10   Saly's employment contract required Mr. Saly to ████████████████████████████

11   ████████████████████, and (2) absent ████████████, there would be no proof

12   that Mr. Saly could not be deposed. Exs. F & G. The Court entered the Saly Stipulation on

13   February 25, 2021. Dkt. 76.

14    On March 16, 2021, floragunn produced more ████certificates. This included the

15   certificate issued January 28, 2021, and certificates dated February 1 and March 3, 2021, that

16   together claimed ████ for the period of February 17, 2021, to March 17, 2021. Ex. N. There

17   was still no ████ certificate for the period from January 28, 2021 to February 16, 2021.

18   Notwithstanding floragunn's knowledge that Mr. Saly had been ████████████ to work as of

19   January 28, 2021, counsel for floragunn continued to represent that the purportedly missing—but

20   actually nonexistent—certificate would be provided. On March 16, 2021, floragunn's counsel

21   wrote to Elastic: "████████████████████████████████████████████████

22   ████████████████████████████████████." *Id.*

**D.    After Elastic Informed floragunn of Its Intended Motion, floragunn Terminated Saly's Employment and Did Not Notify Elastic or the Court for One Month**

25    On May 5, 2021, Elastic requested a meet and confer with floragunn regarding issue

26   sanctions based on floragunn's misrepresentations regarding Mr. Saly's ████████ and its failure

27   to produce him for deposition. Ex. O. On May 6, 2021, floragunn produced (1) a ████████

28   certificate issued April 20, 2021 certifying ████████through May 18, 2021, Ex. P, and (2) a letter

PLS.' MOTION FOR SANCTIONS
AGAINST FLORAGUNN
4:19-CV-05553-YGR

1    dated April 12, 2021 ████████████████████ Ex. Q. The ██████████████ letter

2    purported to ████████████████████████████████████████ it claimed,

3    incredibly, that Mr. Saly ██████████████████████████████████████████

4    ████ Ex. Q.

5          On May 20, 2021, fifteen days after Elastic requested the meet and confer and twelve days

6    after floragunn received Elastic's initial draft of its discovery letter seeking issue sanctions,

7    floragunn produced a one-line letter, dated May 20, 2021. Ex. R. That letter retroactively claimed

8    that Mr. Saly ██████████████████ from January 28, 2021 to February 16, 2021. Ex. R.

9    Although that letter purported to be from ████████████████ Mr. Saly up to January

10   28, 2021, ████████████████████████████████████████████████t

11   ████████████████████ ████████████████████████████████████

12   ████████, and did not provide any details of Mr. Saly's purported unavailability.

13         Elastic filed its letter brief seeking sanctions on May 21, 2021. Dkt. 101. That same day,

14   with indisputable knowledge of Elastic's forthcoming brief given the meet and confer

15   correspondence and calls on May 6 and 14 (*see* Dkt. 101-2 at 1), floragunn terminated Mr. Saly's

16   employment, effective June 30, 2021. Dkt. 127 (J. Kressin Decl.) ¶ 16. floragunn did not inform

17   Elastic of this termination; nor did floragunn inform the Court of Mr. Saly's termination at the

18   June 11 hearing regarding Elastic's letter brief.

19         Pursuant to the Court's June 11, 2021 order (Dkt. 112), the parties met and conferred on

20   June 21 to discuss further development of the record regarding Mr. Saly's claimed unavailability.

21   (Dkt. 115.)  During the meet and confer, floragunn for the first time informed Elastic that it

22   terminated Mr. Saly's employment. Eberhart Decl. ¶ 21. On the same day, floragunn produced

23   three certificates dated April 21, May 19, and June 16, 2021, that contained ██████████████

24   ████████████████████ ████████████████████████████████████

25   ██. Ex. S. ████████████████████████████████████████

26   ████████████████████████████████████████████. But neither the

27   ████ nor any other information produced by floragunn gives any indication that Mr. Saly was

28   ████████████████████████████████████████████████████

1    ████████████████████████████████████.

