REDACTED AND **FILED UNDER SEAL**

1

KWUN BHANSALI LAZARUS LLP
MICHAEL S. KWUN (SBN 198945)

2   mkwun@kblfirm.com
555 Montgomery St., Suite 750

3   San Francisco, CA 94111
Telephone: 415 630-2350

4   Facsimile: 415 367-1539

5

6   WUERSCH & GERING LLP
V. DAVID RIVKIN (admitted *pro hac vice*)

7   david.rivkin@wg-law.com
JUSTIN LEE (admitted *pro hac vice*)

8   justin.lee@wg-law.com
MICHAEL SENZER (admitted *pro hac vice*)

9   michael.senzer@wg-law.com
100 Wall St., 10th Fl.

10   New York, NY 10005
Telephone: 212 509-5050

11   Facsimile: 212 509-9559

Attorneys for Defendant
12   FLORAGUNN GmbH

13

14                    **UNITED STATES DISTRICT COURT**

15                  **NORTHERN DISTRICT OF CALIFORNIA**

16                          **OAKLAND DIVISION**

17

18   ELASTICSEARCH, INC., a Delaware          Case No. 4:19-cv-05553-YGR
corporation, ELASTICSEARCH B.V., a Dutch
corporation,                              **DEFENDANT'S MEMORANDUM OF**
19                                             **POINTS AND AUTHORITIES IN**
**OPPOSITION TO PLAINTIFFS'**
20              Plaintiffs,                    **MOTION FOR SANCTIONS AGAINST**
**FLORAGUNN REGARDING HENDRIK**
21        v.                                   **SALY**

22   FLORAGUNN GmbH, a German corporation,

23              Defendant.

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND AND TIMELINE .................................................2

    A.     Mr. Saly's Unavailability..........................................................................2

    B.     The Initial Production of ████████ ......................................................3

    C.     Elastic's Request for Documentation For Periods After January 27, 2021 .........4

    D.     The February 22 Stipulation .....................................................................5

    E.     March 16-19 Production ...........................................................................6

    F.     January 28 Certificate ..............................................................................7

    G.     Elastic Pursues Issue Sanctions in Connection With Other Matters in March,
           2021, But Does Not Do So in Connection With the January 28 Certificate.........9

    H.     ██████████████ .................................................................................9

    I.     Mr. Saly's Termination...........................................................................10

III.   LEGAL STANDARD ..........................................................................................10

IV.    ARGUMENT .......................................................................................................13

    A.     Elastic's Motion for Sanctions Is Not Based on floragunn's Actions, But Rather
           Elastic's Regret in Entering Into the February 22 Stipulation...........................13

    B.     floragunn Did Not Deceive Elastic Into Entering Into the February 22
           Stipulation ..............................................................................................14

    C.     The January 28 Certificate Did Not ██████████████████ ............16

    D.     ████████████████ Shows Elastic's Good Faith Belief Was Correct .........17

    E.     Mr. Saly's Termination...........................................................................19

    F.     Elastic Has Not Been Prejudiced By Mr. Saly's Absence.................................25

V. CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Am. Unites for Kids v. Rousseau*,

   985 F.3d 1075 (9th Cir. 2021) ........................................................................... 10, 13

*Cakebread v. Berkeley Millwork & Furniture Co., Inc.*,

   218 F. Supp. 3d 1040 (N.D. Cal. 2016) .......................................................... 11, 13

*Chambers v. NASCO, Inc.*,

   501 U.S. 32 (1991).................................................................................................... 11

*Christoffersen v. Malhi*,

   No. CV-16-08055-PCT-JJT, 2017 WL 2653055 (D. Ariz. June 20, 2017)............................ 12

*Evon v. Law Offices of Sidney Mickell*,

   688 F.3d 1015 (9th Cir. 2012) ........................................................................... 10, 11

*Glover v. BIC Corp.*,

   6 F.3d 1318 (9th Cir. 1993) ................................................................................... 12

*Hester v. Vision Airlines, Inc.*,

   No. 2:09-cv-00117-RLH-RJJ, 2010 WL 4553449 (D. Nev. Nov. 3, 2010) ...................... 12, 13

*Karnazes v. Cty. of San Mateo*,

   No. C 09-0767 MMC (MEJ), 2010 WL 2672003 (N.D. Cal. July 2, 2010)............................ 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

   511 U.S. 375 (1994)................................................................................................ 13

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co. Ltd.*,

   No. 14-CV-02737-BLF, 2015 WL 6449399 (N.D. Cal. Oct. 26, 2015)................................. 13

*Lofton v. Verizon Wireless (VAW) LLC*,

   308 F.R.D. 276 (N.D. Cal. 2015) .......................................................................... 11

*Primus Auto. Fin. Servs., Inc. v. Batarse*,

   115 F.3d 644 (9th Cir. 1997) ................................................................................ 11

*Roadway Express, Inc. v. Piper*,

   447 U.S. 752 (1980)................................................................................................ 11

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,

    982 F.2d 363 (9th Cir. 1992) ................................................................................ 12

*Zambrano v. City of Tustin*,

    885 F.2d 1473 (9th Cir. 1989) .............................................................................. 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Defendant floragunn GmbH ("floragunn") respectfully submits this memorandum of points and authorities in opposition to Plaintiffs Elasticsearch, Inc. and Elastic B.V. (collectively, "Elastic")'s motion for sanctions relating to the unavailability of floragunn's former CTO, Hendrik Saly for deposition (Dkt. 101-3) (the "Motion for Saly Sanctions" or the "Motion").  For the reasons set forth below, Elastic's motion should be denied. Notwithstanding the often-misleading arguments proffered by Elastic in its memorandum of points and authorities in support of the Motion (Dkt. 213) ("Elastic's MPA"), Elastic has not demonstrated, and cannot demonstrate, that floragunn willfully violated a Court order or otherwise acted in bad faith with respect to Hendrik Saly's unavailability, ████████████████████████████████ ████████████████████  On the contrary, the evidence amply demonstrates that floragunn acted reasonably, transparently and in good faith under the circumstances ██████████████████ ████████████████████████████████ The drastic remedy of issue sanctions sought by Elastic is not warranted here.

Elastic's sanctions motion is based on the false premise that floragunn sought to prevent Mr. Saly from testifying in this case. This is unsupported conjecture.  floragunn had no reason or incentive to prevent Mr. Saly from giving deposition testimony in this case, and every reason to want him to because floragunn is confident and has never wavered in its position that the allegedly infringing code is neither infringing nor copied from Elastic.  floragunn has every reason to believe that Mr. Saly's testimony would only support these facts because he made it clear to floragunn ████████████████████ that he did not copy any of Elastic's code, and no evidence adduced in discovery in this case undermines this fact.  *See, e.g.*, Elastic's MPA, Declaration of David R. Eberhart ("Eberhart Decl."), Ex. B 120:17–136:1 (testimony of March 9, 2021 deposition of floragunn Rule 30(b)(6) witness Jochen Kressin).  Elastic's contention that floragunn did not want Mr. Saly to testify at deposition or at trial is unfounded and based on pure speculation.

As detailed below, sanctions are wholly inappropriate because Elastic has failed to show that floragunn acted in bad faith by not producing Mr. Saly for deposition during the so-called Gap Period (January 28, 2021 to February 16, 2021). During that time—and, indeed, at all

times—floragunn had a good faith belief that Mr. Saly ████████████████████████
███████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████ Indeed, such

documentation was subsequently provided by Mr. Saly and produced to Elastic.

