DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
JAMES K. ROTHSTEIN (S.B. #267962)
jrothstein@omm.com
DANIEL H. LEIGH (S.B. #310673)
dleigh@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3823
Telephone:     +1 415 984 8700
Facsimile:      +1 415 984 8701

Attorneys for Plaintiffs
ELASTICSEARCH, INC. and
ELASTICSEARCH B.V.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ELASTICSEARCH, INC., a Delaware corporation, and ELASTICSEARCH B.V., a Dutch corporation,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>FLORAGUNN GmbH, a German corporation,<br><br>　　　　　　　　Defendant. | Case No. 4:19-cv-05553-YGR (AGT)<br><br>**PLAINTIFFS ELASTICSEARCH, INC. AND ELASTICSEARCH B.V.'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST FLORAGUNN REGARDING HENDRIK SALY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Alex G. Tse |

PUBLIC REDACTED VERSION

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. Legal Standard ......................................................................................................... 1

    B. floragunn Acted in Bad Faith by Using Deception to Withhold Mr. Saly's Deposition. ................................................................................................................ 3

        1. floragunn knew the January 28 ▇▇▇▇ Mr. Saly to return to work. .......................................................................................................... 3

        2. floragunn acted in bad faith by deliberately withholding the January 28 ▇▇▇▇ from its own counsel and from Elastic ................................. 7

        3. floragunn acted in bad faith by deliberately misleading Elastic about forthcoming ▇▇▇▇ ......................................................................... 8

        4. Elastic timely and repeatedly sought Mr. Saly's testimony. ........................ 9

        5. floragunn Acted in Bad Faith When it Terminated Mr. Saly's Employment ............................................................................................... 12

    C. floragunn's Deception Has Prejudiced Elastic ....................................................... 14

    D. Issue Sanctions Are the Only Appropriate Remedy ............................................... 15

III. CONCLUSION ................................................................................................................... 15

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Unites for Kids v. Rousseau*,
 985 F.3d 1075 (9th Cir. 2021) ................................................................................................ 1, 2, 15

*Cakebread v. Berkeley Millwork & Furniture Co.*,
 218 F. Supp. 3d 1040 (N.D. Cal. 2016) ........................................................................................ 2

*Christoffersen v. Malhi*,
 No. CV-16-08055-PCT-JJT, 2017 WL 2653055 (D. Ariz. June 20, 2017) ................................. 2

*Evon v. L. Offs. of Sidney Mickell*,
 688 F.3d 1015 (9th Cir. 2012) ...................................................................................................... 2

*Glover v. BIC Corp.*,
 6 F.3d 1318 (9th Cir. 1993) .......................................................................................................... 2

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
 No. 14-CV-02737-BLF, 2015 WL 6449399 (N.D. Cal. Oct. 26, 2015) ...................................... 3

*Lofton v. Verizon Wireless (VAW) LLC*,
 308 F.R.D. 276 (N.D. Cal. 2015) .............................................................................................. 2, 3

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
 982 F.2d 363 (9th Cir. 1992) ........................................................................................................ 2

*Zambrano v. City of Tustin*,
 885 F.2d 1473 (9th Cir. 1989) ...................................................................................................... 2

## I. INTRODUCTION

floragunn's Opposition ("Opposition" or "Opp.") to Elastic's Motion for Sanctions Regarding Hendrik Saly ("Motion" or "Mot.") contains a key admission: floragunn's co-CEO admits that floragunn possessed a key ▮▮▮▮▮▮▮▮ by mid-February 2021 but floragunn did not provide that ▮▮▮▮ to its counsel until March 15, 2021. Thus, floragunn (the party) withheld that ▮▮▮▮▮▮▮▮ from its own counsel for a month while Elastic and floragunn negotiated and finalized the stipulation that was premised on Mr. Saly's unavailability to be deposed. Dkt. 76 (the "Saly Stipulation"). That ▮▮▮▮▮▮▮▮▮▮ Mr. Saly to return to work, and he was available to be deposed at that time. floragunn's deception of Elastic, this Court, *and its own counsel* constitutes bad faith warranting sanctions.

floragunn's deception has prejudiced Elastic. Mr. Saly is *the* key witness in this case and is the author of 12 out of the 19 code segments that Elastic has accused of infringement. Mot. Ex. A. Moreover, Mr. Saly is a damaging witness for floragunn: Mr. Saly admitted to decompiling Elastic binaries to understand how Elastic's code worked while Mr. Saly was developing the product that would eventually become Search Guard. Mot. Ex. CC 33:3-21. Already, floragunn is attempting to use Mr. Saly's unavailability to its advantage by claiming that Mr. Saly's admission of decompiling is inadmissible hearsay. Dkt. 160 at 5-6.

Issue sanctions are a proper remedy, tailored to correcting the prejudice to Elastic that floragunn's bad faith conduct has caused. The Court should grant Elastic's Motion and order the jury instructions that Elastic requests.

