UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELASTICSEARCH, INC., et al., | Case No. 19-cv-05553-YGR (AGT) |
| Plaintiffs, | |
| v. | **ORDER DENYING ELASTIC'S MOTION FOR ISSUE SANCTIONS** |
| FLORAGUNN GMBH, | Re: Dkt. No. 213 |
| Defendant. | REDACTED |

In the parties' final discovery dispute before the undersigned, Elastic seeks issue sanctions against floragunn based on floragunn's alleged failure to produce its now-former Chief Technology Officer, Hendrik Saly, for deposition; its alleged misrepresentations regarding Saly's unavailability; and its termination of Saly while this sanctions dispute was pending. Dkt. 213, "Mot." According to Elastic, the evidence shows "a persistent campaign by floragunn to prevent Elastic from deposing Mr. Saly, despite a lack of evidence for Mr. Saly's unavailability from January 28, 2021, to February 16, 2021, during the heart of the deposition period in this case." *Id.* at 19. Elastic argues that "issue sanctions are the only appropriate remedy to cure floragunn's misconduct" and requests that the Court issue such sanctions pursuant to its inherent authority. *Id.* at 21. Specifically, Elastic requests that the Court "instruct the jury that (1) floragunn could have, but refused, to make Mr. Saly available for deposition and (2) it is established that Mr. Saly accessed the infringed Elastic code and copied from Elastic the twelve specific accused floragunn code segments he 'authored.'" *Id.* at 5.

floragunn argues that these sanctions are "wholly inappropriate" because Elastic has not made the requisite showing that floragunn "willfully violated a Court order or otherwise acted in bad faith with respect to Hendrik Saly's unavailability." Dkt. 216, Opp. at 5. On the contrary,

floragunn argues, "the evidence amply demonstrates that floragunn acted reasonably, transparently and in good faith under the circumstances with respect to Mr. Saly's ██████████ and his unavailability to be deposed." *Id.* The Court agrees with floragunn. Elastic's motion is therefore denied.

## I.  BACKGROUND

Elastic filed this copyright infringement action against floragunn, a German company based in Berlin, Germany, in September 2019, alleging that nineteen code segments in floragunn's Search Guard software infringe numerous Elastic copyrights. Saly, who lives in Germany, originally developed Search Guard and is the undisputed author of twelve of the accused floragunn code segments. Saly was on paid ██████ leave from his floragunn employment (and thus unavailable for deposition) for the majority of this litigation; he went on leave beginning in March 2020 and ultimately remained on leave until floragunn terminated him in June 2021. During Saly's 15-month paid leave, and pursuant to his employment contract with floragunn, he periodically provided floragunn with documentation from his ████████████ certifying his ongoing ██████ to work, which floragunn in turn provided to Elastic.

Elastic does not dispute that floragunn has provided documentation establishing Saly's ██████ unavailability to work for the periods of March 26, 2020 to January 27, 2021, and February 17, 2021 onward. However, Elastic claims that no such proof exists for the 20-day period from January 28 to February 16, 2021 (the "Gap Period"). Elastic argues that floragunn should have produced Saly for deposition during the Gap Period and its failure to do so constitutes bad faith.

### A.  Saly's Unavailability for Deposition

Elastic first learned of Saly's ██████ unavailability in late November 2020, when it emailed floragunn to request a date for Saly's deposition. Dkt. 213-2, Eberhart Decl. ¶ 4 & Ex. C. In response, floragunn's counsel, David Rivkin, informed Elastic for the first time that: (1) Saly was on ██████ leave from floragunn and hence unavailable to be deposed; (2) Saly had been on leave since March 2020 and had not worked for floragunn since that time; and (3) floragunn expected his leave would continue at least though the close of fact discovery (then January 29,

United States District Court
Northern District of California

2021).[1] Dkt. 216-3, Rivkin Decl. ¶¶ 2–3; Eberhart Decl. ¶ 5 & Ex. E at 6. floragunn's counsel also disclosed that Saly had been ███████ from July to August 2020 and was "on ███████ not to[ cooperate in the deposition process] because doing so would cause a ███████ ███████" Rivkin Decl. ¶ 4. floragunn's counsel proposed that the parties hold off on Saly's deposition until he was ███████ cleared to participate and advised that floragunn would be amenable to a limited extension of discovery for purposes of deposing Saly if and when he became ███████ to be deposed at any time before trial. *Id.* ¶¶ 5–6 & Ex. 1 at 1. floragunn's counsel further advised that floragunn would provide ███████ certificates confirming that Saly had been out on ███████ leave and was ███████ to work.[2] *Id.* ¶ 5.