2          Following the July 9, 2021, hearing on this dispute, the Court ordered that floragunn file

3    "a declaration describing (1) all communications involving Saly and his potential return to work

4    at floragunn in January and/or February 2021, and (2) the circumstances of Saly's recent

5    termination from floragunn." (Dkt. 121.) floragunn provided the required declaration from its co-

6    CEO Jochen Kressin. Mr. Kressin admitted that floragunn frequently ███████████████████

7    ████████████████████████████████████████████████████ (Dkt. 127.)

8    floragunn's declaration, however, did not describe the full substance of these communications.

9    Nor did the declaration reveal the fact that floragunn also employed Mr. Saly's wife. Ex. M, Oct.

10   28, 2021, J. Kressin Dep. Tr. at 726:16-22, 728:3-9. Mr. Kressin further declared that floragunn

11   had terminated Mr. Saly to ████████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████ (Dkt. 127.) Following further briefing, the Court ordered that floragunn

14   produce certain communications to substantiate its assertions regarding Mr. Saly's ████████

15   ████████████ unavailability to sit for deposition in this case. (Dkt. 136.)

16          floragunn's subsequent document production had substantial gaps and further undermined

17   the claim that Mr. Saly was unfit to be deposed in January 2021. First, there were large gaps in

18   the phone records: ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████ the month in which Mr.

22   Kressin admitted he discussed with Mr. Saly a potential return to work. Ex. AA, Mar. 1, 2021, J.

23   Kressin Dep. Tr. at 72:17-75:21. Nor did Mr. Kressin's cell phone call log have any evidence of

24   the "brief telephone conversation" he claimed to have had with Mr. Saly informing him of his

25   termination. (Dkt. 127 ¶ 16.) Second, there were no emails discussing Mr. Saly's ████████

26   ████████████ potential return to work. The documents also indicated that floragunn's co-CEOs

27   were discussing ████████████████████ with Mr. Saly during January 2021—the very

28   period in which Mr. Saly was purportedly ████████████ unable to sit for a deposition. Ex. V

1  (Deposition Ex. 395).

2       Elastic subsequently sought, and the Court ordered, Mr. Kressin to sit for deposition

3  regarding floragunn's communications with Mr. Saly and its determination to terminate Mr.

4  Saly's employment. (Dkt. 208.) The deposition occurred on October 28, 2021. Among other

5  things, Mr. Kressin testified that floragunn ███████████████████████████████

6  ████████████████████████. Ex. M, Oct. 28, 2021, J. Kressin Dep. Tr. at

7  742:23-746:5. Mr. Kressin also testified that he, rather than a forensic expert, personally pulled

8  information from his and Ms. Kressin's phones to produce the incomplete phone records

9  discussed above. Ex. M, Oct. 28, 2021, J. Kressin Dep. Tr. at 736:20-737:11.

10  ### III.    LEGAL STANDARD

11       District courts have the authority to impose sanctions as part of the inherent power

12  "necessarily vested in courts to manage their own affairs so as to achieve the orderly and

13  expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982

14  F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, *reh'g denied*,

15  501 U.S. 1269 (1991)). This inherent power gives district courts "broad discretion to make

16  discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Id.*

17  (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). That power includes

18  making an adverse inference instruction for the failure to provide relevant evidence, such

19  floragunn's misrepresentations and failure to produce Mr. Saly's. *See Hester v. Vision Airlines,*

20  *Inc.*, 2010 WL 4553449, at *6 (D. Nev. Nov. 3, 2010) ("This power includes the power to

21  sanction the party responsible for spoliating or otherwise destroying of failing to turn over

22  evidence by instructing the jury that it may infer that the spoliated or destroyed evidence would

23  have been unfavorable to the responsible party"); *see also Karnazes v. Cnty. of San Mateo*, 2010

24  WL 2672003, at *2-3 (N.D. Cal. July 2, 2010) (awarding an adverse-inference jury instruction

25  under FRCP 37 when plaintiff failed to facilitate the deposition of her treating physician).