In addition, Elastic claims that floragunn's termination of Mr. Saly on May 21, 2021 (effective as of June 30, 2021) demonstrates bad faith.  For the reasons set for the below, Elastic's claim is meritless and should not be given any credence by the Court.

Without a showing of bad faith, issue sanctions may not be imposed.  Elastic's motion therefore should be denied.

## II.   FACTUAL BACKGROUND AND TIMELINE

### A. Mr. Saly's Unavailability

On November 25, 2020, more than 14 months after this case was commenced, counsel for Elastic contacted counsel for floragunn seeking, for the first time, to schedule the deposition of Mr. Saly.  *See* Dkt. 116 at 1. On Monday, November 30, counsel for the parties met and conferred. Declaration of V. David Rivkin in Support of Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Sanctions Against floragunn Regarding Hendrik Saly ("Rivkin Decl.") ¶ 2.  During this meet and confer, floragunn's counsel, David Rivkin, disclosed to Elastic's counsel that ██████████████████████████
███████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████████ *See id.* ¶ 3; *see also* Elastic's MPA, Eberhart Decl., Ex. D at 2–3. Mr. Rivkin further explained that ████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ Rivkin Decl. ¶ 4; *see* Dkt. 116 at 1. Counsel also explained that ██████████████████████████████
█████████████████████████████ cooperate in the deposition process, but that ██████
███████████████████████████████████████████████████████████████████████████████
█████████████ Rivkin Decl. ¶ 4.

During this conversation, floragunn's counsel proposed that the parties hold off Mr. Saly's deposition until he was █████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████ Rivkin Decl. ¶ 5.  floragunn's counsel made clear that floragunn wanted Mr. Saly to appear at deposition but could not force him to do so since ███████████████████ *See id.* In addition, floragunn's counsel proposed to try to schedule Mr. Saly's deposition for late January 2021 before discovery ended (at the time, fact discovery was set to close on January 29, 2021, *see* Dkt. 68), and that if Mr. Saly was still unable to participate, floragunn would be amenable to a limited extension of discovery for the purpose of deposing Mr. Saly when he was ████████ to be deposed at any time before trial, Rivkin Decl. ¶ 5; *see also* Eberhart Decl., Ex. E at 1.

**B.  The Initial Production of ████████████████**

On December 7, 2020, floragunn produced ████████████ to Elastic that floragunn received from Mr. Saly. The ███████████████████████████████████████ ██████

| Bates No. | Date | ███████████ | ███████████ | Established on [Date] |
| --- | --- | --- | --- | --- |
| DEF050001 | | | | |
| DEF050002 | | | | |
| DEF050003 | | | | |
| DEF050004 | | | | |
| DEF050006 | | | | |
| DEF050007 | | | | |
| DEF050008 | | | | |
| DEF050009 | | | | |

*See* Eberhart Decl., Ex. D at 5–9, 11–14.

In addition to the ████████████████ floragunn produced Mr. Saly's ██████████

██████████████████████████████ This document contained the following

information:

| Bates No. | Date | ████████████ | ████████████ |
|-----------|------|--------------|--------------|
| DEF00050005 | ████████████████ | ██████████ | |

*See id*. A week later, on December 14, 2020, floragunn produced to Elastic the following

additional ██████████████████████

| Bates No. | Date | ██████████ | ████████████ | Established on [Date] |
|-----------|------|------------|--------------|------------------------|
| DEF050010 / DEF047706* | ██████████ | ██████ | ████████████ | ██████████ |

*subsequently renumbered as DEF050011 and reproduced as DEF047706

*See* Elastic's MPA, Eberhart Decl., Ex. E at 1, 7.

Thus, by December 14, 2020, floragunn had produced to Elastic documentation from

████████████████████████████████████████████████ with the exception of

████████████████████████████████████

████████████████████████████████████████

██████ as DEF047708. This three-day gap is not an issue in this dispute.

**C.     Elastic's Request for Documentation For Periods After January 27, 2021**

On Friday, February 5, 2021, well after the close of business in Germany, Elastic's

counsel emailed floragunn's counsel asking ████████████████████████

████████████████████ Eberhart Decl., Ex. J at 1 (emphasis added). After checking

with floragunn, on February 9, 2021, floragunn's counsel, David Rivkin, wrote to Elastic's

counsel that ████████████████████████████

████████████████████████████████████████

██████████████████████ Elastic's MPA, Eberhart Decl., Ex. K at 1.

This was a full and accurate representation.  As Mr. Kressin, floragunn's co-CEO

explained in his declaration dated July 26, 2021, it was floragunn's expectation that it would be

receiving from Mr. Saly ████████████████████████████

periods after January 27, 2021. *See* Dkt. 127 ¶ 7. This expectation was based on communications that floragunn had with Mr. Saly and his wife, in which it was told that documentation supporting Mr. Saly's leave after January 27, 2021 would be provided in due course, as it ultimately was. *See id*. floragunn understood from Mr. Saly and his wife that the absence of a ████████████ for the period after January 27, 2021 was due ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ *See id*.

### D.    The February 22 Stipulation

After several discussions between the parties which concerned not only Mr. Saly's unavailability but also other discovery issues that required an extension of fact discovery in this case (then scheduled to expire on March 5, 2021, *see* Jan. 4, 2021 Text Only Dkt. Entry), on February 18, 2021, Elastic's counsel drafted and circulated a proposed stipulation addressing Mr. Saly's unavailability which the parties intended to present to the Court to be so-Ordered. *See* Rivkin Decl. ¶ 9. Elastic's first draft of the stipulation included a request for an extension of the case schedule so that the parties could address other discovery issues.  Rivkin Decl., Ex. 2. floragunn agreed to submit a request for an extension of the case schedule, but objected to the Mr. Saly's ████████ being included in the same stipulation that would be presented to the Court because of the ████████████████████ *See* Rivkin Decl. ¶ 10.  On February 20, 2021, Elastic circulated a new, separate stipulation that addressed only Mr. Saly's situation (the "February 20 Draft").  Rivkin Decl., Ex. 3.

In the February 20 Draft, Elastic proposed that floragunn would represent in the fourth "Whereas" clause that it "(1) has provided plaintiffs with documentation supporting the basis for Mr. Saly's leave through January 27, 2021; and (2) has represented to plaintiff that (a) additional documentation showing the basis for Mr. Saly's leave for periods past January 27, 2021 <u>exist</u>; (b) defendant does not anticipate that Mr. Saly will be able to return from leave to be deposed before March 19, 2021." Rivkin Decl., Ex. 3. floragunn, however, explained that it could not agree to represent that additional documentation showing the basis for Mr. Saly's leave for periods past January 27, 2021 "exist"—because floragunn had not seen such documentation, though it did expect to receive such documentation from Mr. Saly.  *See* Rivkin Decl. ¶ 12.

On February 21, 2021, floragunn's counsel proposed changing the language in the stipulation so that floragunn would represent that "additional documentation showing the basis for Mr. Saly's leave for periods past January 27, 2021 is expected to be provided to defendant" rather than representing that such documentation "exists" (the "February 21 Draft"). *See* Rivkin Decl., Ex. 4.