## II. ARGUMENT

### A. Legal Standard

floragunn advocates for a legal standard that would require the Court to find that floragunn acted in bad faith or in willful disobedience of a court order when it deceptively withheld Mr. Saly's deposition. *See* Opp. 10 (citing *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Elastic has demonstrated floragunn's bad faith in deceptively shielding Mr. Saly from deposition and then, as soon as Elastic raised the issue of floragunn's deception, firing him to ensure he would be outside of floragunn's power. Even under floragunn's

bad faith standard, the Court should grant Elastic's Motion.

However, Elastic need not show bad faith for its Motion to succeed. floragunn has effectively spoliated Mr. Saly's testimony by deceptively withholding his deposition and then firing him. In fact, it is difficult to imagine what more would be required to show spoliation of oral evidence than the acts undertaken by floragunn. As such, Elastic need only show that floragunn willfully prevented Mr. Saly's testimony and had notice that Mr. Saly's testimony was potentially relevant to this litigation. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("[A] finding of bad faith is not a prerequisite to this corrective procedure. Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation.") (internal quotation marks and citations omitted); *see also Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 287 (N.D. Cal. 2015) ("Sanctions for spoliation arise where a litigant (1) had a duty to preserve documents in its control; (2) destroyed documents with a culpable state of mind; and (3) a reasonable trier of fact could find that the destroyed document was relevant.") (internal quotation marks omitted). The proof here also meets those standards.

floragunn is incorrect that *America Unites for Kids* "squarely addresses the issue" in this motion. Opp. 11. *America Unites for Kids* involved the wrongful *acquisition* of evidence, not its spoliation. *Am. Unites for Kids*, 985 F.3d at 1085. Wrongful acquisition of evidence does not frustrate the truth-seeking function of the courts; rendering witness testimony unavailable does. In the context of this dispute, the spoliation cases that Elastic cites are substantially more on point. *See, e.g.*, *Glover*, 6 F.3d at 1329; *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368–69 (9th Cir. 1992); *Christoffersen v. Malhi*, No. CV-16-08055-PCT-JJT, 2017 WL 2653055, at *2, *5 (D. Ariz. June 20, 2017). Spoliation is much more analogous to floragunn's behavior than the behavior found in the cases floragunn cites. *See, e.g.*, *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (failing to file confidential information under seal); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1483-84 (9th Cir. 1989) (failure to seek admission to local district court bar); *Cakebread v. Berkeley Millwork & Furniture Co.*, 218 F. Supp. 3d 1040, 1041 (N.D. Cal. 2016) (attorney misrepresenting his identity to obtain evidence); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-CV-02737-BLF, 2015 WL 6449399, at *1-*2 (N.D.

1  Cal. Oct. 26, 2015) (violation of agreement to follow model protective order); *cf. Lofton v.*
2  *Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286–87 (N.D. Cal. 2015) (applying different
3  standards to concealment of the existence of later discovered evidence (bad faith) and to
4  destruction of evidence (spoliation standard)). Nevertheless, Elastic has demonstrated floragunn's
5  bad faith, and the Court should order the requested sanctions even under the *America Unites for*
6  *Kids* standard that floragunn advocates.

      **B.    floragunn Acted in Bad Faith by Using Deception to Withhold Mr. Saly's Deposition.**

      floragunn's Opposition does not rebut Elastic's showing that floragunn acted in bad faith when it deceived Elastic to enable the withholding of Mr. Saly's deposition. floragunn knew by mid-February that a January 28, 2021 ███████████ Mr. Saly to return to work as of January 27, 2021. *See* Opp. 8; Mot. Ex. L. But floragunn hid this fact from Elastic—and from its own counsel—for a month, *see* Opp. 8, while telling Elastic that it expected to receive ███████ ███████ certifying Mr. Saly's unavailability to work after January 27, 2021. floragunn then acted in further bad faith when it terminated Mr. Saly's employment—apparently attempting to limit the Court's investigative and remedial options—after Elastic began to meet and confer with floragunn regarding its withholding of Mr. Saly.

      **1.    floragunn knew the January 28 ███████████ Mr. Saly to return to work.**

      floragunn argues that the January 28, 2021 ███████ "says nothing" about Mr. Saly having been ███████ to return to work. Opp. 7. But floragunn could not have believed in good faith that the January 28 ███████ did anything other than establish that Mr. Saly's ███████ ended on January 27, 2021. Mr. Saly's ███████ determined *on January 28*—a Thursday—that Mr. Saly's "███████████████████" had been *January 27*—the day before. Mot. Ex. L. floragunn offers no explanation for why the phrase "███████████████████████" should be understood to mean the opposite: that Mr. Saly ███████████████████████████. Nor does floragunn explain how the January 28 ███████ could be anything other than ███████████ ███████—particularly when ███████████████ on December 10, 2020 that Mr. Saly was ███████ through January 27, 2021 was the same ███████ who on January 28, 2021 certified

1  January 27, 2021 as the ▮▮▮▮▮. Contrary to floragunn's argument, Opp. 8, Elastic
2  need not obtain German ▮▮▮ expert opinion to "interpret[]" this plain language. There is no
3  ambiguity, and the terms of the ▮▮▮ are as simple as they are clear: on January 28, Mr.
4  Saly's ▮▮▮ certified that Mr. Saly's purported ▮▮▮ ended on January 27.
5  floragunn has no answer for this fact.