**B.      floragunn's Initial Production of ███████ Certificates**

On December 7 and 14, 2020, floragunn produced to Elastic an initial set of one-page ███████ certificates issued by Saly's ███████ in a form prescribed by German law. Eberhart Decl. ¶ 6 & Exs. D, E. Each certificate contained at least three dates, as indicated by the certified translations: (1) the date the certificate was issued; (2) the date on which Saly's ███████ him ("determined on"); and (3) the date through which Saly's ███████ expected that he would be ███████ ("expected to be ███████ to work up to and including or the last day of ███████ for work"). Some of the certificates also listed a fourth date corresponding to the date on which Saly's ███████ began ("███████ to work since"). None of the certificates contained ███████ or descriptions of Saly's ███████.

_____

[1] floragunn has represented to Elastic and this Court that, according to its German counsel, "under German law, an employer may not compel an employee on ███████ leave to perform work for the employer. No precedent law is apparent regarding a demand that an employee appear at a deposition under U.S. law to testify on behalf of the employer – a procedure comparable to a deposition is not known under German law and the issue rarely if ever comes up in the context of German employment law since, in German civil proceedings, only a court can summon a witness to testify. A party employer has therefore no authority to summon an employee to testify on its behalf in a German civil proceeding even if no ███████ is implicated." Dkt. 116 at 3. Elastic has not challenged, nor does the Court have any reason to question, the accuracy of counsel's interpretation of German law as applied to the facts of this case.

[2] To establish his right to paid leave, Saly's employment contract required him to submit to floragunn ███████ certificates within one business day after informing floragunn of an expected absence of more than three days. *See* Eberhart Decl. Ex. G at 6.

1  The certificate issued December 10, 2020 is reproduced below, immediately followed by a

2  certified English translation of the same:



24  *Id.* Ex. E at 8, 9.  floragunn also produced a certification confirming that Saly was ▮▮▮▮

25  from July 7 to August 27, 2020.  *Id*. Ex. D at 11, 21. Collectively, this initial set of ▮▮▮

26  certificates established Saly's unavailability to work continuously from March 26, 2020 through

27  January 27, 2021.  Rivkin Decl. ¶ 7.

28          On January 25, 2021, Elastic again asked if Saly was available to be deposed and Rivkin

4

1    stated that floragunn expected that Saly would not be available to be deposed.  Eberhart Decl.

2    ¶ 10.  On February 5, 2021, Elastic's counsel emailed floragunn asking "[i]s there a ████████

3    certificate for Mr. Saly that extends beyond January 27, 2021?"  *Id.* ¶ 11 & Ex. J at 2.  Rivkin

4    responded on February 9, 2021, writing, "we will continue to provide ████ certificates.

5    floragunn expects to receive a certificate confirming Mr. Saly's ████████ to work for a

6    period after January 27.  As I explained, we do not currently anticipate that he will be ████████

7    cleared sufficient to be produced for deposition before the end of fact discovery.  If his status

8    changes thereafter, we can discuss appropriate next steps at that time, subject to the Court's

9    approval as necessary."  *Id.* ¶ 12 & Ex. K at 2.

10        **C.    The Parties' Stipulation Regarding Saly's Unavailability**

11        On February 11, 2021, counsel for the parties began discussing a stipulation to address

12   Saly's unavailability, in addition to other discovery issues that necessitated an extension of fact

13   discovery (then scheduled to close on March 5, 2021).  *See id.* ¶ 15; Rivkin Decl. ¶ 9.  On

14   February 20, 2021, following several meet and confer sessions regarding how to deal with Saly's

15   absence, Elastic's counsel drafted and circulated a proposed stipulation regarding Saly's

16   unavailability, whereby floragunn would agree to restrict Saly's participation in this litigation both

17   as a witness and as a source for expert witnesses "in lieu of [Elastic] moving the Court to order

18   [floragunn] to make Mr. Saly available for deposition."  Rivkin Decl. ¶ 11 & Ex. 3 at 3–4.  In the

19   February 20 draft, Elastic proposed that floragunn would represent that it:

20            (1) has provided [Elastic] with documentation supporting the basis for
             Mr. Saly's leave through January 27, 2021; and (2) has represented to
21            [Elastic] that (a) additional documentation showing the basis for Mr.
             Saly's leave for periods past January 27, 2021 *exist*; (b) [floragunn]
22            does not anticipate that Mr. Saly will be able to return from leave to
             be deposed before March 19, 2021.
23

24   *Id.* Ex. 3 at 3:14–18 (emphasis added).