26       Bad faith is sufficient, but not required, for imposition of evidentiary sanctions.

27  Willfulness, fault by the offending party, or notice of relevance to the litigation is also sufficient.

28  "As *Unigard* correctly notes…a finding of 'bad faith' is not a prerequisite to this corrective

PLS.' MOTION FOR SANCTIONS
AGAINST FLORAGUNN
4:19-CV-05553-YGR

1    procedure. Surely a finding of bad faith will suffice, but so will simple notice of 'potential

2    relevance to the litigation." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citations

3    omitted); *see also Unigard*, 982 F.2d at 368 n.2 (willfulness or fault of the offending party

4    sufficient); *Christoffersen v. Malhi*, 2017 WL 2653055, at *2 (D. Ariz. June 20, 2017).

5    **IV.    ARGUMENT**

6        **A.    floragunn Falsely Claimed Mr. Saly Was Unavailable**

7        There can be no dispute that Mr. Saly was ████ to return to work as of January 28,

8    2021. Accordingly, it was simply false for floragunn to claim that documentation for ████████

9    between January 28, 2021 and February 16, 2021 would be provided or that Mr. Saly could not be

10   deposed before the end of fact discovery. And despite repeated representations that it would do

11   so, floragunn never produced any ████████████ showing Mr. Saly's ████ unavailability

12   between January 28, 2021 and February 16, 2021. Yet floragunn represented to Elastic and to the

13   Court that it would.

14       Floragunn's primary argument is that the May 20, 2021 one-line letter sufficiently

15   certifies ███████████████ between January 28, 2021 and February 16, 2021. Dkt.

16   101-2 at 5. This argument fails for several reasons. First, a letter dated May 20, 2021 could not

17   possibly give floragunn a good faith basis to represent ***on February 9, 2021*** that ████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████" Nor could it give floragunn a good

21   faith basis make essentially the same representations in the Saly Stipulation filed on February 22,

22   2021. To the contrary, floragunn knew that on January 28, Mr. Saly's ████████████████

23   ██████████████ ended on January 27. Second, the substance of the letter is inadequate

24   to prove unavailability. It has only one line— "████████████████████████████████

25   ████████████—as shown in the original and certified translation (provided by floragunn) set

26   forth below:

27

28



(Ex. R.)

But the letter provides no basis for the claim that he was ▮▮▮▮▮▮▮▮ during a period more than three months prior to the date of the letter: it neither claims that ▮▮▮▮▮▮▮▮ Mr. Saly at some time after January 28 nor provides any particular ▮▮▮▮▮▮▮▮ And the reactive nature of the letter renders it highly suspect: it is dated 15 days after Elastic requested that floragunn meet and confer regarding the subject of this motion. Third, that letter contradicts the January 28 certificate—▮▮▮▮▮▮▮▮ was January 27, 2021—but it provides no basis on which ▮▮▮▮▮▮▮▮ ▮▮▮▮. Fourth, the fact that the letter is not in the form of an official certificate means that ▮ ▮▮▮▮▮▮▮▮ or other basis for the conclusory statement in the letter.

1    The record shows that floragunn knew it was deceiving Elastic as to Mr. Saly's

2    unavailability. First, Mr. Saly's employment contract with floragunn required Mr. Saly to ████

3    ████████████████████████████████████████████████████████████████████ Exs. F

4    & G. ████████████████████████████████████████████████████████████████

5    ████████████████████████████████████ And, beyond the

6    requirements of Mr. Saly's contract, Mr. Kressin testified that floragunn ████████████████

7    ████████████████████████████████████████████████. Ex. M, Oct.

8    28, 2021, J. Kressin Dep. Tr. at 742:23-743:13. Even if floragunn had not received the January 28

9    certificate until two weeks after issuance, floragunn surely had received that certificate when

10   counsel began discussing a stipulation on February 11 and submitted it to the Court on February

11   22.

12   Second, as noted above, the certificate issued on January 28 (produced on March 16)

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████—ended on January 27, 2021. Ex. L. That certificate was

15   ████████████████████████ the original certificate for the December 10 through

16   January 27 period (and had previously issued certificates for Mr. Saly as early as April 2020), so

17   there can be no claim by floragunn that ████████████████████████████████████.