On February 22, 2021, Elastic's counsel, James Rothstein, revised the February 21 Draft by accepting floragunn's edit that "additional documentation showing the basis for Mr. Saly's leave for periods past January 27, 2021 is expected to be provided to defendant," and adding "*and will be provided to plaintiffs*" (the "February 22 Draft") (emphasis added). *See* Rivkin Decl. ¶ 13; Rivkin Decl., Ex. 5. In a telephone call with Mr. Rothstein that same day, Mr. Rivkin discussed this very provision, and made clear that floragunn could not represent that documentation showing the basis for Mr. Saly's leave past January 27, 2021 exists because floragunn did not know for a fact that it existed, and was only able to represent that *floragunn* expected that such documentation would be provided by Mr. Saly, which would then be produced to Elastic. Rivkin Decl. ¶ 14.  On this basis, the parties agreed to the language in Mr. Rothstein's February 22 Draft.

The parties entered into that stipulation on February 22, 2021, which was so-Ordered by the Court (the "February 22 Stipulation"). *See also* Dkts. 75, 76.  Incredibly, Elastic now claims it was falsely induced into entering into the February 22 Stipulation, alleging that floragunn knew before entering into that stipulation that Mr. Saly had been ████████████ as of January 28, 2021. Elastic's MPA at 4–6.

### E.      The March 16–19 Production

On March 16, 2021, floragunn produced to Elastic non-Bates numbered copies of several new ███████████ that it received from Mr. Saly, including two that ████████████ ███████████ from February 17 to March 17, 2021. *See* Eberhart Decl., Ex. N at 1. The Bates-numbered copies of these documents were later re-produced by floragunn on March 19, 2021 (DEF047718, DEF047714, and DEF047712). *See* Rivkin Decl. ¶¶ 16, 17; Rivkin Decl., Ex. 6.

The following table summarizes certificates produced on March 16 and March 19, 2021:

| Bates No. | Date | | | Established on |
|---|---|---|---|---|

|  |  |  |  | ████████ | [Date] |
|---|---|---|---|---|---|

| DEF047718** | ████████████████████████████████ |
| DEF047714** | |
| DEF047712** | |

** Initially produced to Elastic without Bates numbers on March 16, 2021.

*See* Rivkin Decl., Ex. 6. As a part of the email accompanying the March 16, 2021 production,

floragunn's counsel advised Elastic's counsel that "floragunn is still awaiting a certificate for the

period of January 29 [*sic* 27] to Feb 16, 2021, and will provide that to you when it is received."

*See* Eberhart Decl., Ex. N at 1.

### F.    The January 28 Certificate

Notably, a part of the March 16, 2021 production was a ████████████ Bates

numbered DEF047718 (the "January 28 Certificate"). *See* Rivkin Decl., Ex. 6; *see also* Eberhart

Decl., Ex. L at 1.  This certificate is similar to the other certificates produced to Elastic.  It is

dated ██████████████████████████████████████████████████████████

*See* Rivkin Decl., Ex. 6; *see also* Eberhart Decl., Ex. L at 1.

In its Motion, Elastic claims that the January 28 Certificate purportedly shows that ████

████████████████████████████████ Elastic's MPA at 6, 10.  On

this basis, Elastic argues that floragunn wrongfully misrepresented that Mr. Saly was on leave

and unavailable to be deposed during the so-called Gap Period. Elastic's MPA at 6–7, 10. Elastic

further argues that Mr. Saly's unavailability during this period was "indisputably false" and that

floragunn was hiding "for months" "the fact" that "on January 28, 2021██████████████

████████████████████ Elastic's MPA at 1, 6–7, 10.  Elastic is wrong.

First, the January 28 Certificate says nothing about ████████████████████

████████████  It is a certificate that contains the same information as the other certificates

provided before and after January 28, 2021 and lists ████████████████████████████

████████████  *See* Rivkin Decl., Ex. 6; *see also* Eberhart Decl., Ex. L at 1.  The other

certificates produced by Mr. Saly had different ████████████████████ Contrary to

Elastic's claims, the January 28 Certificate ██████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

███████████████████████████████████████ *See* Rivkin Decl., Ex. 6; *see also* Eberhart Decl., Ex. L at 1. Elastic does not cite to the opinion of any ████████████ ██████ that supports its interpretation that ██████████████████████████████ █ ███████████████ Certainly Elastic does not offer evidence that floragunn interpreted the January 28 Certificate ██████████████████████ Mr. Saly had previously produced new certificates after the ██████████████████████ and floragunn expected that he would produce documentation for his ████████████ for the period after January 27, 2021 (which he eventually did).

Second, it appears that the January 28 Certificate was (1) provided by Mr. Saly to floragunn sometime in mid-February 2021, Declaration of Jochen Kressin in Opposition to Plaintiff's Motion for Sanctions Related to Hendrik Saly ("Kressin Decl.") ¶ 4; (2) uploaded to a cloud-based server accessible to floragunn's US counsel on March 15, 2021; and (3) produced by floragunn to Elastic on March 16, 2021 in the ordinary course of discovery, *see* Eberhart Decl., Ex. N at 1; Rivkin Decl. ¶ 16; *see also* Eberhart Decl., Ex. L at 1. The reason the certificate was not produced earlier is that it was not urgent to do so.  This is because Elastic had been asking floragunn for certificates showing Mr. Saly's unavailability for the period <u>after</u> January 27, 2021.  But the January 28 Certificate did not show this.  It only showed Mr. Saly's ██████████████████████ Since December 14, 2021, Elastic had in its possession documentation confirming Mr. Saly's unavailability through January 27, 2021.  *See* Graphs, *supra* at 3–4.   Indeed, the February 22 Stipulation entered into by the parties expressly acknowledged that floragunn had provided Elastic with documentation supporting the basis for Mr. Saly's leave through January 27, 2021.  *See* Dkt. 76 at 2, 3. Accordingly, the January 28 Certificate was produced in the ordinary course in discovery about 30 days after it was received by floragunn, together with other certificates that were received by floragunn which showed Mr. Saly's unavailability for other periods after January 27, 2021.  There was no effort by floragunn, and no reason, to "conceal" the January 28 Certificate from Elastic.

Third, Elastic concedes that it received the January 28 Certificate on March 16, 2021. *See* Elastic's MPA at 5, 6, 12.  If, as Elastic would have this Court believe, the January 28 Certificate showed that Mr. Saly was ██████████████████████████ the

logical thing for Elastic to have done would have been to (a) immediately point out its concern to floragunn, and (b) raise the issue with the Court as soon as possible, especially since fact discovery was then still open.  But this is not what Elastic did.  Elastic did nothing for seven weeks after receiving the January 28 Certificate. Despite the fact that on March 23, 2021, fact discovery was extended again to May 14, 2021. *See* Dkt. 86. Elastic had every opportunity to bring this purported issue to the attention of the Court and to seek to compel Mr. Saly's deposition.  But it failed to do so because Elastic did not believe at that time that the January 28 Certificate ███████████████████████ or that floragunn "concealed" that document from them.