6  Instead, floragunn offers multiple ineffective arguments for why that fact should be
7  ignored. First, floragunn suggests that the January 28 ▮▮▮ was unremarkable, because Mr.
8  Saly had previously provided ▮▮▮ after the "▮▮▮" had
9  passed. *See* Opp. 8. But this is irrelevant, because no prior ▮▮▮ stated that Mr. Saly was
10 ▮▮▮ to work. See Mot. Exs. D, E, and N. Indeed, the January 28 ▮▮▮ was
11 unlike any other that Mr. Saly had previously provided because the "▮▮▮
12 ▮▮▮" date (January 27) was *before* the determination and issuance dates (January 28). See Mot.
13 Ex. L. This means that on the day Mr. Saly received ▮▮▮—January 28—he was already
14 ▮▮▮ to work. That Mr. Saly later sought ▮▮▮ to try to avoid the
15 consequences of having been ▮▮▮ to work—that is, testifying at deposition—does not
16 change this fact. *See* Mot. Exs. Q and R.

17 Second, floragunn suggests that Elastic did not believe the January 28 ▮▮▮
18 Mr. Saly ▮▮▮ to work because Elastic did not "immediately" raise its concern with floragunn
19 and the Court upon receipt of the January 28 ▮▮▮ on March 16, 2021. *See* Opp. 8-9. But
20 Elastic had no way to know what other ▮▮▮ floragunn had before floragunn produced
21 them. For instance, it was possible that another ▮▮▮ Mr. Saly on or before
22 January 28 and had ▮▮▮ extending after that date. In fact, on
23 March 19, 2021, floragunn produced a contemporaneous ▮▮▮ (in the same format
24 as the others) showing Mr. Saly's unavailability for a three-day gap period in *December 2020*.
25 Opp. 4 (noting the production of DEF047708). In that context, it was perfectly reasonable for
26 Elastic to believe floragunn that a ▮▮▮ for the period after January 27 would be
27 forthcoming. Elastic had repeatedly inquired about ▮▮▮ for the period after January 27; in
28 response, floragunn falsely and repeatedly told Elastic there was no cause for concern:

1.  - In the same March 16, 2021 email in which it produced the January 28 ▇▇▇, floragunn's counsel represented that a ▇▇▇ covering part of the period between January 28, 2021 and February 16, 2021 (the "Gap Period") would be provided: "▇▇▇ ▇▇▇ ▇▇▇." *See* Mot. Ex. N (emphasis added).
    - On February 5, 2021, Elastic requested that floragunn provide Mr. Saly's ▇▇▇ for periods after January 27, 2021. Mot. Ex. J. On February 9, 2021 floragunn's counsel wrote that ▇▇▇ ▇▇▇. . . ." Mot. Ex. K (emphasis added).
    - At a meet-and-confer between the parties on February 9, 2021, floragunn's counsel stated that it would shortly send a ▇▇▇ covering the Gap Period. Declaration of James Rothstein in Support of Plaintiffs' Reply in Support of Motion For Sanctions Against floragunn ("Rothstein Decl.") ¶ 2. Elastic's counsel emailed floragunn's counsel to confirm this statement, writing: "We understand that there are ▇▇▇ establishing Hendrik Saly's ▇▇▇ that extend past January 27, 2021, and we understand that you will update us if you do not receive those ▇▇▇ by this Thursday." Rothstein Decl. Ex. 1. Elastic's counsel added: "If I have misunderstood anything, please advise me as soon as possible." *Id.* floragunn's counsel corrected several points but did not correct that "there are ▇▇▇ ▇▇▇ establishing Hendrik Saly's ▇▇▇ that extend past January 27, 2021." *Id.* floragunn's counsel followed up that Thursday explicitly referring to the ▇▇▇ as if it existed, and referenced related "PII issues" but no other issues. *See* Rothstein Decl. Ex. 2. Any delay in acting on the January 28 ▇▇▇ was caused by Elastic's reliance on these assurances. It was only after floragunn's continued failure to produce such a ▇▇▇ that Elastic realized floragunn's deception.