25        On February 21, 2021, Rivkin proposed changing the language in Elastic's draft so that

26   floragunn would represent that "additional documentation showing the basis for Mr. Saly's leave

27   for periods past January 27, 2021 *is expected to be provided to [floragunn]*," rather than

28   representing that such documentation "exists."  *Id.* ¶ 12 & Ex. 4 at 3:16–17 (emphasis added).

United States District Court
Northern District of California

This proposed revision was based on Rivkin's understanding at the time that, "although floragunn expected additional documentation from Mr. Saly in due course for periods past January 27, 2021, it had not seen such documentation." *Id.* ¶ 12.

On February 22, 2021, Elastic's counsel, James Rothstein, sent a further revised draft in which he accepted floragunn's edit that "additional documentation showing the basis for Mr. Saly's leave for periods past January 27, 2021 is expected to be provided to [floragunn]," and added the words "*and will be provided to [Elastic]*." *Id.* ¶ 13 & Ex. 5 at 3:16–17 (emphasis added). On a call later that day, Rivkin and Rothstein discussed the February 22 draft and Rivkin made clear that floragunn could not agree to represent that additional documentation showing the basis for Saly's leave for periods past January 27, 2021 "exists"—because floragunn had not seen such documentation. *Id.* ¶ 14. Instead, Rivkin explained, floragunn could only represent that it expected to receive such documentation from Saly, and that it would then produce the documentation to Elastic. *Id.* On this basis, the parties agreed to the language in the February 22 draft, *id.*, and submitted the stipulation to the Court to be so-ordered. *Id.* Judge Gonzalez Rogers signed the parties' stipulation on February 25, 2021, *see* Dkt. 76 (the "Saly Stip").

The Saly Stip provides, among other things, that: (1) Elastic would not move to compel Saly's deposition; (2) floragunn would not allow Saly to participate in the case, including by providing information or other assistance to floragunn's expert witnesses; and (3) "should Mr. Saly become available to testify at trial, the parties [would] meet and confer in an effort to agree on procedures that would eliminate prejudice to [Elastic] from Mr. Saly's late availability." *Id.* at 2–3.

After the parties entered into the Saly Stip, floragunn continued to provide to Elastic documentation from Saly's ███████ confirming his ongoing unavailability to work. As noted, Elastic does not dispute that floragunn has provided documentation sufficient to establish Saly's unavailability during the periods of March 26, 2020 to January 27, 2021, and February 17 to July 9, 2021. At issue here is the documentation concerning Saly's unavailability during the January 28 to February 16, 2021 Gap Period.

United States District Court
Northern District of California

1  **D.**  **floragunn's March 16 Production and the January 28 Certificate**

2  On March 16, 2021, floragunn produced three new ███ certificates (in the same format

3  as the others), including two that documented Saly's ███ to work from February 17 to March

4  17, 2021.  *See* Rivkin Decl. ¶¶ 16–17 & Ex. 6 at 2, 3 (certificates issued February 17, 2021 and

5  March 3, 2021).  The third certificate, issued January 28, 2021, listed the "expected to be ███ to

6  work up to and including or the last day of ███ for work" date as January 27, 2021 (the

7  "January 28 Certificate").[3]  *Id.* Ex. 6 at 4; Eberhart Decl. Ex. L.  The January 28 Certificate,

8  pictured below, was signed by ███████—the same ███ who issued the

9  December 10, 2021 certificate pictured above and who had previously issued certificates for Saly:



21  Eberhart Decl. Ex. L.  In the email accompanying the March 16 production, floragunn's counsel

22  advised Elastic that "floragunn is still awaiting a certificate for the period of January 29 [*sic* 28] to

23  Feb 16, 2021, and will provide that to you when it is received."  *Id.* Ex. N at 2.

24  **E.**  **Elastic Seeks Sanctions Unrelated to Saly's Unavailability**

25  On March 12 and 22, 2021, Elastic submitted joint discovery letters requesting that the

---

[3] floragunn's co-CEO Jochen Kressin submitted a declaration attesting that the January 28 Certificate "appears to have been received by postal mail by floragunn sometime in mid-February, 2021" and was then "uploaded onto a cloud-based server accessible to U.S. counsel for review and processing on March 15, 2021."  Dkt. 216-2, Kressin Decl. ¶ 4.