18   *Compare* Ex. L. *with* certificates in Exs. D and E. But the certificates that purport to show a basis

19   for leave starting on February 17, 2021, ████████████████████████. That fact is consistent

20   with the inference that Mr. Saly did not want to be deposed after he was ████████████ work

21   on January 27, Mr. Saly found a different ████████who would provide ████████████.

22   *Compare* Ex. L with Ex. P (certificates encompassing the period February 17, 2021, to May 18,

23   2021).

24   That May 20 letter was floragunn's second after-the-fact effort to claim Mr. Saly ████

25   ████████ floragunn also cited (Dkt. 101-2 at 5) a letter from ████████████████████

26   ████████████████████████n—whose service offers SCUBA diving fitness and sport

27   boat licensing exams ████████████████████—opined that not only was Mr. Saly

28   ████████████████████████████, but also that Mr. Saly ████████████

PLS.' MOTION FOR SANCTIONS
AGAINST FLORAGUNN
4:19-CV-05553-YGR

1  █████████████████████████████████████████████████ The letter is also

2  apparently based on Mr. Saly's ██████████████████████████████████████

3  ███. Ex. Q ████████████████████████████████████████████████

4  ███████████████████████████████████ It is not based on ██████████████

5  ███ during the January 28 to February 16, 2021, gap period.

6        Mr. Saly was also assisting floragunn respond to discovery as Elastic was seeking his

7  deposition. floragunn's co-CEO Jochen Kressin later testified that around the time Elastic issued

8  its Second Set of Requests for Admission to floragunn—*i.e.*, December 23, 2020, Ex. DD—Mr.

9  Kressin had a phone call with Mr. Saly to obtain information to respond to the requests. Ex. AA,

10 Mar. 1, 2021, J. Kressin Dep. Tr. at 106:13-108:13. And floragunn served its responses on Elastic

11 on January 22, 2021, Exs. EE (service email) and FF (floragunn's Responses to Requests for

12 Admission)—just before the gap period.

13       A number of additional facts support the conclusion that Mr. Saly was not disabled and

14 floragunn was shielding him from deposition: Mr. Kressin also testified that he discussed with

15 Mr. Saly in January 2021 whether Mr. Saly could return to work and that he "might" have said

16 that Mr. Saly would be deposed if he returned. Ex. AA, Mar. 1, 2021, J. Kressin Dep. Tr. at

17 72:17-75:21. The Kressins discussed ████████████ with Mr. Saly ███████████ during

18 January 2021. Ex. V (Deposition Ex. 395). And Mr. Saly was active on social media during the

19 gap period in his medical certificates: he repeatedly tweeted on February 1 and 2, 2021 regarding

20 Elastic's recently-announced changes to its licensing strategy. Ex. W.

21     **B.**    **floragunn's Termination of Mr. Saly's Employment During This Dispute**
              **Demonstrates Bad Faith**

22

23       floragunn's surreptitious termination of Mr. Saly's employment as this dispute was

24 pending further demonstrates bad faith warranting sanctions. On May 21, 2021—the very day the

25 parties filed the initial letter brief seeking issue sanctions for Mr. Saly's unavailability, Dkt.

26 101—floragunn gave notice to Mr. Saly that it was terminating his employment. J. Kressin Decl.

27 (Dkt. 127) ¶ 16. Elastic had raised with floragunn on May 5, 2021, the question of sanctions for

28 misrepresenting Mr. Saly's unavailability; further, the parties had met and conferred repeatedly

over Elastic's sanctions request by May 21. Accordingly, floragunn was undoubtedly aware of the dispute when it chose to fire Mr. Saly.

This timing gives rise to an inference that floragunn fired Mr. Saly to end any influence floragunn might have over Mr. Saly to provide evidence in this matter. (For example, the Saly Stipulation left the door open for a later deposition of Mr. Saly if he were to become available to testify at trial. *See* Dkt. 76 at 3.) As it turned out, the Court later ordered the parties to meet and confer regarding procedures to obtain more information regarding Mr. Saly's condition. Dkt. 112. In response, floragunn asserted that it had no ability to force Mr. Saly to provide information because floragunn had terminated him. Dkt. 116 at 5.