### G.    Elastic Pursues Issue Sanctions in Connection With Other Matters in March, 2021, But Does Not Do So in Connection With the January 28 Certificate

In contrast with failing to take action in relation to the January 28 Certificate, on March 12, 2021, Elastic submitted a joint discovery letter requesting that the Court order the depositions of floragunn's freelance contractors, Mikael Gustavsson and Sergii Bondarenko, and, if they did not appear, requesting a jury instruction establishing that the witnesses copied segments of code from Elastic.  *See* Dkt. 79.  However, despite Elastic's now-trumped up claim relating to the January 28 Certificate, Elastic did not seek immediate redress from the Court. floragunn respectfully submits that reason Elastic sat on this issue *for two months* was because it was not a real issue, and they knew it.  Elastic did not believe that ████████████████████████ ████████████████████████ just as floragunn did not believe it did. If Elastic believed that it did, they would have made their motion for issue sanctions then, as they did in relation to Mikael Gustavsson and Sergii Bondarenko.  Instead, Elastic manufactured this issue on May 5, 2021, *see* Eberhart Decl., Ex. O at 1, not coincidentally the day after this Court ruled in Elastic's favor in finding that Messrs. Gustavsson and Bondarenko were managing agents of floragunn and should be produced for deposition, Dkt. 97. Elastic's failure to raise with the Court for seven weeks an issue that it now claims warrants issue sanctions shows that Elastic's Motion is a sham.

### H.    ████████████████████

On May 5, 2021, seven weeks after receiving the January 28 Certificate, Elastic for the

---

first time raised with floragunn's counsel its claim that floragunn should be sanctioned for failing to notify Elastic that Mr. Saly was "available" for deposition during the Gap Period. Eberhart Decl., Ex. O at 1.

On May 20, 2021, Mr. Saly provided to floragunn—and on the same day floragunn provided to Elastic—███████████████████████████████████████████ ████████████████████████████████████ Eberhart Decl., Ex. R at 1. In her letter, ███████████████████████████████████████████████████ ████████████████████ Eberhart Decl., Ex. R at 1–3. Thus, despite now having documentation from ████████████████████████████████████████████████████— including for periods past January 27, 2021, and most significantly, including the so-called Gap Period—Elastic proceeded with its instant sanctions application. *See* Dkt. 101-3.

### I.      Mr. Saly's Termination

After 14 months of ████████████████ on May 21, 2021, after fact discovery in this case was over, floragunn gave Mr. Saly notice that he would be terminated effective June 30, 2021. *See* Dkt. 127, Ex. A (Hendrik Saly's termination letter). In its motion, Elastic alleges, *inter alia*, that the timing of his termination is suspicious and demonstrates bad faith by floragunn. Elastic's allegations are meritless for the reasons set forth in Section IV below.

### III.      LEGAL STANDARD

Elastic acknowledges that it seeks issue sanctions under the Court's "inherent authority" rather than Rule 37 or any other rule or statute.[1] "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012)). Moreover, "because a district court's inherent powers are so potent, we require that when a court imposes sanctions based on bad faith, the court must make an explicit finding that the sanctioned party's conduct 'constituted or was tantamount to bad faith.'" *Id.*

---

[1] Elastic's MPA at 9, 17; *see* Dkt. 125 at 14:1–3 (transcript of July 9, 2021 hearing); *see also* Dkt. 101-3 at 3 (position of Elastic in initial joint submission that "Elastic's final proposed comprise is [] that the Court order issue sanctions under the Court's inherent authority").

(quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–50 (9th Cir. 1997)); *see also Evon*, 688 F.3d at 1035 (holding that court must find a willful violation of a court order, i.e., "that a party acted deliberately" in disobeying a judicial directive, or must otherwise find in a party's conduct "bad faith or conduct tantamount to bad faith" arising from "mental intent such as bad faith or an improper motive"); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power.") (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66 (1980)).

Accordingly, to award sanctions against floragunn pursuant to its inherent authority, the Court must specifically find that floragunn "has willfully disobeyed a court order," or "acted in bad faith, vexatiously, or for oppressive reasons." *See Cakebread v. Berkeley Millwork & Furniture Co., Inc.*, 218 F. Supp. 3d 1040, 1046 (N.D. Cal. 2016) (quoting *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015)). Moreover, the movant bears the burden of demonstrating that the asserted misconduct is severe enough to warrant sanctions— and that sanctions are necessary to preserve the Court's ability to operate. *See Lofton*, 308 F.R.D. at 285 ("It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose."); *see also Cakebread*, 218 F. Supp. 3d at 1046 ("[I]nherent power [] 'is not a broad reservoir, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991)). As discussed below, Elastic has not come close to meeting this burden.

Apparently recognizing that settled law in the Ninth Circuit requires a showing of bad faith or willfulness when sanction relief under the Court's inherent power is sought—as the Court recognized during a hearing, *see* Dkt. 125 at 11:25–12:4—Elastic simply ignores *Rousseau*, the leading recent Ninth Circuit case on the subject and every other Ninth Circuit case that squarely addresses the issue. In fact, *Rousseau* is not even mentioned in Elastic's brief despite the fact that floragunn cited to it in its prior arguments. Instead, Elastic relies on a line of nearly 30-year-old cases having to do with the issuance of sanctions under a court's inherent authority in *instances of destruction or spoliation of evidence*—neither of which are issues nor

alleged in this case. Elastic cites these cases for the proposition that "[b]ad faith is sufficient, but not required, for imposition of evidentiary sanctions" and that "[w]illfulness, fault by the offending party, or notice of relevance to the litigation [are] also sufficient." Elastic's MPA at 9. But the cases cited by Elastic are clear that "relevance to litigation" is only a basis for issue sanctions where alleged misconduct involved destruction or spoliation of evidence—which, again, Elastic does not allege and which has nothing to do with this case. *See id.* at 9–10.

For example, Elastic cites the Ninth Circuit's decision in *Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993), for the proposition that issue sanctions may be imposed against floragunn upon a "simple notice of 'potential relevance.'" Elastic's MPA at 10. *Glover*, however, makes clear that the "potential relevance" standard applies to a sanctions motion concerning "inherent discretionary power to make appropriate evidentiary rulings in response to the *destruction or spoliation* of relevant evidence." *Glover*, 6 F.3d at 1329 (emphasis added). The other cases Elastic cites are effectively the same: decisions based upon destruction of evidence or equivalent misconduct. *See, e.g.*, *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368–69 (9th Cir. 1992) (affirming exclusion of despoiler's evidence where its *undisputed destruction* of key evidence rendered adversary's presentation of its case impossible); *Christoffersen v. Malhi*, No. CV-16-08055-PCT-JJT, 2017 WL 2653055, at *2, *5 (D. Ariz. June 20, 2017) (observing that "[d]istrict courts may impose sanctions against a party that merely had notice that the *destroyed evidence* was potentially relevant to litigation;" granting adverse inference instruction in response to Defendants' *destruction of records*) (emphasis added).

In *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117-RLH-RJJ, 2010 WL 4553449, at *7 (D. Nev. Nov. 3, 2010), another case cited by Elastic, the Court specifically determined that the party against whom sanctions were sought acted in bad faith before, and on that basis struck the sanctioned party's answer, *see id.* at *5–7. It is not clear at all why Elastic cites this case since it undermines its argument that bad faith is not necessary for the issuance of sanctions in this case. Instead, Elastic quotes *Hester* for the unremarkable proposition that the Court has inherent power that "includes the power to sanction the party responsible for spoliation or otherwise destroying or failing to turn over evidence." Elastic's MPA at 9; *Hester*, 2010 WL 4553449, at *6. In any event, the *Hester* court held that the "standard for [] adverse inference instruction[s] . . . requires

. . . bad faith or gross negligence on the part of the sanctioned party in spoliating or failing to turn over relevant evidence," *id.* at *6 (ellipses added), and indeed ultimately found the existence of such bad faith in issuing sanctions, *id.* at *5.  As for Elastic's reliance on *Karnazes v. Cty. of San Mateo*, No. C 09-0767 MMC (MEJ), 2010 WL 2672003, at *2–3 (N.D. Cal. July 2, 2010), this case was a Rule 37 sanctions case, not an inherent authority case, *see id.* at *5, and therefore not relevant to the issues here.