    Third, floragunn is also incorrect that the later April 12 and May 20, 2021 letters support that Mr. Saly was unavailable during the Gap Period. *See* Opp. 17–19. These letters are deficient both in form and timing. floragunn previously explained to the Court that that German law is "unambiguous" that "▇▇▇ such as ones provided by Mr. Saly" (i.e., like the

January 28 ███████ have "high evidential value" and are "presumed" to be "█████ ████" Dkt. 116 at 2–3. But the April 12 "██████████" and May 20 one-line letter from ██████████████ are not certificates like the others provided by Mr. Saly and are entitled to no presumption of validity. *See id.*; Mot. Exs. Q and R. Further, Mr. Saly's employment contract required him to submit ██████████—not informal letters—to demonstrate his unavailability. *See* Mot. Exs. F and G. floragunn must have known that the April 12 and May 20 letters did not meet the requirements for establishing ██████████ to work. Nor can floragunn explain why neither letter indicates that it was based on a ██████████ Mr. Saly. *See* Mot. 6–7, 11, 13. In fact, floragunn seems to concede that the April 12 letter is of no value: floragunn fails to cite the letter in its Opposition and offers no defense of its various indicia of unreliability: ██████████████████████████████████████████ *see* Mot. Ex. X, its questionable reliance on Mr. Saly's own assertion ██████████████ *see* Mot. Ex. Q, and its absurd claim that Mr. Saly ████████████████████████████████████████. *See id.*

Moreover, the retroactive issuance of the letters suggests that they did not result from a contemporaneous ████████ of Mr. Saly that would accurately reflect ████████ during the Gap Period. floragunn protests that Elastic "does not elaborate" why the May 20 letter's issuance fifteen days after Elastic raised concerns with the Gap Period renders it "highly suspect." Opp. 18. But the answer is simple and obvious: the timing of the letter suggests it was created solely to respond to Elastic's request for a meet and confer rather than in the normal course of Mr. Saly's ████████ employment relationship with floragunn. *See* Mot. Exs. O and R. In other words, the letter was contrived in response to the threat of sanctions. floragunn offers no explanation for why ████████████████████████████████ during the Gap Period until some three months later or would not use the legal certificate format that would have required her to state ████████████████████████.

Finally, letters collected months after January 27 cannot justify floragunn's misrepresentations to Elastic while Elastic was seeking Mr. Saly's deposition and while the parties were negotiating the Saly Stipulation. floragunn knew when it received the January 28

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Saly and determined that ▓▓▓▓▓▓ had officially ended on January 27. *See* Mot. Ex. L. Further, that same month, floragunn discussed with Mr. Saly a potential return to work and a potential ▓▓▓▓ with him and floragunn's owners. Mot. Exs. AA 72:17-75:21 and V. With knowledge of Mr. Saly's changed ▓▓▓▓ and work status, floragunn then misrepresented to Elastic and this Court that Mr. Saly was unavailable to testify in this matter. Letters issued months after this course of events cannot undo floragunn's culpable mental state at the time of the misrepresentation. ▓▓▓▓▓▓▓ letter thus in no way renders this dispute "moot." *See* Opp. 19.

### 2.  floragunn acted in bad faith by deliberately withholding the January 28 ▓▓▓▓▓▓ from its own counsel and from Elastic

By floragunn's own admission, floragunn withheld the January 28 ▓▓▓▓▓▓ from its counsel (and thereby from Elastic) for a month during the very period in which the parties finalized and filed the Saly Stipulation. floragunn admits that it received the January 28 ▓▓▓▓▓▓ in mid-February.[1] Opp. 8. floragunn therefore indisputably knew that Mr. Saly's "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" had been January 27 while the parties were negotiating the Saly Stipulation between February 11 and February 22, 2021. *See* Mot. Ex. L; Mot. 5. But floragunn *failed to provide the January 28* ▓▓▓▓▓▓ *to its counsel until March 15, 2021*. *See* Opp. 8. floragunn thus withheld the January 28 ▓▓▓▓▓▓ from its counsel for *one month*—a month during which Mr. Saly's availability to work was a key issue of discussion between the parties.

floragunn argues that production of the January 28 ▓▓▓▓▓▓ was "not urgent" during the month-long delay. Opp. 8. That claim distorts reality. The January 28 ▓▓▓▓▓▓ included novel information about Mr. Saly's status, floragunn received it when the parties were negotiating a stipulation concerning Mr. Saly's availability to be deposed, and floragunn withheld it from its counsel in the face of counsel's representations to Elastic that further ▓▓▓ documentation would be produced. Because the ▓▓▓▓▓ contradicted the entire premise of the parties' negotiations—that Mr. Saly was unavailable to be deposed—it was therefore both crucial and time-sensitive that

---

[1] Mr. Kressin's present declaration provides no basis to contradict his October 28 deposition testimony that floragunn received most of Mr. Saly's ▓▓▓▓▓▓ within a few days of his examinations. *See* Kressin Decl. ISO Opp. ¶ 4; Mot. Ex. M 742:23-743:13.