Court order the depositions of floragunn's freelance programmers, Mikael Gustavsson and Sergii

Bondarenko, who each wrote two of the 19 accused code segments. *See* Dkt. 79 (initial joint

letter); Dkt. 84 (renewed joint letter following discovery referral to the undersigned). Elastic also

requested that if those witnesses did not appear for deposition, that the Court issue a jury

instruction establishing that they copied from Elastic the four accused code segments at issue.

Dkt. 84 at 5. Elastic mentioned floragunn's March 16 production (which included the January 28

Certificate) in the March 22 joint letter—noting that "on March 16, floragunn produced written

documentation for Mr. Saly's [████] leave (a) through January 27, 2021, and (b) from February

17 through March 17 [but floragunn has] still fail[ed] to establish that Mr. Saly was actually

unavailable for deposition between January 28 and February 16"—but did not request sanctions

relating to Saly's unavailability. *Id.*

On May 4, 2021, the undersigned ruled that Gustavsson and Bondarenko were floragunn's

managing agents and ordered floragunn to produce both witnesses for deposition. Dkt. 97.[4]

**F.**       ████████████ **May 20, 2021 Letter**

On May 5, 2021, seven weeks after Elastic received the January 28 Certificate from

floragunn, Elastic requested by email a meet and confer with floragunn to discuss issue sanctions

related to Saly's purported unavailability during the Gap Period. Eberhart Decl. ¶ 17. Elastic

advised floragunn that "we think that Mr. Saly should have been made available for deposition

between January 28 and February 16, and that floragunn misrepresented his unavailability during

---

[4] In the May 4 order, the Court denied Elastic's request for non-appearance sanctions without
prejudice to renewal if either witness failed to appear for deposition by May 14, 2021. Dkt. 97.
On May 21, after both witnesses failed to appear for their noticed depositions on May 12 and 13,
Elastic renewed its request for sanctions. Dkt. 100. In that joint letter, floragunn persuasively
argued that sanctions were not warranted because it had used its best efforts to compel the
programmers to sit for deposition—including by threatening to terminate their freelance contracts
with floragunn if they did not appear—but they still refused. *Id.* at 6. floragunn also submitted
copies of its email correspondence with the programmers in which stated that they would not
appear at a deposition irrespective of the consequences of termination. *See id.* Exs. A & B.
floragunn further represented that it would be terminating the programmers' respective freelance
contracts the week of May 23 (the earliest date permissible under German law and the freelance
contracts). *Id.* at 6. At the Court's instruction, floragunn subsequently submitted a declaration
confirming the date it gave the programmers written notice of termination (May 28, 2021) and the
effective date of their terminations (June 25, 2021). *See* Dkts. 105, 107. That evidence
established that floragunn had in fact used its best efforts to secure the freelancers' depositions
(albeit unsuccessfully), thus precluding sanctions.

United States District Court
Northern District of California

that period—including in the February 22 stipulation we filed." *Id.* Ex. O at 2.  Counsel for the parties met and conferred on May 6, 2021.  The same day, floragunn produced (1) a ███████ certificate issued April 20, 2021 certifying █████████ through May 18, 2021; and (2) and a letter dated April 12, 2021 from "██████████████████," which purported to investigate whether Saly was ██████████████ to be deposed and claimed that he would not be able to be deposed until he had been █████████ for five years. *See id.* ¶¶ 18–19 & Exs. P, Q.  The parties again met and conferred again on May 14, 2021.

On May 20, 2021, Saly provided to floragunn, and floragunn provided to Elastic, a one-page letter from ██████████ (Saly's █████ who signed the January 28 Certificate), titled "Certificate for Mr. Hendrik Saly."  *Id.* ¶ 20 & Ex. R.  In the letter, reproduced below with a certified translation on the following page, ██████████ wrote, "Mister Saly was already ██████ to work from 28.01-16.02.2021":





1
2
3
4
5
6
7
8
9
10
11
12
13

*Id.* Ex. R at 2, 4.