Floragunn's purported justifications for the timing of its termination of Mr. Saly do not withstand scrutiny. First, floragunn claims the timing was due ███████████████████ ████████████████████████████████████████████████████████████████████. Ex. Y. ████████████ ██████████████████████████████████████████████████ Ex. Z. By comparison, ██████████████████████████████████████████████. Dkt. 127 ¶ 16. ██████████████████████████████████ (Dkt. 127 ¶ 16), and floragunn provides no explanation for why (1) █████████████████████████████████████ (2) ██████████████████████████████████ ████████. floragunn identified no event that could plausibly explain why—at that precise point—it could no longer ██████████████ or why it needed to fire Mr. Saly rather than simply ████████████

Second, floragunn claims that ████████████████████████████████ ████████████████████████████ (Dkt. 127 (J. Kressin Decl.) ¶ 15.) But floragunn did not fire those individuals until May 28, 2021, *a full week after* floragunn issued its notice of termination to Mr. Saly, and Mr. Bondarenko and Mr. Gustavsson's terminations were not effective until June 25, 2021, a full month after floragunn decided to fire Mr. Saly. (Dkt. 107 (J. Kressin Decl.) ¶¶ 3, 4). Unless floragunn was planning in advance to fire Mr. Bondarenko and

PLS.' MOTION FOR SANCTIONS
AGAINST FLORAGUNN
4:19-CV-05553-YGR

Mr. Gustavsson to avoid discovery sanctions for failing to produce them for depositions as floragunn's managing agents, their terminations cannot explain Mr. Saly's firing.

Nor does the evidence support Mr. Kressin's claim that ██████████████ ████████████████████████████████████████████. Mr. Kressin testified that floragunn redistributed Java programming language tasks from Mr. Saly to Mr. Bondarenko and/or Mr. Gustavsson. Ex. M, Oct. 28, 2021, J. Kressin Dep. Tr. at 753:13-16. But floragunn's GitLab source code repositories—the only source code control system floragunn has used from 2019 to the present, Ex. B, March 9, 2021 J. Kressin Dep. Tr. 94:20-95:5—show *no work by Mr. Gustavsson and Mr. Bondarenko in the JAVA programming language.* Walker Declaration ¶¶ 11-12.

Finally,  floragunn was not candid with Elastic or the Court regarding its termination of Mr. Saly. floragunn said nothing to Elastic about its May 21 termination letter on any of the parties' meet and confers. Nor did floragunn disclose Mr. Saly's termination during the June 11, hearing before the Court on Elastic's sanctions motion. Only after the Court ordered the parties to meet and confer regarding methods to obtain more evidence regarding Mr. Saly's condition did floragunn reveal the termination to the Court and Elastic. Combined with floragunn's failure to promptly produce the January 28 Certificate, this behavior strongly suggests that floragunn sought to obtain a strategic advantage by keeping its counsel ignorant of Mr. Saly's circumstances.

The evidence shows a persistent campaign by floragunn to prevent Elastic from deposing Mr. Saly, despite a lack of evidence for Mr. Saly's unavailability from January, 28, 2021, to February 16, 2021, during the heart of the deposition period in this case. The Court should not tolerate floragunn's attempt to frustrate discovery.

### C.    floragunn's Deception Has Prejudiced Elastic

floragunn concealed Mr. Saly's availability during the heart of the deposition period in this case, falsely induced Elastic's agreement to the Saly Stipulation, and materially prejudiced Elastic by obstructing the deposition of the most central witness in the case. In assessing the existence of prejudice, the Ninth Circuit "examine[]s whether the [sanctioned party's] actions

1    impar the [moving party's] ability to go to trial or threaten interference with the rightful decision

2    of the case." *Hester*, 2010 WL 4553449, at *6.

3         floragunn's deceptions regarding Mr. Saly threaten interference with the rightful decision

4    of this matter. Mr. Saly "wrote" (for floragunn) 12 of the 19 accused code segments in this case.