        None of the cases cited by Elastic, therefore, are sufficient to overcome the settled law in the Ninth Circuit that requires a showing of willfulness or bad faith before issue sanctions under the Court's inherent authority may be imposed. *See Rousseau*, 985 F.3d at 1090. A motion for sanctions must be denied absent clear evidence of a willful violation of a court order or bad faith conduct, and must be denied if sanctions are not necessary to preserve court functions. *See Rousseau*, 985 F.3d at 1090; *Cakebread*, 218 F. Supp. 3d at 1046; *see also Koninklijke Philips N.V. v. Elec-Tech Int'l Co. Ltd.*, No. 14-CV-02737-BLF, 2015 WL 6449399, at *3 (N.D. Cal. Oct. 26, 2015) (holding that use of inherent authority to sanction "cannot go beyond what is necessary to enable a court 'to manage its proceedings, vindicate its authority, and effectuate its decrees'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Elastic has not met its burden of showing that floragunn acted in bad faith. Accordingly, for the reasons discussed below, the Motion for Saly Sanctions must be denied.

## IV.    ARGUMENT

### A.    Elastic's Motion for Sanctions Is Not Based on floragunn's Actions, But Rather Elastic's Regret in Entering Into the February 22 Stipulation

        Elastic claims that the lack of Mr. Saly's testimony in this case "significantly frustrates Elastic's ability to seek justice." Elastic's MPA at 16. But this sentiment is belied by the record, as well as by Elastic's prior choices and preferences.  When Mr. Saly's ███████████ became an issue, it was Elastic, not floragunn, that pushed for not having Mr. Saly testify in this case.  For example, when the parties were attempting to negotiate a framework to deal with Mr. Saly's unavailability, Elastic wanted to preclude Mr. Saly from testifying at trial if he could not testify during fact discovery even if ███████████. *See* Rivkin Decl. ¶ 8. floragunn specifically refused Elastic's initial demand for such a waiver. *See id.* Indeed, floragunn initially

proposed that the parties agree to a framework that would have allowed Mr. Saly to be deposed after fact discovery expired if ███████████████ *See* Eberhart Decl., Ex. E at 1. Elastic rejected such an approach, opting instead for an agreement that Mr. Saly not be deposed in discovery and not assist floragunn's experts.  These facts are important because they show that floragunn wanted Mr. Saly's participation in this case while Elastic was content with and perhaps even eager to exclude him.  This cuts against Elastic's contrived narrative that floragunn was seeking to prevent Mr. Saly from being deposed.

Recognizing that Mr. Saly's unavailability was detrimental to floragunn's case, on February 22, 2021, Elastic drafted and contentedly entered into the February 22 Stipulation with floragunn that ensured that he would not participate in discovery or assist floragunn's expert.[2] Because it excludes him from being deposed, the February 22 Stipulation shows that Elastic did not believe on February 22, 2021 that Mr. Saly's absence from the case would "frustrate[] Elastic's ability to seek justice." But now Elastic finds it convenient to make this claim because it furthers Elastic's narrative that it has been purportedly aggrieved by Mr. Saly's absence, all in an effort to persuade the Court that issue sanctions are warranted. The Court should see through such disingenuous flimflam.  Elastic was content not to have Mr. Saly deposed when it entered into the February 22 Stipulation but now regrets its strategic decision, wrongly seeking issue sanctions as a substitute for evidence to prove its case.

### B.     floragunn Did Not Deceive Elastic Into Entering Into the February 22 Stipulation

Elastic contends that it was misled about Mr. Saly's unavailability to be deposed during the Gap Period.  In particular, Elastic alleges that floragunn "could not possibly" have a good faith basis to represent to Elastic "on February 9, 2021" that "[f]loragunn expects to receive a certificate ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████ Elastic's MPA at 10. The purported basis for

---

[2] Because floragunn refused Elastic's demand that Mr. Saly be precluded from testifying at trial if ███████████████ the stipulation also provided that to the extent that Mr. Saly's ████████████████████████ for him to testify at trial, Mr. Saly would only do so using "procedure that would eliminate prejudice to plaintiffs from Mr. Saly's late availability."

1  Elastic's position is that the January 28 Certificate allegedly shows that ████████████

2  ████████████████████████████████████████████████████ and that floragunn

3  allegedly knew this when it made this representation.  Elastic's MPA at 10.  Leaving aside

4  whether or not floragunn knew about the existence of the January 28 Certificate on February 9,

5  2021 (which it likely did not, *see* Kressin Decl. ¶ 4), floragunn's statement was entirely correct.

6  floragunn's expectation that Mr. Saly would provide ████████████████████ after January

7  27 was based on (1) prior communications with Mr. Saly and his wife relating to ████████

8  ████████ (2) the fact that he regularly provided floragunn with ████████████████████

9  ████████████████████████████████████████ and (3) the fact that floragunn

10 had no reason to believe that he would not continue to provide ████████████ after January

11 27. Dkt. 127 ¶¶ 5–7; Eberhart Decl., Ex. M 742:23–750:22. Other than Elastic's "interpretation"

12 of the January 28 Certificate as ████████████████████████ Elastic offers no evidence

13 at all that would call into question floragunn's good faith belief that Mr. Saly would continue

14 providing ████████████████████████ Nor does Elastic offer any evidence that

15 the January 28 Certificate was, as Elastic claims, ██████████████████████████—

16 let alone that floragunn *interpreted* the January 28 Certificate as a ████████████████

17 ████████████████ Elastic thus utterly fails its burden to establish that floragunn acted in bad

18 faith.

19      Elastic further claims that floragunn made "essentially the same representation in the

20 [February 22 Stipulation]," again claiming that floragunn "knew" that the January 28 Certificate

21 ██████████████████████ Elastic's MPA at 10–11. The representation in the February 22

22 Stipulation that Elastic is probably referring to (since it fails to specify in its Motion), is the

23 fourth "Whereas" clause, which states that "defendant . . .(2) has represented to plaintiffs that (a)

24 additional documentation showing the basis for Mr. Saly's leave for periods past January 27,

25 2021 is expected to be provided to defendant and will be provided to plaintiffs." Dkt. 76 at 2.

26 (ellipses added). For the same reasons as those stated above in connection with floragunn's

27 February 9 statement, floragunn's representation in the February 22 Stipulation was entirely

28 correct.

      floragunn could not have been more transparent about what it knew and what

representations it could and could not make about Mr. Saly's availability after January 27, 2021 when it entered into the February 22 Stipulation.  floragunn believed in good faith based upon communications with Mr. Saly and his wife that documentation showing ███████████████ ████ after January 27, 2021 would eventually be provided by Mr. Saly (which it was) and that the reason for his delay in providing such documentation to floragunn was because of ████████████████████████████████████████  This was entirely true and correct.  Elastic offers conjecture, but no evidence, that would call floragunn's good faith into question.  Accordingly, neither floragunn's February 9 statement, nor floragunn's representation in the February 22 Stipulation were false, and Elastic proffers no evidence in support of its claims that floragunn knew these statements were false.  Elastic thus fails to meet its burden of showing bad faith that would warrant sanctions.