1  floragunn produce the ▮▮▮. The reasonable interpretation of this sequence of events is that
2  floragunn withheld the ▮▮▮ from its own counsel because it sought to hide the fact that Mr.
3  Saly was available until after the Court had entered the Saly Stipulation. *See* Dkt. 76.
4  floragunn further argues that its delay in disclosing the January 28 ▮▮▮ (including to
5  its own counsel) was justified because Elastic's repeated requests for Mr. Saly's ▮▮▮
6  ▮▮▮ covering periods after January 27 did not encompass the January 28 ▮▮▮, which
7  showed ▮▮▮ *until* January 27. *See* Opp. 8. That argument fails for multiple reasons. First,
8  Elastic had issued a request for production for *all documents supporting Mr. Saly's alleged*
9  *unavailability*, Mot. Ex. H, RFP No. 103, floragunn had agreed on January 22, 2021 to produce
10 any such documents, Mot. Ex. I, Response to RFP No. 103, and floragunn had an ongoing
11 obligation under Federal Rule of Civil Procedure 26 to supplement its responses to that request.
12 Second, Elastic's repeated informal requests to floragunn for additional ▮▮▮ were phrased
13 as requests for ▮▮▮ establishing Mr. Saly's unavailability *after January 27* simply because
14 floragunn had previously produced to Elastic ▮▮▮ attesting to unavailability through
15 January 27—not because floragunn was not obligated to provide other existing ▮▮▮. *See,*
16 *e.g.,* Mot. Ex. J. The importance of the January 28 ▮▮▮ was obvious to floragunn, and
17 floragunn's deliberate withholding of it during a key period constitutes bad faith.

       **3.    floragunn acted in bad faith by deliberately misleading Elastic about forthcoming ▮▮▮**

19 floragunn now claims that, as of February 2021, "Mr. Saly's unavailability going forward
20 was unclear." Opp. 25. This claim flatly contradicts floragunn's contemporaneous representations
21 to Elastic, and this attempt to rewrite history demonstrates floragunn's inability to explain its bad
22 faith conduct. By mid-February, floragunn possessed the January 28 ▮▮▮ and knew that Mr.
23 Saly had been ▮▮▮ to work. *See* Opp. 8. Yet, over the course of February 2021,
24 floragunn made numerous representations to Elastic and the Court that floragunn would provide
25 ▮▮▮ showing Mr. Saly's unavailability during the Gap Period and that Mr. Saly
26 continued to be unavailable for deposition. On February 9, 2021, floragunn's counsel wrote to
27 Elastic that "▮▮▮

1  ███████████████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████ Mot.

3  Ex. K. The same day, Elastic memorialized floragunn's statement at a meet and confer that "██

4  ████████████████████████████████████████████████████████

5  ██"—and floragunn did not correct Elastic's understanding. Rothstein Decl. Ex. 1. And, on

6  February 22, the parties filed the Saly Stipulation, which confirmed that floragunn "has

7  represented to plaintiffs that (a) additional documentation showing the basis for Mr. Saly's leave

8  for periods past January 27, 2021 is expected to be provided to defendant and will be provided to

9  plaintiffs [and] (b) defendant does not anticipate that Mr. Saly will be able to return from leave to

10 be deposed before March 19, 2021." Eberhart Decl. ISO Mot. ¶ 15; Dkt. 76. floragunn's

11 argument that Mr. Saly's condition "was unclear" as of February 2021, Opp. 25, therefore

12 directly contradicts floragunn's repeated representations to Elastic in February 2021 that

13 floragunn did not expect Mr. Saly to be available to testify before fact discovery closed.

14   floragunn argues that it did not deceive Elastic because its representations on February 9

15 and February 22 were technically true. *See* Opp. 15–16. For example, floragunn recounts that it

16 rejected draft language in the Saly Stipulation that ████████████████████ because it had

17 not seen the certificates, instead opting for language that it "expected" to receive such

18 documentation. *See* Opp. 5–6. But floragunn's representations were at a minimum misleading

19 and, as to the company, knowingly false. At least by the week prior to the submission of that

20 stipulation, floragunn—although not its counsel—had received the January 28 ████████ and

21 knew that Mr. Saly was no longer ████████████ *See* Opp. 8. As of mid-February, floragunn

22 thus could not have "expect[ed]" in good faith that any ████████████ for the period after

23 January 27 was forthcoming, *see* Mot. Ex. K, Dkt. 76, or that Mr. Saly could not "████████

24 ████████████████████████████" *See* Dkt. 76. floragunn acted in bad faith when it sat

25 silent and withheld from its counsel the January 28 ████████ while counsel negotiated the

26 stipulation based on false premises.

27   **4.   Elastic timely and repeatedly sought Mr. Saly's testimony.**

28   floragunn makes the incredible argument that it was *floragunn* that wished for Mr. Saly to

1  testify and Elastic that was "eager to exclude him." Opp. 13–14. Both propositions are false.
2  floragunn relied on Mr. Saly to assist in its discovery efforts during Mr. Saly's ▮▮▮▮▮▮ in
3  December 2020 and January 2021—floragunn consulted Mr. Saly to help with RFA responses
4  regarding control of Mr. Saly's GitHub account. *See* Mot. Exs. AA 106:13–108:13, DD, EE, and
5  FF. But, despite being able to obtain information from Mr. Saly when it suited floragunn's
6  purposes, there is no evidence that floragunn tried to induce or compel Mr. Saly to testify.