14

15        On May 21, 2021, the day after floragunn produced ▮▮▮▮▮ letter, Elastic filed its

16  initial request for sanctions based on Saly's unavailability.  Dkt. 101.  In support of its request,

17  Elastic argued that the January 28 Certificate "certifies Mr. Saly's ▮▮▮ to work only through

18  January 27, . . . In other words, *the issuing* ▮▮▮ *had cleared Mr. Saly to return to work as of*

19  *January 28.*"  *Id.* at 6 (emphasis in original).

20        **G.    Saly's Termination**

21        On June 11, 2021, the Court held a discovery hearing on Elastic's sanctions request and

22  directed the parties to meet and confer to discuss further development of the record regarding

23  Saly's unavailability.  Dkt. 112.  Unbeknownst to Elastic and the Court, on May 21, 2021—the

24  same day Elastic moved for sanctions—floragunn gave Saly notice that he would be terminated

25  effective June 30, 2021.  *See* Dkt. 127 ¶ 16 & Ex. A.  floragunn did not disclose Saly's pending

26  termination to Elastic until June 21, 2021, during the parties' Court-ordered meet and confer.

27  Eberhart Decl. ¶ 21.  That same day, floragunn produced three additional certificates issued April

28  21, May 19, and June 16, 2021.  *Id.* ¶ 22 & Ex. S.  The certificates comprised the same format as

1    those provided previously, except that they also listed "█████████" reflecting that Saly

2    ████████ from ██████████████, ██████████, and █████████████████.

3    *See* Mot. at 11; Eberhart Decl. Ex. S.

4         **H.    Additional Discovery Regarding Saly's Unavailability and Termination**

5         On June 22, 2021, in light of floragunn's revelation about Saly's impending termination,

6    Elastic requested that the Court order floragunn to describe under oath its efforts to obtain Saly's

7    cooperation and the circumstances surrounding his termination.  Dkt. 115.  Elastic argued that

8    "[t]he timing of [Saly's] departure—coming after he has allegedly been on ███ leave for 15

9    months but shortly after the Court's June 11, 2021 Order—raises questions regarding whether that

10   departure is a step to avoid a deposition and/or consequences for his failure to appear."  *Id.* at 2.

11        Following a July 9, 2021 further discovery hearing, the Court ordered floragunn to submit

12   a declaration describing (1) all communications involving Saly and his potential return to work at

13   floragunn in January and/or February 2021, and (2) the circumstances of Saly's recent termination.

14   Dkt. 121.  floragunn provided the required declaration from its co-CEO, Jochen Kressin, on July

15   26, 2021.  Dkt. 127.  In the declaration, Kressin attested:

16            Based on communications with Mr. Saly and his wife, Ms. Kressin
              and I (and thus floragunn) had a good faith belief that documentation
17            supporting the basis for his leave during the Gap Period would be
              provided in due course, as in fact it ultimately was. floragunn
18            understood that the absence of a ██████ certificate for the Gap Period
              was due in part to administrative procedures related to Mr. Saly
19            switching ██████████, and floragunn continued to treat him as
              if he was on ██████ leave during the Gap Period. Mr. Saly did not
20            perform any work for floragunn during the Gap Period, or at any other
              time since going on leave. . . . I do not believe that Mr. Saly has been
21            available to return to work at floragunn or be deposed at any time
              since going on ████████ leave.
22

23   *Id.* ¶ 7.  Kressin also attested that Saly's June 30 termination was driven by "financial and

24   management considerations," including floragunn's need to "reorganize its personnel to manage

25   the company's workload" in light of the June 25 terminations of Gustavsson and Bondarenko, who

26   were floragunn's main developers at the time.  *Id.* ¶¶ 8, 17.

27        On August 2, 2021, to "complete the evidentiary record on the motion for sanctions,"

28   Elastic requested that the Court order floragunn to produce: (1) all communications with Saly or

11

his wife from March 2020 onward; (2) documents sufficient to show the date, time, and length of all telephone conversations between floragunn's co-CEOs (Jochen and Claudia Kressin) and Saly and/or his wife during the same time period; (3) all documents and communications concerning go-ffwd GmbH, a company formed by Saly and the Kressins; (4) Jochen Kressin for deposition to explore the basis of his July 26, 2021 declaration; and (5) the procedure proposed by Elastic involving an ██████████████████ of Saly.  Dkt. 129.  Following a discovery hearing on August 17, 2021, the undersigned granted requests 1 and 2; denied requests 3 and 5; and denied request 4 without prejudice to renewal after floragunn's production of documents.  Dkt. 136.[5]