5    Ex. A. Mr. Saly's testimony on his process in developing this code is the most fundamental issue

6    for the majority of the accused code, and floragunn's success in creating a lack of evidence on

7    that point significantly frustrates Elastic's ability to seek justice. Floragunn's similar behavior

8    with two other "authors" of the accused code—Mr. Bondarenko and Mr. Gustavsson—

9    exacerbates this harm, because the suppression of these three witnesses means that Elastic was

10   deprived of the ability to depose three out of the four authors of the accused code.

11        floragunn cannot credibly argue that the hearsay testimony of Mr. Kressin (its sole Rule

12   30(b)(6) designee on all topics) was an adequate substitute, even if it were admissible. Mr.

13   Kressin testified that: (1) he had a short discussion with Mr. Saly in 2019 where he denied

14   copying or decompiling Elastic code; (2) he never asked Mr. Saly if he accessed any Elastic code

15   when developing any of the accused code segments; and (3) he never discussed with Mr. Saly any

16   of the accused code (most of which Mr. Saly "wrote") identified in the *floragunn II* complaint

17   filed in 2020. Ex. B, March 9, 2021, J. Kressin Dep. Tr. At 120:24-149:10; Ex. AA, March 1,

18   2021, J. Kressin Dep. Tr. at 85:7-10. And Mr. Kressin cannot give evidence about other key

19   aspects on which Elastic would expect Mr. Saly to testify, like Mr. Saly's statement to Elastic's

20   co-founder Uri Boness that Mr. Saly had decompiled Elastic's object code in the course of

21   developing the software that would eventually become Search Guard. Ex. CC, Feb. 17, 2021 U.

22   Boness Dep. Tr. 33:3-23.

23        Further, the additional harm that Elastic sought to avoid through the Saly Stipulation

24   appears to have occurred. Mr. Saly participated in the creation of documents regarding the origin

25   of the accused code for use in floragunn's defense. Ex. B, March 1, 2021 J. Kressin Dep. Tr.

26   86:10-11, 87:9-19. Elastic maintains that the evidence demonstrates that floragunn shared these

27   documents with Dr. Owen Astrachan, floragunn's technical expert, despite the express bar against

28   such activity contained in the Saly Stipulation. *See* Joint Discovery Letter, Dkt. 147. Although

floragunn has disputed this conclusion, it has (1) admitted that there is overlap in the content of the documents created by Mr. Saly and the content of Dr. Astrachan's report, yet (2) refused to provide any documentation to Elastic or the Court to support its position. In any event, floragunn's counsel admitted to Elastic that floragunn had used the Saly documents to inform its Answers in this matter. Eberhart Decl. ¶ 33. Regardless of how floragunn used the Saly documents, those documents undoubtedly informed floragunn's defense in this action.

### D.    Issue Sanctions Are the Only Appropriate Remedy

Issue sanctions are the appropriate remedy to cure floragunn's misconduct. Fact and expert discovery in the matter is now closed, and floragunn claims it has no power over Mr. Saly in light of the termination.[2] The Court should order issue sanctions under the Court's inherent authority, tailored to the floragunn code segments that Mr. Saly wrote. *Unigard*, 982 F.2d at 368. Elastic requests that the Court instruct the jury that (1) floragunn could have, but refused, to make Mr. Saly available for deposition; and (2) it is established that Mr. Saly accessed the infringed Elastic code and copied from Elastic the twelve specific accused floragunn code segments he "authored."

## V.    CONCLUSION

For the foregoing reasons, Elastic respectfully requests that the Court grant the motion and issue the requested sanctions against floragunn.

---

[2] Even though the evidence shows Mr. Saly maintains an active business relationship with the Kressins in another business entity: go-ffwd, GmbH. *See* Dkt. 129 Exs. A-C.

1

Dated: November 12, 2021

2

DAVID R. EBERHART
JAMES K. ROTHSTEIN

3

DANIEL H. LEIGH
O'MELVENY & MYERS LLP

4

5

By:      /s/ *David R. Eberhart*

6

David R. Eberhart

7

Attorneys for Plaintiffs

8

ELASTICSEARCH, INC. and
ELASTICSEARCH B.V.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS.' MOTION FOR SANCTIONS
AGAINST FLORAGUNN
4:19-CV-05553-YGR