### C.  The January 28 Certificate Did Not ██████████████████████

After the parties entered into the February 22 Stipulation, Mr. Saly provided floragunn with documentation showing the basis for ████████████████████████████ ██████████████████████  This documentation was then provided to floragunn in due course beginning on March 16, 2021.[3]  One of the documents provided to Elastic on March 16 was the January 28 Certificate, the document Elastic now claims ████████████████████████ after January 27, 2021. *See* Rivkin Decl., Ex. 6; *see also* Eberhart Decl., Ex. L at 1. As explained in section II.F above, this certificate on its face ██████████████████████████████ ██████████████████  The subsequent letter provided from ████████████ the same ██████ who signed the January 28 Certificate, stated unequivocally that ████████████████████████████ ██████████████  Elastic's MPA, Eberhart Decl., Ex. R at 1. This ██████████ definitively rebuts Elastic's interpretation that the January 28 Certificate ██████████████████████████████ on January 28, 2021.

Moreover, had the January 28 Certificate been, as Elastic would have this Court believe, proof that Mr. Saly had been ██████████████████ on January 28, why would Elastic not have raised the issue right away after it received a copy of the January 28 Certificate on March

---

[3] Notably, Elastic does not challenge Mr. Saly's unavailability to be deposed during the periods of March 26, 2020 through January 27, 2021 or from February 17, 2021 onward.

16, 2021?  The answer is that Elastic did not believe at that time that this certificate showed that Mr. Saly was ███████████████ or that this certificate was "concealed" from Elastic by floragunn.  Elastic manufactured these imagined grievances for purpose of this motion, and the Court should not accept Elastic's feigned injury.

Lastly, as stated above, Elastic offers no declaration from any ████████████ ██████ which supports its contention that the January 28th Certificate ██████████ ████████ much less any evidence that floragunn *believed* that the ███████████ ████████████ Elastic has plainly failed to meet its burden of showing the existence of bad faith by floragunn in allegedly "withholding" this certificate until it was produced to Elastic on March 16, 2021.  Without such proof, issue sanctions are inappropriate and should not be awarded.

**D.   ████████████  Letter Shows Elastic's Good Faith Belief Was Correct**

Having failed to raise any concerns about the import of the January 28 Certificate since receiving it on March 16, 2021, on May 5, 2021, with fact discovery deadline of May 14, 2021 fast approaching, and Elastic having failed to find the "smoking gun"—and, indeed, any evidence of copying of code in discovery—Elastic suddenly and cynically changed its tactics. Instead of seeking to prove its allegations of copying and infringement on the merits (which Elastic believed as late as February 22, 2021, it could do without the need for Mr. Saly's deposition), Elastic decided that it would ask the Court to make a critical and likely case-dispositive finding of the existence of copying.  Elastic did so by inventing the spurious claim that "Mr. Saly should have been made available for deposition between January 28 and February 16, [2021 (the "Gap Period"),] and that floragunn misrepresented his ███████████ during that period – including in the February 22 stipulation." Eberhart Decl., Ex. O at 1. Elastic explained at a May 6, 2021 meet and confer that it would be asking the Court to impose issue sanctions against floragunn that include a finding that "Mr. Saly accessed and infringed Elastic's code and copied from Elastic the twelve specific accused floragunn code segments." Dkt. 101-3 at 1, 3.

As discussed above, on May 20, 2021, before Elastic made its sanctions application, Mr. Saly provided ███████████████████████████████████ ████████████████████████████ including the January 28 Certificate that Elastic claims

1 ███████████████████████████████████████████████

2 ████████████████████████████ Eberhart Decl., Ex. R at 1, 3.  This should have put to

3 rest any question with respect to whether Mr. Saly was or was not available during the Gap

4 Period, and more importantly for the purpose of this Motion, whether floragunn's good faith

5 belief that Mr. Saly was ██████████████████████ during the Gap Period was well-

6 founded.  Instead, on May 21, 2021, Elastic proceeded with its sanctions motion since there was

7 no apparent downside for Elastic not to.

8      Elastic contends that ██████████████████████████████

9 ████████████████████████████████████████ Elastic's

10 MPA at 11. This is baseless. ████████████████████████████████

11 ██████████████████████ Eberhart Decl., Ex. R at 1, 3.  This is no different "basis" than

12 all the other certificates that contain only dates through which ████████████████████

13 ██████████████████████████—and the other certificates Elastic does not

14 contest.  *See* Elastic's MPA at 10–13.  Elastic further complains that ████████████████████

15 ████████████████████████████ *Id.* at 11. However, neither did any

16 of the other certificates that Elastic accepted as valid.  *E.g.*, Eberhart Decl., Exs. D, E. Elastic

17 also contends that since the ████ is dated fifteen days after a meet and confer about Elastic's

18 planned motion for sanctions, this "renders it highly suspect." Elastic's MPA at 11. But Elastic

19 does not elaborate and its *ipse dixit* is not proof of bad faith.  Finally, Elastic claims that ████

20 ████████████ "contradicts the January 28 Certificate," *id.*, by which Elastic presumably

21 means that ██████████████████ somehow supports its claim that the January 28 Certificate

22 (which was also signed by ██████████████████████████ As discussed

23 above, this claim is wrong.  Elastic further assets that the letter provides "no basis why the ████

24 ████████████████████████████████████████████

25 ████████ Rather, it confirms that Elastic's interpretation of the January 28 Certificate is wrong.

26      In addition, Elastic claims that ██████████████████ is "not in the form of an official

27 certificate," and that ██████████████████████████████

28 ██████████████████████████████████████████

29 ██████████████████████ *Id.* at 11. Elastic offers no authority concerning what is and what is

not an official ███████████, nor authority explaining why the documentation must be in an "official" form, whatever that means. ████████████ demonstrates that Mr. Saly was not ████████ during the Gap Period and Elastic's *suspicions* are not a basis for issuing sanctions. ██████████ confirms what floragunn believed about Mr. Saly's unavailability during the Gap Period.

Elastic grasps at straws in an effort to █████████████ clear evidence of Mr. Saly's unavailability during the Gap Period.  It does so because the January 28 Certificate— and, more specifically, its strained interpretation of the certificate—is the lynchpin of its claim for sanctions.  Yet for the purpose of the sanctions motion, the issue is not whether the January 28 Certificate "cleared" Mr. Saly ██████████ (which it plainly does not), but whether floragunn *believed* that the January 28 Certificate cleared Mr. Saly ██████████ sufficient to show floragunn's bad faith.  Elastic offers easily dismissed arguments for the former, and it provides no evidence at all to support the latter.

In any event, the entire issue of documentation regarding Mr. Saly's ████████████ during the so-called Gap Period has been rendered moot by ███████████  By the time Elastic made its application for issue sanctions on May 21, 2021, Elastic had in its possession documentation covering the entire period of ████████████ including the Gap Period. But Elastic chose to bring its sanctions motion anyway.[4]

**E.  Mr. Saly's Termination**

Elastic also alleges that floragunn's termination of Mr. Saly's employment during this dispute demonstrated bad faith.  Elastic's MPA at 13–17.  Elastic is wrong. floragunn could not be expected to keep Mr. Saly on as an employee indefinitely while he is out on ████████

---

[4]After Elastic brought its motion, the Court ordered the parties to engage in limited discovery. Elastic suggests that floragunn's document production had "substantial gaps" and that there were no documents "discussing Mr. Saly's alleged ████████ Elastic's MPA at 8.  If Elastic had any issues with floragunn's production, the time to have raised those with the Court expired on September 22, 2021, pursuant to Court Order. Dkt. 136 at 2. As to Elastic's claim relating to discussions between Mr. Saly and the Kressins in connection with a planned vacation to Liechtenstein that never happened, Elastic's MPA at 8, floragunn respectfully submits that such discussions are no evidence of Mr. Saly's █████████████████████████ the vacation was cancelled due to ████████████

██████████████████. floragunn kept Mr. Saly on as an employee for 14 months after he ████████████████████████████████████████ even though floragunn had no obligation to do so. These 14 months included the entire fact discovery period in this case, during which Mr. Saly remained in floragunn's employ.  If anything, this shows remarkable good faith by floragunn and is evidence of floragunn's strong desire that Mr. Saly would ███████████ and assist floragunn in this litigation. *See* Dkt. 127 ¶ 3.