7      And despite floragunn's assertions that it had "no reason or incentive" to prevent Mr. Saly
8  from testifying, *see* Opp. 1, it is simply implausible that floragunn wanted to expose Mr. Saly to
9  questioning about key evidence supporting Elastic's case: for example, his admission that he
10 decompiled Elastic's object code, *see* Mot. Ex. CC. 33:3-23, his admission on a public website
11 that he had accessed relevant Elastic source code, *see* Rothstein Decl. Ex. 3, and the extensive
12 indicia in code Mr. Saly "authored" showing that he copied from Elastic. *See, e.g.*, First Amended
13 Complaint, Dkt. 23, ¶¶ 30, 33, 43, 47. floragunn's month-long delay in producing the January 28
14 certificate, its failure to make Mr. Saly available for deposition during the Gap Period, and its
15 sudden termination of Mr. Saly in the course of the parties' present dispute all further contravene
16 floragunn's claim. On the contrary, floragunn's behavior is more consistent with an effort to
17 *shield* Mr. Saly from deposition. Such an effort finds further support in floragunn's similar
18 behavior with respect to Mr. Bondarenko and Mr. Gustavsson, the second and third of the four
19 authors of the infringing code. *See* Mot. 16.

20     floragunn also claims that Mr. Saly indicated that "he would very much like to cooperate
21 in the deposition process" prior to ▮▮▮▮▮▮ but that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 because "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. 2. The (at least) double hearsay
23 floragunn offers on this point provides no credible evidence that Mr. Saly in fact indicated that he
24 wanted to be deposed. Mr. Rivkin's declaration does not indicate that he spoke to Mr. Saly, and
25 the phrasing strongly suggests that he did not. *See* Rivkin Decl. ¶ 4 ("I also explained that I was
26 informed that he had indicated that . . ."). Nor does floragunn offer any support for the
27 proposition that a deposition would be ▮▮▮▮▮▮▮▮▮▮▮ or that he was ▮▮▮▮▮
28 ▮▮▮ not to appear. Notably, floragunn does not rely on nor defend in its Opposition the April 12

1  letter ███████████████████████████████████████████████████████
2  ████████████████████████████. *See* Mot. Ex. Q.

      Elastic's behavior, on the other hand, shows a persistent effort to depose Mr. Saly: Mr. Saly's deposition was the first deposition that Elastic, or any party, sought in this litigation. Rothstein Decl. ¶ 6. On November 25, 2020, Elastic conferred with floragunn pursuant to Civil Local Rule 30-1 to request a deposition date for Mr. Saly. *See* Mot. Ex. C.[2] The parties further conferred on November 30, 2020 regarding Mr. Saly's ability to be deposed. *See* Rothstein Decl. Ex. 4. On December 10, 2020, Elastic asked for "any indication regarding how long Mr. Saly will be unavailable and/or any update on the likelihood that he will be available to be deposed before the close of fact discovery[.]" *Id*. Elastic again asked via telephone on January 25, 2021 if Mr. Saly was available to be deposed. *See* Eberhart Decl. ISO Mot. ¶ 10. Also on February 19, Elastic issued a notice for Hendrik Saly's deposition on March 4, 2021. Rothstein Decl. Ex. 5. Elastic's counsel wrote: "Due to your ongoing refusal to provide a date for Mr. Saly's deposition despite our ongoing requests beginning in November 2020 for such a date, we have chosen March 4, 2021. We remain available to meet and confer about scheduling for Mr. Saly's deposition." *Id*.

      floragunn also argues that Elastic's present motion is "disingenuous flimflam" because its negotiating position regarding the Saly Stipulation shows that Elastic was "content not to have Mr. Saly deposed" at that time. *See* Opp. 14. floragunn states that "Elastic wanted to preclude Mr. Saly from testifying at trial if he could not testify during fact discovery even if his condition improved," rejected a proposal that "would have allowed Mr. Saly to be deposed after fact discovery expired ████████████████," and ultimately opted for "an agreement that Mr. Saly not be deposed in discovery and not assist floragunn's experts." Opp. 13–14. This is incorrect. First, floragunn misrepresents the parties' ultimate agreement: the Saly Stipulation does not preclude a future deposition; rather, it states that "should Mr. Saly become available to testify at trial, the parties will meet and confer in an effort to agree on *procedures that would eliminate prejudice to plaintiffs from Mr. Saly's late availability*[.]" Dkt. 76 at 3 (emphasis added). Because

---

[2] The timing of Elastic's request was driven by floragunn's document productions: floragunn only began producing development documents and internal communications on September 18, 2020. Rothstein Decl. ¶ 7.