Following floragunn's production, the Court granted Elastic's renewed request to depose Jochen Kressin "to explore facts regarding: (1) the subject matter of Mr. Kressin's July 26, 2021 declaration (dkt. 127); (2) floragunn's communications with Hendrik Saly and his wife regarding Mr. Saly's potential return to work; (3) floragunn's decision to ultimately terminate Mr. Saly in May 2021; and (4) floragunn's recent production and other communications contained therein."  Dkt. 208.  The deposition occurred on October 28, 2021.  Full briefing on this sanctions dispute followed.

## II.     DISCUSSION

It is undisputed that Elastic seeks sanctions under this Court's "inherent authority" rather than under Rule 37 or any other rule or statute.[6]  "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).  "As the Supreme Court has explained, a sanction may be awarded

---

[5] Elastic subsequently moved for relief from the undersigned's denial of request 3 (production of go-ffwd materials) and request 5 (██████████████████), Dkt. 151, which Judge Gonzalez Rogers denied, Dkt. 195.

[6] Rule 37, which allows for sanctions against a party who "fails to obey an order to provide or permit discovery," is inapplicable here.  Fed. R. Civ. P. 37(b)(2)(A).  floragunn has not violated any Court order and the Ninth Circuit "has foreclosed the application of Rule 37 sanctions in cases such as this where a party's alleged discovery-related misconduct is not encompassed by the language of the rule."  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *see Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012) ("As a condition precedent to imposing sanctions pursuant to Federal Rule of Civil Procedure 37 the Defendants must have violated a Court Order.").

United States District Court
Northern District of California

either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980)).

"The bad faith requirement sets a high threshold." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Unlike willful disobedience of a court order, which requires only that a party acted deliberately irrespective of mental intent, bad faith "requires proof of bad intent or improper purpose." *Rousseau*, 985 F.3d at 1090. And "because a district court's inherent powers are so potent, [the Ninth Circuit] require[s] that when a court imposes sanctions based on bad faith, the court must make an *explicit finding* that the sanctioned party's conduct 'constituted or was tantamount to bad faith.'" *Id.* (emphasis added and citation omitted); *see Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) ("[A] specific finding of bad faith . . . must 'precede any sanction under the court's inherent powers.'") (quoting *Roadway*, 447 U.S. at 767). "It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). Elastic has not met that burden here.

Elastic argues that floragunn acted in bad faith in two ways.[7] First, Elastic contends that floragunn used "deception" to withhold Saly's deposition during the January 28 to February 16, 2021 Gap Period. This argument is predicated on Elastic's belief that the January 28 Certificate (produced on March 16) "cleared" Saly to return to work on January 28, 2021, and that floragunn knew as much when the parties were negotiating the Saly Stip in mid-February. Second, Elastic contends that floragunn's "surreptitious termination" of Saly's employment while this sanctions dispute was pending further demonstrates bad faith warranting sanctions. The record before the Court, however, does not support a finding of bad faith on either basis.

---

[7] Elastic also argues, unpersuasively, that it "need not show bad faith for its Motion to succeed" because "floragunn has effectively spoliated Mr. Saly's testimony by deceptively withholding his deposition and then firing him." Dkt. 218, Reply at 5; *see also* Mot. at 13 (citing cases involving inherent power sanctions in the spoliation context and arguing that "[b]ad faith is sufficient, but not required, for imposition of evidentiary sanctions"). This case does not involve spoliation, which "refers to the *destruction or material alteration of evidence* or to the *failure to preserve property* for another's use as evidence in pending or reasonably foreseeable litigation." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (emphasis added).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   As an initial matter, the January 28 Certificate says nothing about Saly having been

2   "cleared to return to work as of January 28, 2021," as Elastic claims.  Mot. at 10.  Rather, it lists

3   January 27, 2021 as the "expected to be unable to work up to and including or the last day of

4   ███████ for work" date.  *See* Eberhart Decl. Ex L.  In the absence of any German ██████ or

5   legal authority saying otherwise, which Elastic has not provided, the Court declines to interpret the

6   January 28 Certificate as affirmatively "clearing" Saly to return to work.  Moreover, the Court

7   agrees with floragunn that for purposes of Elastic's sanctions motion, "the issue is not whether the

8   January 28 Certificate 'cleared' Mr. Saly to return to work (which it plainly does not), but whether

9   *floragunn believed* that the January 28 Certificate cleared Mr. Saly to return to work, sufficient to

10  show floragunn's bad faith."  Opp. at 23 (first emphasis added).  There is no indication in the

11  record as it stands that floragunn or its attorneys interpreted the January 28 Certificate as a ████

12  "clearance" for Saly to return to work.