As set out in Jochen Kressin's July 26, 2021 Declaration, Mr. Saly's termination by floragunn was driven in large part by the ███████████████████████████████ ███████████████████████ *Id.* ¶ 15. As the Court recalls, on May 4, 2021, this Court ruled that Messrs. Bonderenko and Gustavsson were managing agents of floragunn and therefore should be produced by floragunn for deposition.  Dkt. 97.  Both Messrs. Bondarenko and Gustavsson had previously indicated that they would not participate in discovery.  Dkt. 100 at 4. On May 6, Mr. Kressin advised Messrs. Bonderenko and Gustavsson that floragunn had been ordered to make both developers available for deposition by May 14, 2021, and if they failed to appear, floragunn would have no choice but to terminate their freelance contracts. Dkt. 100 at 4. On May 6, both replied in writing that they would not appear at a deposition irrespective of the consequences of their termination. Dkt. 100 at 4.  The May 14, 2021 deposition deadline came and went and neither appeared at the deposition.  *Id.* at 4–5. Accordingly, after their non-appearance at the noticed depositions, floragunn set into motion their terminations which resulted in formal notice being given to them on May 28, 2021.  With Messrs. Bonderenko and Gustavsson's planned terminations and with Mr. Saly still on floragunn's payroll but not working, ███████████████████████████████ ██████████████████████ Dkt. 127 ¶ 15. Thus, floragunn made the business decision to terminate Mr. Saly to free up some resources that would go towards hiring a CTO who would handle the necessary software development and management work. The timing of Mr. Saly's termination (notice of which was given on May 21, 2021, effective June 30, 2021) is entirely consistent with, and is an appropriate business response to, the challenges floragunn was facing in May 2021, as it dealt with the decimating impact of losing its primary developers as a result of this litigation, and the uncertainty of Mr. Saly's return from ███████████ Mr. Saly's

termination had absolutely nothing to do with ceding control over Mr. Saly as an employee to gain some sort of an advantage in this litigation. Had floragunn wanted to do this, it could have done so in the prior fourteen months. But it did not.

In any event, when Mr. Saly was terminated, ███████████████████████, so floragunn had no control over him in any event, a fact Elastic does not challenge. floragunn respectfully submits that there is no date on which floragunn could have terminated Mr. Saly during this litigation that would *not* have resulted in Elastic accusing floragunn of terminating Mr. Saly for a strategic litigation advantage. floragunn cannot be expected to allow a competitor like Elastic—one that that commenced this debilitating litigation against it— to dictate floragunn's business and personnel decisions. Elastic offers nothing but conjecture that Mr. Saly's termination shows bad faith by floragunn. This Court should see through these meritless assertions.

Mr. Saly was given notice of his termination *one week after* fact discovery in this case ended (May 14, 2021, *see* Dkt. 86), effective *six weeks after* fact discovery in this case ended. Even had Mr. Saly later become available for deposition (after the end of fact discovery), Elastic is on record that it did not believe that such a post-discovery deposition would be useful to Elastic. Dkt. 101-3 at 3. Indeed, in its May 21, 2021 submission to the Court, Elastic wrote that "[i]ssue sanctions are the only appropriate remedy to cure floragunn's misconduct," because "Mr. Saly remains on leave, and fact discovery is now closed," and because a "*belated deposition" would not "cure the prejudice to Elastic*" in preparation of its case. *Id.* (emphasis added). Indeed, Elastic has never sought to have the Court order a deposition of Mr. Saly as part of the relief it has been seeking in this Motion, and therefore by its own admission would not be prejudiced by floragunn's termination of Mr. Saly after discovery ended.

Elastic further argues that the timing of Mr. Saly's termination "gives rise to an inference" that floragunn sought to "end any influence" it might have over him to provide evidence in this matter and cites a provision in the February 22 Stipulation which Elastic claims "left the door open for a later deposition of Mr. Saly if he were to become available to testify at trial." Elastic's MPA at 14 (citing February 22 Stipulation). There is nothing in the February 22 Stipulation about any "later depositions." Instead, the provision that Elastic appears to be

referencing is subsection (3) in the last "Whereas" clause in the preamble to the February 22 Stipulation, which provides that "should Mr. Saly become available to testify at trial, the parties will meet and confer in an effort to agree on procedures that would eliminate prejudice to plaintiffs from Mr. Saly's late availability." Dkt. 76 at 2–3. Nothing about Mr. Saly's termination changes the effect of this provision.  If Mr. Saly were to become available to testify at trial and if floragunn were to seek to use him as a witness, then the parties would meet and confer about  procedures that would eliminate prejudice to Elastic from his late availability.

There is nothing in the February 22 Stipulation that requires floragunn to keep Mr. Saly on payroll for any duration of time. And, as for Elastic's claim that the "timing" of his termination "gives rise" to an inference that floragunn sought to "end any influence" it might have over Mr. Saly to provide evidence in this matter, Elastic's MPA at 14, Elastic would have made the same argument if Mr. Saly had been terminated in March, April, July, August of 2021, or even November 2021 or January 2022. In short, for Elastic, there is no "timing" of his termination that would not "give rise to an inference" of wrongdoing by floragunn.[5]

Elastic's strained argument that there is no evidence to support Mr. Kressin's claim that Messrs. Bondarenko and Gustavsson handled Mr. Saly's work while he was on leave is meritless. Elastic's MPA at 15. In particular, Elastic claims that floragunn's GitLab source code repositories show no work by Messrs. Gustavsson and Bondarenko in the Java programming language. Elastic's MPA at 15. But in his July 26, 2021 Declaration, Mr. Kressin did not say that Messrs. Bondarenko and Gustavsson did *all* of Mr. Saly's work.  Instead, Mr. Kressin wrote that prior to the termination of Messrs. Gustavsson and Bondarenko "the company was somewhat able to redistribute Mr. Saly's work among the <u>remaining members of floragunn's team</u>. But after Messrs. Gustavsson and Bondarenko were terminated such a redistribution of work was no

---

[5] Elastic suggests that Mr. Saly's ███████████████████████████████████ ███████████████████████████████████████████████████████████ Elastic's MPA at 3.  This claim misses the mark because whether Mr. Saly was required to submit the ██████████ to floragunn during a specific period has no bearing on whether floragunn believed in good faith that Mr. Saly was ██████████ during the Gap Period. Moreover, even if floragunn would have actually terminated Mr. Saly because he failed timely provide ████████████ Elastic would still accuse floragunn of bad faith in terminating him for this reason.

longer possible, as only one member of floragunn's team remained to do software development." Dkt. 127 ¶ 15. Mr. Saly's tasks at floragunn were not only Java programming.  He was CTO of the company with many diverse responsibilities that had to be picked up by others in his absence. The fact that Messrs. Gustavsson and Bondarenko did not check in work in Java does not mean that they and the rest of the small floragunn team were not picking up the slack for other of Mr. Saly's work obligations during his ████████████.