1  Elastic had no way to know what would occur over the remaining course of the litigation—
2  including completion of fact discovery, expert discovery, potential summary judgment, and
3  *Daubert* motion practice—Elastic was not willing to commit in February 2021 to the proposition
4  that a deposition of Mr. Saly at some undetermined future date would cure the prejudice to
5  Elastic. Rothstein Decl ¶ 10. Accordingly, Elastic insisted that the stipulation leave for later
6  determination whether that prejudice could be cured by a deposition or other means. *Id.* ¶ 11.

   Second, although the Saly Stipulation does prevent Elastic from moving to compel Mr.
   Saly's deposition, *see* Mot. 5, that clause in no way establishes that Elastic did not *want* to depose
   Mr. Saly. Faced with floragunn's ▮▮▮▮ repeated representations that Mr. Saly would be
   on ▮▮▮▮ throughout the fact discovery period, Elastic did not think the Court would order
   Mr. Saly to appear for deposition. Rothstein Decl. ¶ 12. Consequently, Elastic sought through the
   stipulation to avoid the prejudice that would arise if Mr. Saly remained beyond the reach of
   deposition but assisted floragunn's expert witnesses (as in fact it appears he did).

   **5.    floragunn Acted in Bad Faith When it Terminated Mr. Saly's Employment**

   floragunn offers a slew of explanations for why it fired Mr. Saly just a few weeks after
   Elastic first raised concerns about floragunn's misrepresentations. Opp. 19–24. None of these
   explanations has merit. The obvious explanation remains: having just been ordered to produce
   two other developers for depositions because they were floragunn's managing agents, Dkt. 97,
   and in the face of the joint discovery letter regarding floragunn's deception about Mr. Saly,
   floragunn decided to fire Mr. Saly to limit the Court's and Elastic's ability to obtain evidence
   regarding Mr. Saly's medical condition or his substantive knowledge related to the litigation.

   floragunn claims that it could not be expected to "keep Mr. Saly as an employee
   indefinitely while ▮▮▮▮ Opp. 19. But there is no evidence that Mr. Saly's
   employment needed to cost floragunn *anything* while ▮▮▮▮ floragunn's
   payments of approximately ▮▮▮▮ to Mr. Saly while Mr. Saly was ▮▮▮▮ were
   *voluntary*. Dkt. 127 ¶ 13. And floragunn acknowledges that it had plenty of money, noting that its
   ▮▮▮▮—to

                                              12                REPLY ISO MOTION FOR SANCTIONS
                                                                AGAINST FLORAGUNN
                                                                4:19-CV-05553-YGR

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. 24. And floragunn offers no response to Elastic's observation that floragunn's financials show its business ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. 14.

floragunn argues that Elastic would have claimed an improper purpose no matter when floragunn terminated Mr. Saly, noting that floragunn kept Mr. Saly employed for 14 months of ▮▮▮▮▮▮▮▮, including for all of fact discovery. Opp. 20, 21. floragunn claims this demonstrates "remarkable good faith" and a desire that Mr. Saly would become able to "assist floragunn in this litigation." *Id.* 20. But if floragunn were really interested in retaining Mr. Saly's employment due to its good faith, surely floragunn would have waited until the parties' dispute regarding Mr. Saly's purported unavailability had been resolved before firing Mr. Saly. Instead, floragunn fired Mr. Saly immediately after Elastic requested a meet and confer with floragunn on the issue.

floragunn further argues that the need to replace the ▮▮▮▮▮▮▮▮▮▮▮ Sergii Bondarenko and Mikael Gustavsson, whom it calls "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ required it to terminate Mr. Saly.[3] Opp. 20. This again ignores that floragunn's payments to Mr. Saly during Mr. Saly's leave were *voluntary*. floragunn could have "free[d] up some resources to go toward hiring a CTO," Opp. 20, 22, without firing Mr. Saly. And floragunn's claim that, absent Mr. Saly, Mr. Bondarenko, and Mr. Gustavsson, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Opp. 20, is not consistent with the evidence. floragunn's public repositories include *numerous* commits from persons other than Mr. Kressin, Mr. Bondarekno, and Mr. Gustavsson—for example, among many other committers, someone named "Nils Bandener" has made more than a thousand commits to the "search-guard-suite" repository and more than 1,500 commits to the "search-guard-suite-enterprise" repository from late 2019 to the present. *See* Walker Decl., Dkt. 213-1, ¶ 3, Ex. B.

The undisputed timeline overwhelms floragunn's excuses for firing Mr. Saly when it did: On May 4, 2021, the Court ruled that Mr. Bondarenko and Mr. Gustavsson were managing agents of floragunn who must be produced for deposition. Dkt. 97. On May 5, 2021, Elastic requested a meet and confer with floragunn regarding floragunn's misrepresentations about Mr. Saly's

---

[3] Mr. Bondarenko and Mr. Gustavsson, of course, were terminated for failing to obey an order from this Court requiring their depositions. Opp. 20; Dkt. 100.

unavailability. Mot. Ex. O. On May 14, 2021, fact discovery closed with Mr. Bondarenko and Mr. Gustavsson having failed to appear for their scheduled depositions. Dkt. 100 at 4–5. On May 21, 2021, floragunn gave Mr. Saly notice of his termination. Dkt. 127 ¶ 16. The only logical conclusion from this sequence is that floragunn anticipated that the Court would order some relief that would require Mr. Saly's participation, just as the Court had done regarding Mr. Bondarenko and Mr. Gustavsson. floragunn thus fired Mr. Saly to limit the impact of any such relief.