13  There is likewise no evidence to support Elastic's theory that floragunn intentionally and

14  wrongfully withheld production of the January 28 Certificate (which floragunn received from Saly

15  in mid-February, uploaded to a cloud-based server accessible to its U.S. counsel on March 15, and

16  produced to Elastic on March 16) in an effort to "hide" Saly's availability and "falsely induce[]

17  Elastic's agreement to the Saly Stipulation."  *See* Mot. at 19; Reply at 11.  If anything, the record

18  tends to suggest that even Elastic did not believe (at least not initially) that the January 28

19  Certificate on its face "cleared" Saly to return to work as of January 28, 2021.  Elastic waited until

20  May 5, 2021—seven weeks after it received the January 28 Certificate from floragunn and one day

21  after the undersigned ruled in Elastic's favor on the managing agent deposition dispute—to raise

22  its concerns regarding the certificate with floragunn.  If, as Elastic now claims, the January 28

23  Certificate "contradicted the entire premise of the parties' [Saly Stip] negotiations—that Mr. Saly

24  was unavailable to be deposed" such that it was "both crucial and time-sensitive that floragunn

25  produce the certificate" in mid-February, *see* Mot. at 10–11, then the Court would expect Elastic

26  to have raised this when it first received the January 28 Certificate in mid-March.

27  In any event, the Court further agrees with floragunn that "the entire issue of

28  documentation regarding Mr. Saly's ██████ availability during the so-called Gap Period has been

1   rendered moot by ▇▇▇▇▇ [May 20, 2021] letter," which unequivocally stated that Saly

2   was ▇▇ to work from January 28 to February 16, 2021.  Opp. at 23.  Indeed, as Elastic itself

3   recognizes, ▇▇▇▇▇ is "the same ▇▇ who issued [the January 28 Certificate and] the

4   original certificate for the December 10 through January 27 period (and had previously issued

5   certificates for Mr. Saly as early as April 2020), *so there can be no claim [] that the* ▇▇ *was*

6   *unfamiliar with Mr. Saly's* ▇▇▇▇."  Mot. at 16 (emphasis added).  Elastic's attempts to

7   discredit ▇▇▇▇▇ letter as "contrived," "highly suspect," and an "after-the-fact effort to

8   claim Mr. Saly was ▇▇▇" are unpersuasive, as there is again no evidence to suggest that the

9   letter was disingenuous or manufactured.  *See id.* at 15; Reply at 9.

10          Finally, the Court does not have reason to ascribe bad faith to floragunn's ultimate decision

11  to terminate Saly's employment after 15 months of paid ▇▇▇ leave.[8]  Elastic argues that the

12  timing of Saly's termination "gives rise to an inference that floragunn fired Mr. Saly to end any

13  influence floragunn might have over Mr. Saly to provide evidence in this matter."  Mot. at 18.  Yet

14  as floragunn points out, at the time of Saly's termination, "he was still out on ▇▇▇ leave, so

15  floragunn had no control over him in any event, a fact Elastic does not challenge."  Opp. at 25.

16          In sum, Elastic has not made the requisite showing that floragunn acted "in bad faith,

17  vexatiously, wantonly, or for oppressive reasons" with respect to Saly's unavailability and

18  termination.  *Rousseau*, 985 F.3d at 1090.  Because a "specific finding of bad faith must precede

19  any sanction under the court's inherent powers," Elastic's motion must be denied.  *Fink*, 239 F.3d

20  at 993 (simplified).

21          **IT IS SO ORDERED.**

22  Dated: January 18, 2022

23

24  _____

25  ALEX G. TSE
    United States Magistrate Judge

26

27

28  ---
    [8] The Court agrees with Elastic that floragunn should have disclosed Saly's pending termination at
    the June 11, 2021 discovery hearing, but does not find this omission to rise to a level of bad faith.

United States District Court
Northern District of California