Elastic also grossly mischaracterizes floragunn's response in its June 22, 2021 letter submission to the Court relating to Elastic's proposal for Mr. Saly to submit for an i████████ ████████████████ Elastic's MPA at 14. Elastic claims that floragunn "asserted that it had no ability to force Mr. Saly to provide information because floragunn had terminated him."  That is not what floragunn stated. In its June 22, 2021 submission to the Court, after explaining that it would "not oppose" the use of an ████████████ to examine Mr. Saly "should the court deem it necessary," floragunn stated:

> floragunn, however, is unaware of any legal authority that would allow the Court to compel Mr. Saly and his treating physicians to agree to such ██████████ ████████████████ and floragunn has no way of compelling either Mr. Saly or his ████████ o do so if they refuse.  In addition, Mr. Saly's employment with floragunn will end as of June 30, 2021 (floragunn gave him notice of termination on May 21, 2021). If the Court directs floragunn to do so, floragunn will request that Mr. Saly and his ██████████████████████████████ and report back to the Court what their response was.

*See* Dkt. 116 at 5.

Thus, floragunn *did not* state, as Elastic claims, that it had no ability to force Mr. Saly to provide information *because floragunn terminated him*.  floragunn said that it was unaware of authority to compel Mr. Saly and ████████████████████████████. That was true whether or not Mr. Saly was employed by floragunn. The point about Mr. Saly's termination was made to let the Court know that his termination would be forthcoming.  In fact, his termination was not yet in effect.  In any event, the Court denied Elastic's request for an ████████████████████ *see* Dkt. 136 at 2.  Elastic conjures this out-of-context, incorrect, and irrelevant point because it has nothing else in support of its claim that floragunn acted in bad faith by terminating Mr. Saly.

With respect to Elastic's argument that floragunn was not candid with Elastic or the

Court regarding its termination of Mr. Saly, Elastic's MPA at 15, floragunn respectfully submits that there was no intention to withhold any information about his termination from either the Court or Elastic. floragunn had no obligation to provide Elastic with real-time reports on the status of Mr. Saly's employment, and in any event, Elastic was not seeking Mr. Saly's deposition or other discovery from him, and he was prohibited by the February 22 Stipulation from participating in discovery. To the extent that an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was still being considered by the Court, as explained above, floragunn could not compel Mr. Saly to appear for such an ▮▮▮▮▮▮ whether or not he was an employee of floragunn.

As to the timing of the disclosure of his termination to the Court, floragunn disclosed Mr. Saly's pending termination to the Court on June 22, 2021, eight days before his termination was effective. Dkt. 116 at 5. Again, there was no intent to hide the termination from the Court (or from Elastic), as is evidenced by the fact that the termination was disclosed before the termination was effective. Had this information been disclosed on May 22 rather than June 22, there would have been no difference in any analysis, decisions, or outcomes in this case.  In short, nobody was prejudiced by the short delay. Certainly, had the Court ordered upon learning of the pending termination that Mr. Saly's termination be postponed, floragunn would have complied with such Order.

Finally, Elastic challenges floragunn's claim that Mr. Saly's termination was driven by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Elastic's MPA at 14. For starters, as Elastic is aware, ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kressin Decl. ¶ 6.  Indeed, floragunn's owners have had to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. ¶ 7. In addition, paid leave and car payments to an employee who is not working may be "trivial" to a wealthy public company like Elastic, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮

In summary, none of Elastic's "examples" of floragunn's wrongdoing come close to showing bad faith on the part of floragunn on the issue of termination of Mr. Saly, or suggest a "persistent campaign . . . to prevent Elastic from deposing" him. Elastic's MPA at 15.

1

### F. Elastic Has Not Been Prejudiced By Mr. Saly's Absence

Elastic claims that it has been prejudiced by Mr. Saly's absence because it "obstruct[ed] the deposition of the most central witness in the case." Elastic's MPA at 15–16. This is sham. As explained above, Elastic was willing, and in fact agreed to exclude Mr. Saly from being deposed in this case by entering into the February 22 Stipulation. It did so knowing that as of the date of that stipulation, floragunn had received and delivered to Elastic documentation that covered Mr. Saly's ██████████ only through January 27, 2021, and that Mr. Saly's unavailability going forward was unclear.

Elastic was willing to prosecute this case without Mr. Saly and cannot now complain that his absence from the case prejudices Elastic. As to Elastic's complaint that Mr. Kressin's 30(b)(6) deposition testimony was insufficient, Elastic has not sought relief from the Court in that regard, and the time to do so has passed. Finally, with respect to Elastic's allegation that documents prepared by Mr. Saly regarding the origin of the accused code were shared with floragunn's testifying expert in violation of the February 22 Stipulation (which they were not), this is the subject of a separate motion by Elastic, *see* Dkt. 147, and is immaterial to the issues of whether floragunn acted in bad faith in not producing Mr. Saly for deposition (which floragunn did not).[6]

## IV. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' Motion in its entirety, and grant all further relief this Court deems just and proper.

DATED: November 19, 2021     **KWUN BHANSALI LAZARUS LLP**

By: /s/ *V. David Rivkin*_____

---

[6] Elastic asserts that Mr. Saly "assisted floragunn to respond to discovery as Elastic was seeking his deposition." Elastic's MPA at 13. The basis for Elastic's assertion is floragunn's response to two Requests for Admissions in which Elastic sought to confirm whether Mr. Saly controlled a specific GitHub account and to confirm that no other person controlled that account." floragunn checked with Mr. Saly, who confirmed that he controlled the specific GitHub account and that no other person controlled that account. Eberhart Decl., Ex. FF. That is the extent to which Mr. Saly "assisted floragunn" in discovery while he was on ███████████. That Mr. Saly had a short phone call with Mr. Kressin months before the Gap Period is no evidence that he was ████████ during the Gap Period. In any event, Elastic has not challenged Mr. Saly's ███████████ for any period other than the Gap Period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MICHAEL S. KWUN (SBN 198945)**
**KWUN BHANSALI LAZARUS LLP**
mkwun@kblfirm.com
555 Montgomery St., Suite 750
San Francisco, CA 94111
Telephone: 415 630-2350
Facsimile: 415 367-1539

**WUERSCH & GERING LLP**
V. DAVID RIVKIN (admitted *pro hac vice*)
david.rivkin@wg-law.com
JUSTIN LEE (admitted *pro hac vice*)
justin.lee@wg-law.com
MICHAEL SENZER (admitted *pro hac vice*)
michael.senzer@wg-law.com
100 Wall St., 10th Fl.
New York, NY 10005
Telephone: 212 509-5050
Facsimile: 212 509-9559


Attorneys for Defendant FLORAGUNN GmbH

## <u>CERTIFICATE OF SERVICE</u>

I am an attorney with Wuersch & Gering LLP, counsel for Defendant in the above-referenced proceeding. I hereby certify that on November 19, 2021 I caused the foregoing Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Sanctions Against floragunn Regarding Hendrik Saly to be served electronically via CM/ECF upon Plaintiffs Elasticsearch, Inc. and elasticsearch B.V.

*/s/ Michael Senzer*
Michael Senzer