### C.  floragunn's Deception Has Prejudiced Elastic

floragunn tries to minimize the prejudice to Elastic from Mr. Saly's false unavailability, claiming that the Saly Stipulation shows that Elastic was willing to forgo Mr. Saly's deposition. Opp. 25. This is both false and a red herring. As shown above, Elastic persistently sought Mr. Saly's deposition over the course of months. *See* § II.B.4, *supra*. And Elastic only agreed to the Saly Stipulation in reliance on floragunn's representations that Mr. Saly had been and would continue to be unavailable. Elastic sought the Saly Stipulation in an attempt to prevent floragunn from using Mr. Saly to help its defense while shielding him from deposition. *See id.*

In fact, Elastic's concerns that Mr. Saly would help floragunn's litigation efforts while evading deposition were well founded. floragunn admits that it sought and obtained Mr. Saly's assistance in responding to RFAs that Elastic served on December 23, 2020. Opp. 25 n.6. floragunn tries to minimize Mr. Saly's assistance, but floragunn cannot rebut that it had the ability to obtain information from Mr. Saly when it chose to do so in early 2021. And, as Elastic's pending motion regarding the Saly documents makes clear, there is evidence that input from Mr. Saly was used to inform the opinions of floragunn's technical expert. *See* Dkt. 147.

floragunn also attempts to recast Elastic's claim of prejudice as an untimely complaint about Mr. Kressin's preparation as a Rule 30(b)(6) witness. *See* Opp. 25. Mr. Kressin did possesses inadequate information about the development of code that Mr. Saly authored. *See* Mot. Ex. B 120:24-149:10; Mot. Ex. AA 85:7-10. But the fundamental problem is that floragunn obstructed Mr. Saly's deposition. Elastic was not required to permit floragunn to substitute 30(b)(6) testimony for testimony from Mr. Saly. Even if Mr. Kressin had been adequately prepared, he could not provide the firsthand knowledge and ability to test credibility that Mr. Saly

would have brought to the deposition.

floragunn's attempt to minimize the prejudice to Elastic also entirely ignores that floragunn is already attempting use Mr. Saly's unavailability offensively. Mr. Saly made an out-of-court statement to Elastic's co-founder, Uri Boness, that Mr. Saly had decompiled Elastic's object code in the course of developing the software that would eventually become Search Guard. Mot. Ex. CC 33:3-21. In its *Daubert* motion to strike parts of Elastic's technical expert's testimony, floragunn argued that Elastic's expert cannot rely on this statement because it is hearsay.[4] Dkt. 160 at 5-6. If Elastic had been able to depose Mr. Saly, Elastic would have been able to obtain direct testimony about Mr. Saly's decompilation of Elastic binaries (and further detail about that process). floragunn's attempt to weaponize Mr. Saly's unavailability by claiming Mr. Boness's testimony is hearsay highlights both the prejudice to Elastic and the strategic benefit to floragunn from Mr. Saly's unavailability.

### D. Issue Sanctions Are the Only Appropriate Remedy

floragunn does not address the propriety of issue sanctions as a remedy for floragunn's bad faith conduct. Issue sanctions are the appropriate remedy. A late deposition cannot cure Elastic's inability to use Mr. Saly's deposition to inform other fact discovery, expert opinion development and discovery, and *Daubert* motions in this litigation. And issue sanctions regarding the code sections that Mr. Saly authored are tailored to righting the wrong caused by floragunn's bad faith. *See Am. Unites for Kids*, 985 F.3d at 1089. Accordingly, Elastic requests that the Court instruct the jury that (1) floragunn could have, but refused, to make Mr. Saly available for deposition; and (2) it is established that Mr. Saly accessed the infringed Elastic code and copied from Elastic the twelve specific accused floragunn code segments he "authored."

### III. CONCLUSION

For the foregoing reasons, Elastic respectfully requests that the Court grant the motion and issue the requested sanctions against floragunn.

---

[4] Elastic maintains that Mr. Boness's testimony is admissible. But Elastic remains prejudiced, because details and a direct admission from Mr. Saly would be more compelling.

Dated: November 29, 2021

DAVID R. EBERHART
JAMES K. ROTHSTEIN
DANIEL H. LEIGH
O'MELVENY & MYERS LLP

By:   /s/ *David R. Eberhart*
        David R. Eberhart

Attorneys for Plaintiffs
ELASTICSEARCH, INC. and
ELASTICSEARCH B.V.